RECEIVED
FILED

2009 APR 27 P 3: 17

CLERK US DISTRICT COURT
RICHMOND, VIRGINIA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

|  |  |  |
|---|---|---|
| PBM PRODUCTS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:09CV269 |
| | ) | |
| MEAD JOHNSON NUTRITION | ) | Judge: |
| COMPANY and MEAD JOHNSON & | ) | Magistrate: |
| COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## VERIFIED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff PBM Products, LLC ("PBM"), by its attorneys, complains of Defendants Mead

Johnson Nutrition Company and Defendant Mead Johnson & Company (referred to herein

collectively as "Mead Johnson") as follows:

### Nature of Action

Twice before, Defendant Mead Johnson has engaged in false advertising campaigns

against PBM's competing store brand infant formulas by distributing literally false advertising to

doctors and mothers stating that PBM's store brand infant formulas "fall short" of the "most

current recommended dietary intakes" of calcium and the "required" daily intake of folic acid

and accusing PBM's formulas of having "none" of the nucleotides found in Mead Johnson's

Enfamil® infant formula. Both times, PBM sued Mead Johnson in this Court for its false and

misleading advertisements. Both times Mead Johnson's senior executives and scientists

admitted that Mead Johnson's statements were literally false. Indeed this Court so found,

enjoining Mead Johnson from continuing to make false statements and ordering Mead Johnson

1

to "immediately … retrieve" its false advertising materials from over 90,000 pediatricians and hospitals throughout the United States. This Court subsequently found that Mead Johnson failed to comply with that order, choosing instead to engage in the spoliation of evidence by destroying rather than retrieving the false ads. Ultimately Mead Johnson acknowledged the falsity of its ads and settled PBM's claims in both actions.

Incredibly, Mead Johnson still thinks it can continue to lie about PBM's store brand infant formulas with impunity. For a third time, Mead Johnson has renewed its national false advertising campaign against PBM by falsely stating that only Mead Johnson's Enfamil® LIPIL® has two fats, DHA (docosahexaenoic acid) and ARA (arachidonic acid), which Mead Johnson calls "LIPIL®". Mead Johnson touts "LIPIL®", *i.e.*, DHA and ARA, as promoting brain and eye development in infants. Mead Johnson's false advertising campaign includes national magazine advertisements (the "Print Ads"), including one which states that "[o]nly Enfamil® has LIPIL®, our blend of DHA and ARA, important nutrients found in breast milk" and then, in its new direct mail promotional advertisements (the "Mailer") that "En-Fact: Enfamil LIPIL's unique formulation is not available in any store brand." These statements are false. In fact, the PBM store brand infant formulas designed to compete directly with Enfamil® LIPIL® ("PBM Store Brand Formulas") are formulated to contain DHA and ARA sourced from the same supplier in amounts which equal or exceed the DHA and ARA in Mead Johnson's Enfamil® LIPIL®.

Mead Johnson's motives for misleading consumers are clear. As reported by Mead Johnson in its 2009 initial public offering documents, "[m]any other companies, *including manufacturers of private label, store and economy products, manufacture and sell one or more products that are similar to those marketed by us*" and "*the current downturn, could cause*

2

*customers to shift their purchases from our higher priced premium products to lower-priced products, including private label or store brands, which could materially adversely affect our business.*" As Mead Johnson is well aware, PBM is by far the largest manufacturer of store brand infant formulas, accounting for more than 97% of store brand infant formula sales in the United States. In order to thwart PBM's gaining additional market share in today's difficult economic environment, Mead Johnson has once again renewed its false advertising campaign against PBM Store Brand Formulas.

Mead Johnson's unlawful false advertising campaign has already, and, if left unabated, will continue to irreparably damage PBM's business by misleading and causing confusion among consumers. Under the Lanham Act and the commercial disparagement law of the State of Virginia, PBM is entitled to temporary, preliminary and permanent injunctive relief stopping Mead Johnson's deceptive and misleading advertising, the immediate retrieval by Mead Johnson of all copies of its deceptive and misleading advertising, the payment of PBM's costs of corrective advertising, disgorgement of Mead Johnson's profits, treble damages, PBM's attorney's fees and exemplary and punitive damages.

### Parties and Jurisdiction

1.      Plaintiff PBM is a limited liability company organized under the laws of State of Delaware with its principal place of business in Gordonsville, Virginia.

2.      In 1997, PBM became the first company to launch store brand infant formulas in the U.S. that meet the guidelines and requirements set forth by the United States Food and Drug Administration ("FDA") in accordance with the Infant Formula Act of 1980 (the "Act").

3.      PBM manufactures, markets and distributes its store brand infant formulas to more than 20,000 retail locations in the United States, including to leading United States retailers such as Target, Wal-Mart, and Kroger. In addition to the PBM Store Brand Formulas which are in issue here because they are designed to compete with Enfamil® LIPIL®, PBM markets and distributes other specialty formulations of store brand infant formulas to compete with other leading brand formulas. Each of the above-mentioned retailers sells PBM's Store Brand Formulas under their own store brand label for up to one-half the price of branded infant formulas, such as Mead Johnson's Enfamil® LIPIL®.

