UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

PBM PRODUCTS, LLC,

                      Plaintiff,

v.                                         Action No. 3:09–CV–269

MEAD JOHNSON NUTRITION
COMPANY AND MEAD JOHNSON &
COMPANY,

                      Defendants.

## MEMORANDUM OPINION

THIS MATTER is before the Court on Plaintiff's Motions for Temporary Restraining Order, Preliminary Injunction, and Expedited Discovery (Docket Nos. 2, 3, and 5), filed April 27, 2009. For the reasons that follow, the Court will DENY each Motion.

### I. BACKGROUND

The parties to this controversy produce infant formula and compete for shares of that market. Plaintiff, PBM Products, LLC ("PBM"), produces store brand infant formulas, while Defendants, Mead Johnson Nutrition Co. and Mead Johnson & Co. (collectively, "Mead Johnson" or "Defendant"), produce Enfamil® infant formula. Plaintiff complains that Defendant has "renewed its national false advertising campaign . . . by falsely stating that only Mead Johnson's Enfamil® LIPIL® has two fats, DHA . . . and ARA . . . , which Mead Johnson calls 'LIPIL®.'" (V. Compl. 2.) Apparently, these alleged false or misleading

1

advertisements appear in "the Mailer, the Print Ads and on its website" ("Advertisements").[1] (Id. ¶ 40.)

Mead Johnson's current infant formula, Enfamil® LIPIL®, contains docosahexaenoic acid ("DHA") and arachidonic acid ("ARA") (collectively, "Lipids"), while its prior formula did not. Mead Johnson has trademarked "LIPIL®" to refer to the Lipids as contained within its infant formula. The parties acknowledge that both PBM's store brand formula and Mead Johnson's Enfamil® LIPIL® utilize the same levels of the Lipids and obtain them from the same supplier, Martek Bioscience Corporation ("Martek")—the only FDA-approved source for the Lipids. (Id. ¶¶ 41-45.) In fact, the labels on both PBM's store brand formula and Mead Johnson's Enfamil® LIPIL® list "crypthecodinium cohnii oil" and "mortierella alpina oil" as the sources of the Lipids. (Id. Exs. H, I.)

The Advertisements cite studies that compared Defendant's current and prior formulas and apparently found that the addition of the Lipids results in improved eye and brain development for infants. Apparently, the National Institutes of Health sponsored these independent clinical trials ("Birch Studies"), which were conducted by Dr. Eileen Birch. Relying in part on the Birch Studies, notwithstanding the fact that its product and Plaintiff's product both contain the Lipids that originate from the same source and are shipped from the same supplier, Mead Johnson makes statements in the Advertisements to

---

[1] Although the Verified Complaint refers to several advertisements, Plaintiff clarified at the TRO Hearing, held Friday, May 1, 2009, that it only seeks injunctive relief based upon the Mailer. Thus, the Court will only discuss that advertisement in its analysis.

which Plaintiff vehemently objects. (Id. ¶¶ 40, 46-60.)[2]

Specifically in the Mailer,[3] Mead Johnson states, "It may be tempting to try a less expensive store brand, but only Enfamil LIPIL is clinically proven to improve brain and eye development." (Id.) Defendant places a footnote below this claim in noticeably smaller type which reads, "vs *prior* formulation of the same product without DHA and ARA, measured at 12 months for eye and 18 months for brain" ("Disclaimer"). (Id. (emphasis in original).) Later in the Mailer, the words "En-Fact: Enfamil LIPIL's unique formulation is not available in any store brand" appear. (Id.) Also in the Mailer, one observes a graphic labeled "Visual acuity at 12 months." (Id. Ex. D.) The graphic, which is divided down the middle, contains a picture of a duck. One side of the picture looks blurry, while the other appears clear. Next to the blurry side are the words "without LIPIL®," while the caption next to the clear side reads "with LIPIL®" ("Blurry Duck Graphic"). (Id.)[4] The Blurry Duck

---

[2] The Verified Complaint also states that Mead Johnson's lead competitor, Abbott Nutrition, brought a false advertising complaint against Mead Johnson before the National Advertising Division of the Council of Better Business Bureaus ("NAD"). (V. Compl. Ex. J.) Abbott complained of Mead Johnson's advertisement claiming "Enfamil® LIPIL® is the only infant formula shown in independent clinical studies to improve baby's [sic] brain and eye development." (Id. at 1.) NAD stated it was "incredulous that after two compliance proceedings . . . that [Mead Johnson] would disseminate advertising that clearly does not comply with NAD's [earlier] decision" and determined that the matter should be referred "to the appropriate government agency for possible law enforcement action. . . ." (Id. at 2-3.)