4.      Defendant Mead Johnson & Company is a corporation organized under the laws of the state of Delaware with its principal place of business in Evansville, Indiana. Mead Johnson & Company was a wholly owned subsidiary of Bristol-Myers Squibb Company ("BMS"), until sometime in 2009, when it became a subsidiary of co-defendant Mead Johnson Nutrition Company as part of a series of transactions and an initial public offering ("IPO"). After a reasonable opportunity for further investigation and discovery, PBM expects to have evidentiary support to establish that the Mead Johnson false advertising campaign in issue occurred before and after the IPO.

5.      Defendant Mead Johnson Nutrition Company is a corporation organized under the laws of the state of Delaware with its principal place of business in Evansville, Indiana. Mead Johnson Nutrition Company formed in 2008 in advance of the IPO. BMS has indicated an intent to hold approximately 80% of the shares of Mead Johnson Nutrition Company, which now wholly owns Mead Johnson & Company. This Verified Complaint will refer to Mead Johnson Nutrition Company and Mead Johnson & Company collectively as "Mead Johnson."

6.    Mead Johnson markets a leading brand infant formula, Enfamil® LIPIL®, which competes with the PBM Store Brand Formulas in the same marketing and distribution channels in Virginia and throughout the United States.

7.    This Court has jurisdiction over this matter, pursuant to 28 U.S.C. § 1331, because this matter arises under the laws of the United States – specifically, Mead Johnson's violations of the Lanham Act, 15 U.S.C. § 1125(a), *et seq.*

8.    Venue is proper in this District, pursuant to 28 U.S.C. § 1391, because Mead Johnson conducts business in this District.

### Facts Common To All Counts

**The Infant Formula Market**

9.    The overwhelming majority of purchasers of infant formula are expectant and new mothers of infants.  Because very few infants are fed formula beyond 12 months of age, there is a constant turnover among purchasers of infant formula.

10.    To maintain market share, infant formula companies must continually replace departing customers with expectant and new mothers.  Therefore, brand name infant formula manufacturers, such as Mead Johnson, must spend hundreds of millions of dollars on advertising to influence expectant and new mothers to pay up to twice as much for brand infant formulas such as Enfamil® LIPIL®.  According to Mead Johnson's 2009 public offering documents, it spent nearly $300 million on world-wide advertising and product promotion in 2008.

11.    Pursuant to the Act, Congress vested the FDA with the authority to ensure that all infant formulas sold in the U.S. provide the necessary levels of identified nutrients required for the healthy growth of babies. The Act requires testing of all infant formulas distributed in the U.S. for their nutritional adequacy before going on the market and also after any change in the manufacturing process. See 21 U.S.C. § 350a, *et seq.*, (2000); 21 C.F.R. Parts 106, 107 (2001). Hence, all infant formulas are manufactured to the Act's exacting standards, and all "infant formula products contain the correct amounts of all required nutrients." Infant Formula Quality Control Procedures, 47 Fed. Reg. 17,016, 17,017 (April 20, 1982) (final rule).

12.    Confidence in the nutritional sufficiency of a brand of infant formula, whether Enfamil® LIPIL® or PBM Store Brand Formulas, is the single most critical aspect of any infant formula's marketing. No one would recommend that a mother feed her infant a formula that is nutritionally insufficient to promote a baby's healthy growth and development. That is why the Act guarantees that all infant formulas sold in the United States are nutritionally complete and that no infant formula, store brand or otherwise, fails to contain those essential nutrients to promote a baby's healthy growth and development.

13.    The FDA has made significant efforts to assure equal and sufficient quality standards among all infant formulas – including store brand infant formulas. This bolsters consumer confidence in choosing value-priced store brand infant formulas over more expensive brand name infant formulas.

14.    Despite the Act's requirements and the FDA's efforts, Mead Johnson knows that many consumers, including expectant and new mothers, are still predisposed mistakenly to believe that because store brands are less expensive, the manufacturers of store brand infant

formulas "skimp" on the quality or quantity of ingredients in order to undercut the price of the national brands.

15.     Unwilling to compete on price, and unwilling to surrender further market share to PBM, Mead Johnson has for a third time determined to use its market dominance, and perhaps the credibility and prestige of its pharmaceutical giant shareholder/parent BMS, to play on this misperception through a direct advertising campaign that falsely promotes its Enfamil® LIPIL® infant formula as the only formula which contains DHA and ARA (which Mead Johnson calls LIPIL®) to enhance brain and eye development in babies, and falsely to attack the nutritional sufficiency of PBM Store Brand Formulas.

**PBM and Mead Johnson**

16.     PBM, located in Gordonsville, Virginia, is the largest manufacturer and distributor of store brand infant formulas in the U.S., accounting for over 97% of store brand infant formula sales nationwide.  PBM's infant formulas are manufactured in accordance with the Act and the FDA guidelines, and marketed under the store brand labels of various large nationwide retailers including Wal-Mart, Kroger, Target and others.  These retailers sell PBM's store brand infant formulas to consumers at a cost of up to 50% less than the name brand infant formulas.