[3] This particular advertisement, mailed to participants, either at their request or as a result of consenting to participation in the Enfamil Family Beginnings® Program, provides a five-dollar check paid to the order of "Enfamil Retailer" that expires May 31, 2009. (Id. Ex. D.)

[4] The Blurry Duck Graphic also appears in several other advertisements. (See id. Exs. F & G.)

Graphic also contains the Disclaimer.[5]

Focusing on the statements identified above ("Mailer Statements"), Plaintiff asks this Court for immediate injunctive relief to prevent irreparable harm it claims it has or will suffer without this Court's intervention.

## II. LEGAL STANDARD

"A preliminary injunction is an extraordinary and drastic remedy . . . never awarded as of right." Munaf v. Geren, 128 S. Ct. 2207, 2219 (2008) (citing Yakus v. United States, 321 U.S. 414, 440 (1944)) (internal quotation marks omitted); accord In re Premier Automotive Servs., Inc., 492 F.3d 274, 284 n.2 (4th Cir. 2007). Before granting a preliminary injunction, the court must consider "(1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied; (2) the likelihood of harm to the defendant if the requested relief is granted; (3) the likelihood that the plaintiff will succeed on the merits; and (4) the public interest."[6] U.S. Dept. of Labor v. Wolf Run Mining Co., 452 F.3d 275, 280 (4th Cir. 2006) (citing Blackwelder Furniture Co. v. Seilig Mfg. Co., 550 F.2d 189, 193-94 (4th Cir. 1977)). The longstanding Fourth Circuit approach articulated in Blackwelder, 550 F.2d at 195, diminishes the importance of a plaintiff's likelihood of success on the merits where the balance of hardships weighs heavily in favor of the plaintiff. This Court,

---

[5] The Disclaimer also accompanies the claim, "Store brands may cost less, but Enfamil gives your baby more," which appears in the Mailer below the check provided therein. (Id. Ex. D.) The Court notes that the Disclaimer, therefore, appears in three different locations within the Mailer.

[6] A temporary restraining order and a preliminary injunction are conceptually indistinguishable and are thus governed by the same principles. See United States Dept. of Labor v. Wolf Run Mining Co., 452 F.3d 275, 281 n.1 (4th Cir. 2006).

however, has noted caution regarding "the balancing of harms test" utilized in Blackwelder as "contrary to Supreme Court precedent." Toolchex, Inc. v. Trainor, No. 3:08CV236, 2008 WL 2323232, at *3 (E.D. Va. June 2, 2008) (citing Scotts Co. v. United Indus. Corp., 315 F.3d 264, 271 n.2 (4th Cir. 2002)). The Supreme Court has clarified that a party must demonstrate a likelihood of success on the merits and that a court abuses its discretion by granting a preliminary injunction without considering that factor. See Munaf, 128 S. Ct. at 2219 (finding an abuse of discretion where the court refused to consider likelihood of success due to complex jurisdictional issues). The party seeking a preliminary injunction bears the burden of proving each factor justifying injunctive relief. Toolchex, Inc., 2008 WL 2323232, at *3 (citing Direx Israel, Ltd. v. Breakthrough Med. Corp., 952 F.2d 802, 812 (4th Cir. 1991)).

### III.  ANALYSIS

At present, Plaintiff has failed to carry its burden to demonstrate injunctive relief is warranted, primarily because it fails—at least at this point—to demonstrate a likelihood of success on the merits; the other factors, intertwined with the success on the merits inquiry, do not weigh in Plaintiff's favor. Each factor will be discussed in turn below.