17.     Since its inception in 1997, PBM's highly successful marketing of its nutritionally complete store brand infant formulas has enabled PBM to capture approximately 8% of the annual $3.4 billion U.S. infant formula market, while at the same time saving each of its customers, on average, $600 to $700 per baby, per year, in infant formula costs.

18.    In comparison, Mead Johnson is one of the two largest U.S. manufacturers and distributors of branded infant formulas, with 2008 global estimated net sales of approximately $2.88 billion, of which approximately 60% derives from sales of the Enfamil® family of infant formulas.  Mead Johnson's Enfamil® LIPIL® infant formula is one of the largest-selling infant formulas in the United States.

19.    Notwithstanding Mead Johnson's dominance, PBM, as the value leader, is currently poised to take an even greater market share in this severe economic downturn, when consumers are particularly price sensitive.  The competing PBM Store Brand Formulas retail for up to 50% less than Enfamil® LIPIL®, yet are formulated to provide the same level of nutrients, including levels of DHA and ARA that meet or exceed the levels of DHA and ARA found in Enfamil® LIPIL®.  PBM Store Brand Formulas and Enfamil® LIPIL® contain DHA and ARA from the same supplier, Martek Bioscience Corporation ("Martek").

20.    Mead Johnson is well aware of the threat from PBM Store Brand Formulas to its long-held position as a market leader.  In 2009, Mead Johnson issued a prospectus in connection with the IPO.   Attached as Exhibit A is a true and correct copy of excerpts from the voluminous 2009 prospectus.  Mead Johnson acknowledges in the prospectus that:

- "**Economic downturns,** such as the current downturn, **could cause consumers to shift their purchases from our higher-priced premium products to lower-priced products, including private label or store brands,** which could materially adversely affect our business." (Exhibit A at 8) (emphasis added);

- "**we face significant competition from** domestic producers and **private label, store and economy brand manufacturers.**" (Exhibit A at 49) (emphasis added);

- "If the difference in the value attributed to [Mead Johnson's] products as compared to those of our competitors [store brands] narrows, consumers may choose not to buy our products."  (Exhibit A at 49); and

8

- "Many other companies, **including manufacturers of private label, store and economy products, manufacture and sell one or more products that are similar to those marketed by us.**" (Exhibit A at 84) (emphasis added).

21.     PBM, by far the largest and most successful private label/store brand/economy competitor to Mead Johnson, has an 8% share of the infant formula market and was poised to gain even more market share as consumers seek value for infant formulas of comparable quality during the current economic crisis.  Mead Johnson acknowledged as much in its 2009 prospectus, stating:

- "… In periods of economic uncertainty, consumers tend to shift their purchases from our higher-priced premium products to lower-priced products, including private label and store brand products.  We believe private label and store brand product manufacturers have continued to gain market share in the United States over the past 12 months." (Exhibit A at 16).

22.     Faced with increasing competition from value-priced PBM Store Brand Formulas, Mead Johnson could have engaged in various appropriate competitive responses, such as lowering the price of Enfamil® LIPIL®, but that would have substantially reduced the profits that Mead Johnson enjoys on each sale of Enfamil® LIPIL®.

23.     Instead, as Mead Johnson did in 2000, and then again in 2002, it chose, for a third time, to act unlawfully by engaging in a false advertising campaign that falsely promotes its own product, Enfamil® LIPIL®, and disseminated falsehoods attacking the nutritional sufficiency of the competing PBM Store Brand Formulas.

**Mead Johnson's First False Advertising Campaign**

24.     In 2000, Mead Johnson formed a "private label" task force to "fight the battle" against PBM's store brand infant formulas by attacking their nutritional sufficiency with

deliberate and reckless disregard to truth or falsity of Mead Johnson's advertising. Mead Johnson launched a nationwide smear campaign to poison the minds of health care providers by disseminating false documents and other literature, as well as orally stating that PBM's store brand infant formulas "fall short" of the "most current recommended dietary intakes" of calcium established by the National Academy of Sciences and the American Academy of Pediatricians and the "required" daily intake of folic acid. Both of Mead Johnson's statements about the levels of calcium and folic acid in PBM's store brand infant formulas were literally false.

25.     Mead Johnson refused PBM's pre-suit demands to cease its false advertising campaign and instead attempted to launch a separate action in its home court in Evansville, Indiana, to declare its false statements true.

26.     PBM filed a lawsuit in this District, styled *PBM Products Inc. v. Mead Johnson & Company*, Civil Action No.: 3:01 CV 199 (Spencer, J), alleging that Mead Johnson had violated the Lanham Act, various state laws and common law, and seeking both preliminary and permanent injunctive relief and damages from Mead Johnson (hereinafter "First False Advertising Action").