#### A.  Likelihood of Success on the Merits

In the instant matter, Plaintiff has failed to demonstrate that it would likely establish that Defendant has violated the Lanham Act ("Act"), specifically 15 U.S.C. § 1125(a)(1)(A) or (B) (2006), by virtue of the Mailer Statements.[7]

---

[7]     Section 1125(a)(1)(A) prohibits use of a "false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause

> In order to prevail on the merits, PBM must demonstrate:
>
> (1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

Scotts, 315 F.3d at 272. To demonstrate a Lanham Act violation, Plaintiff must prove the representation challenged fits into one of two categories: "First, there are commercial claims that are literally false as a factual matter, either on their face or by necessary implication[.] . . . [S]econd, there are claims that may be literally true or ambiguous but which implicitly convey a false impression, are misleading in context, or are likely to deceive consumers." Black & Decker (U.S.) Inc. v. Pro-Tech Power Inc., 26 F. Supp. 2d 834, 862 (E.D. Va. 1998) (citing United Indus. Corp. v. Clorox Co., 140 F.3d 1175, 1180 (8th Cir. 1998); C.B. Fleet Co. v. SmithKline Beecham Consumer Healthcare, 131 F.3d 430 (4th Cir. 1997); Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1139 (9th Cir. 1997); Mylan Laboratories, Inc. v. Matkari, 7 F.3d 1130, 1138 (4th Cir.1993)). "Where the advertisement is literally false, a violation may be established without evidence of consumer deception." Scotts, 315 F.3d at 273. Conversely, "if a plaintiff's theory of recovery is

---

mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." Section 1125(a)(1)(B) prohibits use of a "false or misleading description of fact, or false or misleading representation of fact, which in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities."

premised upon a claim of implied falsehood, a plaintiff must demonstrate, by extrinsic evidence, that the challenged [representations] tend to mislead or confuse consumers." Id.

In arguing likelihood of success, Plaintiff states the situations in other cases in which advertisement campaigns have been enjoined "seem trivial in comparison to Mead Johnson's false advertising campaign to undermine consumer confidence in PBM's store brand infant formula by alarming consumers with the blurry-eyed baby graphic about the brain and visual development of infants." (Pl.'s Mem. Supp. Mot. TRO & Prelim. Inj. 10 (citing Time Warner Cable, Inc. v. DIRECTV, Inc., 497 F.3d 144, 162 (2d Cir. 2007); Coca-Cola Co. v. Tropicana Prods., Inc., 690 F.2d 312, 317 (2d Cir. 1982); U-Haul Int'l Inc. v. Jartran, Inc., 681 F.2d 1159, 1160-62 (9th Cir. 1982); Vidal Sassoon, Inc. v. Bristol-Myers Co., 661 F.2d 272, 278 (2d Cir. 1981); Ames Publ'g Co. v. Walker-Davis Publ'ns, Inc., 372 F. Supp. 1, 12 (E.D. Pa. 1974)).) Plaintiff offers this unhelpful conclusion as if it is self-evident. Whether or not these other cases are "trivial" when juxtaposed with Plaintiff's present claim, the Court finds none of the Mailer Statements are literally false, and Plaintiff provides no support, apart from its own convictions, that establishes confusion on the part of putative or existing customers due to any of the Mailer Statements.

1. <u>"It may be tempting to try a less expensive store brand, but only Enfamil LIPIL is clinically proven to improve brain and eye development."</u>

With regard the alleged literal falsity of this statement, Defendant gets the better of the argument. It is undisputed that the Birch Studies demonstrated, concomitant with the presence of the Lipids in Mead Johnson's formula, the benefits to vision and brain development claimed in this advertisement. As such, the reference to clinical studies cannot

be literally false. Because this statement cannot be considered literally false, Plaintiff bears the burden of demonstrating the statement tends to mislead customers. Nothing in the pleadings currently before the Court demonstrates such a tendency. Moreover, to the extent that a consumer could read the statement to mean that clinical studies have compared Mead Johnson's formula to other brands (which indubitably would be inaccurate), the Disclaimer clarifies the point that the Birch Studies only compared the current version of Mead Johnson's formula with its prior version that did not contain the Lipids. Plaintiff has not sufficiently demonstrated that this statement violates the Act.

2.  "En-Fact: Enfamil LIPIL's Unique Formulation Is Not Available in Any Store Brand."