27.     This Court denied Mead Johnson's request to transfer the First False Advertising Action in this Court to Indiana, PBM's action proceeded in this District and Mead Johnson initially denied that its advertising materials and statements about PBM's infant formulas were false. But Judge Spencer found otherwise, entering a temporary restraining order (the "Order") against Mead Johnson, enjoining it from making any further such false statements concerning PBM's store brand infant formula and specifically directing Mead Johnson to "immediately

retrieve" the false and defamatory written materials that it had disseminated to over 90,000

health care professionals nationwide. Specifically, this Court's Order states,

- … [i]t appear[s] to the Court that **PBM is likely to incur actual and imminent irreparable harm** if immediate injunctive relief is not granted; that the requested injunctive relief will not harm Mead Products ... that **PBM is likely to succeed on the merits of its claim**; and that the **public interest would be served by the requested injunctive relief.**

- … PBM's Petition for a Temporary Restraining Order be, and hereby is, GRANTED, and it is further adjudged, ORDERED, and decreed, that …:

- Mead Johnson is immediately enjoined and restrained, … from doing any of the following.

- publishing or circulating any advertisement, promotional material, or other literature that bears **any … representation concerning PBM's infant formula that is false, including** that, "STORE BRAND FORMULAS FALL SHORT OF RECOMMENDED INTAKES*," or, "STORE BRAND FORMULAS REQUIRE MORE VOLUME TO MEET THE RECOMMENDED INTAKES* FOR…CALCIUM," or from implying same.

- making **any false statement or representation concerning PBM's infant formula** that is false, including that "STORE BRAND FORMULAS FALL SHORT OF RECOMMENDED INTAKES*," or, "STORE BRAND FORMULAS REQUIRE MORE VOLUME TO MEET THE RECOMMENDED INTAKES* FOR…CALCIUM," or from implying the same.

- Mead Johnson is DIRECTED to retrieve any and all advertisements, promotional materials or other literature containing the aforementioned assertions, claims, or allegations regarding PBM's store brand formula from the public forum. …

Attached as Exhibit B is a true and correct copy of the Order, dated April 4, 2001 (emphasis

added).

28.    PBM deposed Mead Johnson's Senior Marketing Director and Chief Medical

Officer, who admitted under oath that Mead Johnson's statements were literally false. As a

result, Judge Spencer continued the Order prohibiting Mead Johnson from making any further

such false statements. Despite finally admitting its literal falsity, Mead Johnson refused to concede that its nationwide false advertising campaign had caused PBM to suffer irreparable harm. In fact, Mead Johnson continued to make false statements about PBM's folic acid levels even after PBM sought and received the Order.

29.    Discovery also disclosed that Mead Johnson had unilaterally decided that, rather than comply with the Court's Order immediately to "retrieve" Mead Johnson's false ads, it would simply telephone the thousands of health care provider facilities to whom Mead Johnson had earlier provided over a million false ads for distribution to parents, and ask whoever answered the phone to discard any of Mead Johnson's remaining literally false ads. Judge Spencer found Mead Johnson's delay and failure to retrieve the false ads spoiled evidence and he held Mead Johnson in contempt of the Order. Specifically, this Court held:

- … Mead Johnson's delay in retrieving the advertisements containing the false statements about the calcium levels in PBM's store brands DOES VIOLATE the requirements of the Temporary Restraining Order. Despite Mead Johnson's understanding to the contrary, in this jurisdiction, "immediately" means that the defendant should have dropped whatever it was doing and comply - nothing more, and certainly nothing less. Mead Johnson's six day delay in beginning the retrieval process, whether to provide new advertising, seek new counsel, or see to it that there was nothing left in the public forum to collect, was anything but immediate compliance. The Court would hope that in the future, Mead Johnson's interpretation of the Court's Orders would err on the side of the literal, as opposed to the fanciful, interpretation.

- … It is probably fair to say, however, that the advertisements in dispute were ill considered and hastily, if not negligently, put together, and that Mead Johnson's delay in their retrieval from the public forum compounded the harm to the plaintiff. Therefore, as a fine for Mead Johnson's contempt, the Court AWARDS the plaintiff their attorney's fees and costs associated with securing Mead Johnson's compliance with the Temporary Restraining Order.

- Let this Order be FAIR WARNING to Mead Johnson (its employees, agents, and attorneys), that any further delay, or creative exegesis of the plain words of the Court's Orders, will result in a swift and severe penalty.

Attached as Exhibit C is a true and correct copy of this Court's contempt order of May 1, 2001 (emphasis in orginal).

30.    Based on Mead Johnson's spoliation of evidence, on the eve of trial, Judge Spencer granted PBM's motion *in limine* for a jury instruction that would have instructed the jury to presume that Mead Johnson distributed all of the more than one million false ads it had failed to "retrieve."

31.    The First False Advertising Action terminated just before trial, after a Court-supervised mediation resulted in Mead Johnson settling PBM's claims.

**Mead Johnson's Second False Advertising Campaign**

32.    In 2002, Mead Johnson launched another false advertising campaign against PBM's store brand infant formula which led to PBM filing a second action in this District, styled *PBM Products Inc. v. Mead Johnson & Company,* Civil Action No. 3:02 CV 944 (Spencer, J) alleging violations of the Lanham Act, various state laws and common law, seeking both preliminary and permanent injunctive relief and damages from Mead Johnson (hereinafter "Second False Advertising Action").