Plaintiff's interpretation that the word "unique," as used in this statement, refers solely to the Lipids, or LIPIL®, seems strained. An objective reading of this statement suggests that "unique" refers, not to LIPIL® as an isolated component of the overall formula, but rather to Enfamil® LIPIL®, the formula in its entirety. That is, Enfamil® LIPIL® contains various ingredients, in addition to the Lipids, that provide the consumer with a "unique formulation" unavailable elsewhere. As long as Mead Johnson's product contains ingredients that other brands do not, the statement cannot be considered literally false. The Court notes, based upon its observations, statements at the TRO hearing, and the current pleadings before it, that Defendant's infant formula contains several ingredients unaccounted for in Plaintiff's store brand formula, and Plaintiff's formula contains a number of ingredients unaccounted for in Defendant's formula. (See Def.'s Mem. Opp'n Mot. TRO & Prelim. Inj. 13 (stating PBM's store brand contains twelve ingredients that Enfamil®

LIPIL® does not, and Enfamil® LIPIL® contains three ingredients that PBM's store brand does not); cf. V. Compl. Exs. H, I.)  Thus, Enfamil® LIPIL® is a unique blend of ingredients.  The statement cannot be considered literally false, and, again, Plaintiff has presented nothing that demonstrates current or potential consumers will tend to be misled by this statement.  Accordingly, Plaintiff fails to demonstrate this statement violates the Act.

3.      Blurry Duck Graphic and Captions

This advertisement is not literally false, as it appears to relate the results from the Birch Studies.  It is currently undisputed that the Birch Studies indicated that Mead Johnson's current formulation containing the Lipids provides visual and brain development benefits not demonstrated by its infant formula without the addition of the Lipids.  The question of literal falsity turns on whether the captions "With LIPIL®" and "Without LIPIL®" clearly convey what Mead Johnson claims is the intention of the graphic—that Enfamil® LIPIL® provides a benefit that Enfamil® without the Lipids did not.  (Defs.' Mem. Opp'n Mot. TRO & Prelim. Inj. 16.)  A plausible argument exists that the Duck Graphic may tend to convey the false impression that in order to obtain formula with the Lipids a consumer must purchase Enfamil® LIPIL®, when in fact this is not the case.  This plausible mistake notwithstanding, Defendant does provide the Disclaimer that clarifies which comparison the Birch Studies support:  "[Enfamil® LIPIL®] vs *prior* formulation of the same product without DHA and ARA, measured at 12 months for eye and 18 months for brain."  This is not literally false, and Plaintiff has failed to demonstrate, by extrinsic evidence, the Blurry Duck Graphic tends to lead consumers to the inaccurate conclusion.

9

In sum, at this juncture none of the Mailer Statements presents a literal falsity, and Plaintiff has not satisfied its burden to demonstrate these statements tend to mislead or confuse the consuming public. Therefore, this factor weighs in favor of Defendant.

### B. Likelihood of Irreparable Harm to Plaintiff

This Court has previously stated that the irreparable harm prong could be satisfied upon "a demonstration that the competitor's advertising tends to mislead consumers." Black & Decker (U.S.) Inc. v. Pro-Tech Power Inc., 26 F. Supp. 2d 834, 861 (E.D. Va. 1998); see also Abbott Labs. v. Mead Johnson & Co., 971 F.2d 6, 16, 18 (7th Cir. 1992) (noting "well-established presumption that injuries arising from Lanham Act violations are irreparable, even absent a showing of business loss"); Cornwell v. Sachs, 99 F. Supp. 2d 695, 707 (E.D. Va. 2000); Telebrands Corp. v. E. Mishan & Sons, No. 97 CIV 1414, 1997 WL 232595, at *24 (S.D.N.Y. May 7, 2007) ("The paramount public interest in avoiding false advertising creates an inference of irreparable injury, where the parties are competitors."). Accordingly, the Fourth Circuit has stated, "[W]hen the failure to grant preliminary relief creates the possibility of permanent loss of customers to a competitor or the loss of goodwill, the irreparable injury prong is satisfied." Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co., 22 F.3d 546, 552 (4th Cir. 1994).