33.    The Second False Advertising Action was based in part on PBM learning that both during *and after* the First False Advertising Action, Mead Johnson continued unlawfully to promote Enfamil® by distributing a chart which made the damaging and false assertion – "none added" – regarding beneficial nucleotides contained in PBM's store brand infant formula.  This

13

falsely led the recipient to believe that PBM's infant formula contained "none" of the beneficial nucleotides.

34.    In fact, PBM's store brand infant formulas contained the appropriate amount of beneficial nucleotides in a number equal to or greater than Mead Johnson's Enfamil®.

35.    This Court signed a temporary restraining order on consent of the parties that enjoined Mead Johnson from publishing any or circulating any false or misleading advertisement that related to nucleotides, or the quantity, quality or nutritional sufficiency of nucleotides, in PBM's store brand infant formulas, including that PBM's store brand infant formulas did not have nucleotides added.

36.    This Court also directed Mead Johnson to retrieve and to preserve all advertisements containing the prohibited statements discussed above.

37.    By consenting to Judge Spencer's entry of a second order restraining Mead Johnson from further disseminating its false statements about PBM's store brand infant formula and by settling with PBM, Mead Johnson quickly terminated the Second False Advertising Action.

38.    The Second False Advertising Action highlighted Mead Johnson's continuing practice and pattern of using false advertising to destroy PBM's market share by making false allegations of nutritional insufficiency of PBM's store brand infant formula.

39.    Despite two restraining orders in two separate actions, a contempt order for spoiling evidence, and admissions of the literal falsity of its previous advertising claims, Mead Johnson continues falsely to promote and to make false comparison claims about Enfamil®

LIPIL®, and to make false insufficiency claims about PBM Store Brand Formulas. By its misrepresentations, Mead Johnson irreparably destroys PBM's reputation and discourages customers from buying lower priced but nutritionally equivalent competing PBM Store Brand Formulas.

**Mead Johnson's Third False Advertising Campaign**

40.    Mead Johnson's latest false advertising campaign targets interested consumers through the Mailer, the Print Ads and on its website all of which make false statements about Enfamil® LIPIL® and mislead consumers about the nutritional sufficiency of PBM Store Brand Formulas. Attached as Exhibit D is a true and correct copy of the Mailer. After a reasonable opportunity for further investigation and discovery, PBM expects to have evidentiary support to establish that Mead Johnson widely distributed false advertisements similar to the Mailer. Attached as Exhibit E is a true and correct copy of one of the Print Ads. Attached as Exhibit F is a true and correct copy of another of the Print Ads. Attached as Exhibit G is a true and correct copy of an excerpt from Mead Johnson's website.

41.    Mead Johnson has trademarked the word "LIPIL" for the DHA and ARA it puts into its Enfamil® formula and uses the LIPIL® trademark to describe it. As Mead Johnson explains on its website (Ex. G):

- **What is LIPIL?**

- LIPIL is the name given to our blend of the nutrients DHA (docosahexaenoic acid) and ARA (arachidonic acid). These nutrients are found in breast milk, and studies have shown them to be important building blocks of a baby's brain and eyes.

42.    Thus, Mead Johnson defines its LIPIL® formulation as referring exclusively to the DHA and ARA nutrients, and further asserts that it has discontinued distributing in the U.S. an older Enfamil® formulation that did not contain DHA and ARA.

43.    Mead Johnson sells the DHA and ARA supplemented infant formula under the name Enfamil® LIPIL®.

44.    PBM also formulates PBM Store Brand Formulas to contain amounts of DHA and ARA which meet or exceed the levels of DHA and ARA found in Enfamil® LIPIL®, but PBM uses the generic term "lipids" to describe these fats in the PBM Store Brand Formulas.

45.    The DHA and ARA found in PBM's store brand infant formula and Mead Johnson's Enfamil® LIPIL® are sourced from the same supplier, Martek, and come from the same additives, crypthecodinium cohnii oil, which contains DHA, and mortierella alpina oil, which contains ARA. Attached as Exhibit H is a true and correct copy of a label from Enfamil® LIPIL®. Attached as Exhibit I is a true and correct copy of a label from one of the PBM Store Brand Formulas. Both the Enfamil® LIPIL® label and the PBM label list crypthecodinium cohnii oil as the source of their DHA and mortierella alpina oil as the source of their ARA. Mead Johnson well knows that Martek supplies both Mead Johnson and PBM with Martek's DHA and ARA supplements, as Martek is the only FDA-approved source for DHA and ARA used in infant formula.

46.    Mead Johnson's Print Ads, its website and the Mailer, claim to rely on a clinical study which compares its prior formulation of Enfamil® without DHA and ARA, to Enfamil® LIPIL® with DHA and ARA. According to Mead Johnson's claims, that study found that the

16

addition of DHA and ARA (which Mead Johnson calls "LIPIL®" and PBM calls "lipids") clinically improved brain and eye development in infants.