Because Plaintiff largely relies on the presumption that false advertisements cause a competitor irreparable harm (see Pl.'s Mem. Supp. Mot. TRO & Prelim. Inj. 9-10), a determination as to this prong necessarily depends on whether Plaintiff will likely demonstrate the Mailer Statements violate the Act. Hence, Plaintiff's failure to demonstrate

10

it would succeed necessarily diminishes its ability to demonstrate irreparable harm at this point.[8]  Accordingly, this consideration currently favors Defendant.

### C. Likelihood of Harm to Defendant

Plaintiff also fails to demonstrate that this element weighs in its favor.  Plaintiff predictably suggests that Mead Johnson will suffer no harm as a result of injunctive relief and further states "[a] defendant in a Lanham Act case can assert no equitable interest in the perpetuation of an advertising campaign that is literally false."  (Pl.'s Mem. Supp. Mot. TRO & Prelim. Inj. 12 (quoting Castrol Inc. v. Pennzoil Co., 799 F. Supp. 424, 440 (D.N.J. 1992), aff'd 987 F.2d 939 (3d Cir. 1993)) (internal quotation marks omitted).)  Moreover, Plaintiff avers that "to the extent it suffers any harm at all, Mead Johnson laid 'much of the harm at its own doorstep' when it decided to engage in false and misleading business tactics."  (Pl.'s Mem. Supp. Mot. TRO & Prelim. Inj. 13 (quoting Rubbermaid Commercial Prods., Inc. v. Contico Int'l, Inc., 836 F. Supp. 1247, 1258 (W.D. Va. 1993)).)

However, absent evidence that the Mailer Statements are literally false or tend to mislead the public, Plaintiff has failed to demonstrate a Lanham Act violation.  Defendant should not be enjoined from utilizing permissible advertisements.  Given the fluid nature of the consumer pool, enjoining Defendant could cost Defendant potential or current customers.  (See V. Compl. ¶¶ 9-10 ("[T]here is constant turnover among purchasers of infant formula.  To maintain market share, infant formula companies must continually

---

[8]   Plaintiff also claims, "Evidence at the preliminary injunction hearing will demonstrate that Mead Johnson's false advertising campaign is causing substantial irreparable harm to PBM."  (Pl.'s Mem. Supp. Mot. TRO & Prelim. Inj. 11.)  The Court cannot presently enjoin Defendant based only upon the anticipation of such evidence.

replace departing customers with expectant and new mothers.") This, the Court considers an unjustifiable harm at present. Therefore, this element weighs in favor of Defendant.

### D. The Public Interest

Plaintiff argues that an injunction serves the public interest because consumers have an interest in not being deceived. (Pl.'s Mem. Supp. Mot. TRO & Prelim. Inj. 14.) Specifically, Plaintiff argues that if this Court refuses to enjoin Defendants, the public—particularly, vulnerable expectant mothers and mothers of infants—will believe Enfamil® LIPIL® is the only infant formula with the Lipids. Plaintiff avers that this misconception will likely lead consumers to purchase Defendants' product, which costs significantly more than Plaintiff's store brand, in the midst of this economic downturn. (Id.; V. Compl. ¶ 19.)

This argument presupposes the existence of a false statement. As previously discussed, Plaintiff has not supported this contention at this stage of the proceedings. If the Mailer Statements do nothing more than convey accurate facts, then the public interest is not served by precluding an advertisement utilizing these facts. The consuming public may weigh the costs and benefits of products relying upon the accurate facts placed before them in advertisements. Accordingly, Plaintiff has failed to demonstrate that this factor weighs in its favor.

Thus, at present none of the relevant factors for granting a temporary restraining order weigh in Plaintiff's favor, and no justification exists to grant the remedy Plaintiff now seeks.

## VI.  MOTION TO EXPEDITE DISCOVERY

Because the Court has denied the Motion for Temporary Restraining Order and, therefore no evidentiary hearing will be required to grant a preliminary injunction, it declines to grant Plaintiff's Motion to Expedite Discovery.

## V.  CONCLUSION

For the foregoing reasons, the Court will DENY Plaintiff's Motions.

It will be SO ORDERED.

_____/s/_____<br>
James R. Spencer<br>
Chief United States District Judge

ENTERED this __7th__ day of May 2009