47.    If Mead Johnson's clinical study is accurate, it proves that the Martek-supplied DHA and ARA added to Enfamil® are responsible for the improved brain and eye development in the infants, not any other aspect of Enfamil®, and that *any* infant formula with the same levels of DHA and ARA as Enfamil® LIPIL® will improve brain and eye development in infants, including PBM Store Brand Formulas which are formulated to contain amounts of DHA and ARA which meet or exceed the levels found in Mead Johnson's Enfamil® LIPIL® and which are sourced from the same supplier, Martek.

48.    In the Print Ads and Mailer, Mead Johnson improperly uses its clinical study results to make false and misleading statements concerning Enfamil® LIPIL® as compared to store brand infant formulas.

49.    One of Mead Johnson's Print Ads falsely states, "[o]nly Enfamil® has LIPIL®, our blend of DHA and ARA, important nutrients found in breast milk" (Ex. E).  In fact, Enfamil® is not the "only" infant formula that "has DHA ... and ARA...."  PBM Store Brand Formulas are formulated to contain both DHA and ARA sourced from Martek in amounts that meet or exceed the levels found in Enfamil® LIPIL®.

50.    Mead Johnson reinforces the false and misleading Print Ads with its Mailer which includes the following false and misleading statement:

**En-Fact:** Enfamil LIPIL's unique formulation is not available in any store brand.

17

51.     By Mead Johnson's own definition, "LIPIL" is simply the DHA and ARA, which is not "unique," because it is also available in PBM Store Brand Formulas.

52.     From the above-described false premises, Mead Johnson reaches further in the Mailer to mislead mothers with various statements designed to undermine consumer confidence in PBM Store Brand Formulas:

- "It may be tempting to try a less expensive store brand, but only Enfamil LIPIL is clinically proven to improve brain and eye development."

- "So before you try a store brand of formula, …

- "All infant formulas are not the same."

- "Store brands may cost less, but Enfamil® gives your baby more."

- "And that's something you can't put a price on"

- "There are plenty of other ways to save on baby expenses without cutting back on nutrition."

53.     Each of the above statements, built on the false premise that PBM's store brand infant formulas lack Enfamil®'s DHA and ARA, which Mead Johnson calls LIPIL®, and therefore do not contribute to enhanced brain and eye development, are calculated to damage PBM and to mislead consumers regarding the confidence that they should have in FDA-compliant store brand infant formulas.

54.     And, in arguably the most alarming and outrageous misleading advertisements to date, Mead Johnson placed a graphic in the Mailer, which also appears on its website and in the Print Ads, whereby Mead Johnson seeks to highlight the stakes to infant brain and vision development from selecting store brand formula instead of Enfamil® LIPIL®:





Exs. D, F, G.

55.    Mead Johnson's objectives from its blurry-eyed baby graphic are clear – to instill in expectant and new mothers, its target market, the false understanding that using PBM Store Brand Formulas will severely curtail their babies' visual acuity, because PBM Store Brand Formulas do not contain "LIPIL®" (*i.e.* Mead Johnson's name for DHA and ARA), when PBM Store Brand Formulas are formulated to contain both DHA and ARA in amounts that meet or exceed the levels of DHA and ARA found in Enfamil® LIPIL®.

56.    Mead Johnson knows, from Mead Johnson's experience in the First and Second False Advertising Actions, that its false and misleading efforts to undermine consumer confidence in nutrition available from store brand infant formulas misleads consumers, and, therefore, causes irreparable harm to PBM, leads to court-ordered sanctions and to significant monetary settlements.

57.    PBM can only assume that Mead Johnson undertook its most recent Enfamil® LIPIL® false advertising campaign, after Mead Johnson determined that the benefits of irreparable reputational damage to PBM and its corresponding long-term gain to Mead Johnson

was worth whatever judgment, sanction, or settlement Mead Johnson may be required to pay in this Third False Advertisement Action.

58.    Mead Johnson's leading brand competitor brought a false advertising complaint against Mead Johnson before the National Advertising Division of the Council of Better Business Bureaus ("NAD") concerning Enfamil® LIPIL®.  Attached as Exhibit J is a true and correct copy of the February 12, 2009 NAD Decision.  Although PBM is not a member of NAD, both Mead Johnson and its leading brand competitor are and therefore submit disputes regarding their advertising to NAD.

59.    The NAD "is incredulous," after three separate reviews, that Mead Johnson has yet to cease false and misleading advertisements for Enfamil® LIPIL® and states that it will refer the matter to the Federal Trade Commission for review.  (Ex. J).

60.    Now, Mead Johnson has intentionally focused its false and misleading advertising campaign against PBM Store Brand Formulas, misleading consumers into believing that "only" Enfamil® LIPIL® has DHA and ARA.

**Mead Johnson's False and Misleading Advertisements Are Causing Harm to the Public**

61.    Mead Johnson's false and misleading advertising campaign causes cost-conscious parents – a subset of consumers that is vulnerable in these difficult economic times – anxiety over the health, nutrition and development of their newborn infants and mislead them to believe falsely that less expensive PBM Store Brand Formulas lack DHA and ARA, which Mead Johnson asserts are essential ingredients to enhance brain and eye development in babies and are "only" available in or are "unique" to Enfamil® LIPIL®.

62.    Mead Johnson's false and misleading advertising campaign is designed to cause parents (including those with low or decreasing incomes) to forgo the purchase of significantly less expensive PBM Store Brand Formulas for the more expensive, yet nutritionally and qualitatively equivalent Enfamil® LIPIL®.

63.    The mothers who are deceived by the falsehoods from Mead Johnson's Print Ads campaign, Mailer and website may not buy or feed PBM Store Brand Formulas to their infants, and they likely will disseminate Mead Johnson's falsehoods to other mothers or expectant mothers in their peer groups.  This "multiplier" effect has caused and will continue to cause immeasurable and irreparable harm to PBM's reputation, good will and market share by the loss of prospective consumers who, but for Mead Johnson's dissemination of the false and misleading information, would have purchased PBM Store Brand Formulas.

64.    The reputational injury to PBM will ripple through the market for years, expropriating sales from PBM Store Brand Formulas to Mead Johnson's Enfamil® LIPIL® and coercing anxious parents into paying millions of dollars more than necessary for infant formula.

65.    Moreover, Mead Johnson's actions directly undermine Congressional intent for the Act and the FDA's corresponding efforts to provide public confidence in the nutritional sufficiency of all infant formula, whether expensive brand labels or less expensive private/store brands.  Mead Johnson's actions are especially egregious given the hard economic times and resulting difficult economic choices faced by many new parents.

## COUNT I

### (Violation of Lanham Act Section 43(a)(1)(B), 15 U.S.C. § 1125(a)(l)(B))

66.    PBM realleges and incorporates by reference the allegations in the foregoing paragraphs.

67.    Section 43(a)(l)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(l)(B), prohibits, any

"false or misleading description of fact, or false or misleading representation of fact which…in commercial advertising or promotion, misrepresents the nature, characteristics, qualities…of….goods, services, or commercial activities."

68.    Mead Johnson's false and misleading representations and statements violate Section 43(a)(1)(B) of the Lanham Act by misrepresenting that

(i)    Enfamil® LIPIL® (which is Mead Johnson's name for DHA and ARA) is "unique", "is not available in any store brand" and that "[o]nly Enfamil® has LIPIL®, our blend of DHA and ARA, important nutrients found in breast milk,"

(ii)    PBM Store Brand Formulas will not provide the same level of visual and mental development as Enfamil® LIPIL® because they do not contain DHA and ARA when, in fact, PBM Store Brand Formulas are formulated to contain amounts of DHA and ARA that meet or exceed the levels found in Enfamil® LIPIL®, and

(iii)    only Enfamil® LIPIL® fully supports an infant's visions and brain development, when in fact PBM Store Brand Formulas, formulated to levels of DHA and ARA that meet or exceed those found in Enfamil® LIPIL®, provide the same full support for vision and brain development.

69.    Mead Johnson's false and misleading representations and statements have irreparably injured PBM and will continue to do so unless enjoined.

70.    Unless this Court immediately, preliminarily and permanently enjoins Mead Johnson and orders Mead Johnson to retract and to correct its false and misleading statements, these false and misleading statements will continue to cause consumer confusion, scare consumers into purchasing the much more expensive Enfamil® LIPIL® infant formula in these hard economic times, and cause PBM to suffer a loss of public confidence, sales, profits, and goodwill.  Much of that that loss is and will be irreparable.

## COUNT II

### (Violation of Lanham Act Section 43(a)(1)(A), 15 U.S.C. § 1125(a)(1)(A))

71.    PBM realleges and incorporates by reference the allegations in the foregoing paragraphs.

72.    Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), prohibits, any:

> "false or misleading description of fact, or false or misleading representation of fact which…is likely to cause confusion, or to cause mistake, or to deceive as to the approval of goods, services, or commercial activities by another person."

73.    Mead Johnson's false and misleading commercial speech and statements violate Section 43(a)(1)(A) of the Lanham Act and are likely to confuse or deceive consumers into mistakenly believing that

> (i)    Enfamil® LIPIL® (which is Mead Johnson's name for DHA and ARA) is "unique" to Enfamil®, "is not available in any store brand," and "[o]nly

Enfamil® has LIPIL®, our blend of DHA and ARA, important nutrients found in breast milk,"

(ii)    PBM Store Brand Formulas do not fully support visual and mental development and do not contain DHA and ARA (which Mead Johnson calls "LIPIL®") when, in fact, PBM Store Brand Formulas are formulated to contain amounts of DHA and ARA that equal or exceed those found in Enfamil® LIPIL®, and

(iii)    the clinical tests support only Enfamil® LIPIL® as enhancing infants' visions and brain development, when, in fact PBM Store Brand Formulas are formulated to contain amounts of DHA and ARA that equal or exceed the levels found in Enfamil® LIPIL and provide the same full support for vision and brain development.

74.    Mead Johnson's false and misleading representations and statements have irreparably injured PBM and will continue to do so unless enjoined.

75.    Unless this Court immediately, preliminarily and permanently enjoins Mead Johnson and orders Mead Johnson to retract and to correct its false and misleading statements, these false and misleading statements will continue to cause consumer confusion, coerce consumers to purchase the more expensive Enfamil® LIPIL® infant formula in the mistaken belief that it is the only formula approved that provides superior eye and brain development, and cause PBM to suffer a loss of public confidence, sales, profits, and goodwill. Much of that that loss is and will be irreparable.

24

## COUNT III

### Commercial Disparagement

76.    PBM realleges and incorporates by reference the allegations in the foregoing paragraphs.

77.    Mead Johnson's false statements regarding PBM Store Brand Formulas aimed directly for an essential component of PBM's business reputation concerning the nutritional sufficiency available in PBM Store Brand Formulas.

78.    Mead Johnson intended its false statements to cause harm to PBM's pecuniary interests and should have recognized that Mead Johnson's false statements would cause such harm.

79.    Mead Johnson knew that its above-alleged false statements were false, or Mead Johnson made the statements in reckless disregard for their truth or falsity.

80.    Mead Johnson acted with ill will or with conscious disregard of PBM's rights in making the above-alleged false statements.

81.    Although difficult to calculate, PBM has already suffered and will continue to suffer significant actual damages in an amount to be proved at trial, as a proximate result of Mead Johnson's false statements.

### Prayer For Relief

WHEREFORE, plaintiff PBM prays that this Court enter judgment in favor of PBM and against defendants Mead Johnson Nutrition Company and Mead Johnson & Company as follows:

- a restraining order temporarily, preliminarily, and permanently enjoining Defendants from engaging in the false advertising campaign and any colorable variation thereof, and from any further dissemination of its deceptive, false and misleading advertisements including, but not limited to, advertising, promotional materials or other literature that bear any false or misleading designation, description, or representation concerning PBM Store Brand Formulas, such as,

    (i)     "[o]nly Enfamil® has LIPIL®, our blend of DHA and ARA, important nutrients found in breast milk,"

    (ii)    "En-fact: Enfamil LIPIL's unique formulation is not available in any store brand" and

    (iii)   the blurry eyed baby graphic;

- an order directing the Defendants immediately to retrieve all copies of such deceptive, false and misleading advertisements;

- disgorgement of the Defendants' profits from the sales of Enfamil® LIPIL® infant formula from the date of its first dissemination of its false advertising, trebled under the Lanham Act , 15 U.S.C. § 1117;

- an amount for PBM's damages, including but not limited to, its lost sales, trebled under the Lanham Act, 15 U.S.C. § 1117;

- an award of an amount sufficient to pay PBM's costs of appropriate corrective advertising to redress PBM's reputational injury and lost good will;

- for attorney fees in this exceptional case, pursuant to the Lanham Act, 15 U.S.C. § 1117;

- for exemplary and punitive damages available under Virginia law in an amount sufficient to punish the Defendants for their ill-willed or reckless disregard of PBM's interests in making false statements which harmed PBM pecuniary interests and to prevent and deter any future similar conduct by Defendants;

- for costs of this action; and

- for other relief as the Court may deem fit to award.

## DEMAND FOR A JURY TRIAL

PBM hereby demands a trial by jury as to each and every triable issue.

Dated:  April 27 2009

PBM PRODUCTS, LLC

By: _____

One of Its Attorneys

Robert F. Redmond, Jr. (VSB No. 32292)
Ryan F. Furgurson (VSB No. 72133)
Williams Mullen A Professional Corporation
Two James Center
1021 East Cary Street
P. O. Box 1320
Richmond, VA  23218-1320
Tel:  804.783.6490
Fax:  804.783.6507
rredmond@williamsmullen.com
rfurgurson@williamsmullen.com

*Of counsel*

David G. Greene  (NY Bar No.: 1892017)
Gregory T. Casamento (NY Bar. No: 2890671)
LOCKE LORD BISSELL & LIDDELL LLP
885 Third Avenue, 26th Floor
New York, NY 10022
(212) 812-8338 (D.G. Greene)
dgreene@lockelord.com
gcasamen@lockelord.com

Terrence P. Canade (Illinois Bar No. 06196823)
LOCKE LORD BISSELL & LIDDELL LLP
111 South Wacker Drive
Chicago, Illinois 60606-4410
(312) 443-1862 (T.P. Canade)
tcanade@lockelord.com

CHI1:7677200/00053:1585115v15

## VERIFICATION

I, Jack Schramm, Executive Vice President, of PBM Products, LLC, hereby state that I am authorized to make this Verification on behalf of PBM Products, LLC; and that pursuant to 28 U.S.C. § 1746, I hereby verify, under penalty of perjury, that the facts set forth in the foregoing Verified Complaint are true and correct.

Jack Schramm
Executive Vice President
PBM Products, LLC

Executed on April 27, 2009

28