## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | | |
|---|---|---|
| PBM PRODUCTS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:09cv269 (JRS) |
| | ) | |
| MEAD JOHNSON NUTRITION COMPANY | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and MEAD JOHNSON & COMPANY, | ) | |
| | ) | |
| Defendant and | ) | |
| Counterclaim-plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PBM PRODUCTS, LLC, and | ) | |
| PAUL MANNING, | ) | |
| | ) | |
| Counterclaim-defendants. | ) | |

**ANSWER AND COUNTERCLAIMS OF DEFENDANT MEAD JOHNSON & COMPANY TO VERIFIED COMPLAINT FOR INJUNCTION AND OTHER RELIEF**

**ANSWER**

Defendant Mead Johnson & Company ("Mead Johnson")[1] hereby answers Plaintiff PBM Products, LLC's ("PBM") Verified Complaint for Injunctive and Other Relief ("Complaint") as follows:

The section of the Complaint entitled "Nature of Action" constitutes PBM's characterization of the nature of the case, and no response is required. To the extent a response is required, all of the allegations in the section of the Complaint entitled "Nature of Action" are denied.

---

[1] Mead Johnson Nutrition Company has filed a motion to dismiss and thus no answer is required at this time.

1.      Mead Johnson is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 1, and they are therefore denied.

2.      Mead Johnson is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 2, and they are therefore denied.

3.      Mead Johnson is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 3, and they are therefore denied.

4.      Mead Johnson admits that it is a Delaware corporation with its principal place of business in Evansville, Indiana.  Mead Johnson admits that it was previously a wholly owned subsidiary of Bristol-Myers Squibb Company ("BMS").  Mead Johnson admits that it is currently a wholly owned subsidiary of Mead Johnson Nutrition Company.  All allegations in paragraph 4 that Mead Johnson does not expressly admit are denied.

5.      Mead Johnson admits that Mead Johnson Nutrition Company is a corporation organized under the laws of Delaware with its principal place of business in Evansville, Indiana. Mead Johnson further admits that Mead Johnson Nutrition Company was formed in 2008.  Mead Johnson admits that Bristol-Myers Squibb Company ("BMS") holds approximately 80% of the shares of Mead Johnson Nutrition Company.  Mead Johnson objects to PBM's use of the term "Mead Johnson" to refer to both Mead Johnson and Mead Johnson Nutrition Company.  Such use is inaccurate and misleading.  All allegations in paragraph 5 that Mead Johnson does not expressly admit are denied.

6.      Mead Johnson admits that it markets and distributes Enfamil® LIPIL® in Virginia and throughout the United States.  The use of the term "competes" in paragraph 6 is vague, and thus Mead Johnson is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 6, and they are therefore denied.

7.     Mead Johnson admits that this Court has jurisdiction over this matter with respect to Mead Johnson.  Mead Johnson denies that this Court has jurisdiction over this matter with respect to Mead Johnson Nutrition Company.

8.     Mead Johnson admits that venue is proper in this District with respect to Mead Johnson.  Mead Johnson denies that venue is proper in this District with respect to Mead Johnson Nutrition Company.

9.     Mead Johnson admits that the majority of people who purchase infant formula are expectant and new parents.  Mead Johnson admits that many infants are not fed infant formula beyond 12 months of age.  Mead Johnson admits that there is turnover among purchasers of infant formula.  All allegations in paragraph 9 that Mead Johnson does not expressly admit are denied.

10.     Mead Johnson admits for the twelve months ending on December 31, 2008, Mead Johnson's worldwide advertising and product promotion budget was nearly $300 million.  The phrase "public offering documents" in paragraph 10 is vague.  Mead Johnson avers that any "public offering documents" issued by Mead Johnson Nutrition Company speak for themselves and constitute the best evidence of their contents.  Mead Johnson therefore denies any characterization of any "public offering documents" issued by Mead Johnson Nutrition Company in paragraph 10 not consistent with those documents.  Mead Johnson denies any other allegations in paragraph 10.

11.     Paragraph 11 purports to state legal conclusions to which no response is required.  To the extent a response is required, they are denied.

12.     Mead Johnson admits that infant formula should meet certain basic nutritional standards.  The remainder of paragraph 12 appears to state legal conclusions to which no

response is required or factual allegations with respect to which Mead Johnson is without knowledge or information sufficient to form a belief, which allegations therefore are denied.

13.     Mead Johnson admits that the Infant Formula Act, 21 U.S.C. § 350a, *et seq.*, and 21 C.F.R. Parts 106, 107 prescribe certain basic minimum standards for infant formula sold in the United States.  Mead Johnson denies the remaining allegations in paragraph 13.

14.     Mead Johnson denies the allegations in paragraph 14.

15.     Mead Johnson denies the allegations in paragraph 15.

16.     Mead Johnson is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 16, and they are therefore denied.

17.     Mead Johnson is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 17, and they are therefore denied.

18.     Mead Johnson admits that it manufactures and distributes infant formula in the United States.  Mead Johnson further admits that its global estimated net sales in 2008 were approximately $2.88 billion.  Mead Johnson avers that the phrases "one of the two largest U.S. manufacturers and distributors of branded infant formula" and "one of the largest-selling infant formulas" are vague.  For this reason, Mead Johnson cannot form a belief as to the truth of the remaining allegations contained in paragraph 18, and they are therefore denied.

19.     Mead Johnson admits that certain infant formulas that are manufactured by PBM contain docosahexaenoic acid ("DHA") and arachidonic acid ("ARA") supplied by Martek Bioscience Corporation ("Martek").  Mead Johnson avers that the terms and phrases "dominance", "value leader", "greater market share", "severe economic downturn", "particularly price sensitive", and "competing" are vague. For this reason, Mead Johnson cannot form a belief as to the truth of the remaining allegations contained in paragraph 20, and they are therefore

denied.

20.     Mead Johnson avers that the Mead Johnson Nutrition Company's prospectus in connection with its initial public offering speaks for itself and constitutes the best evidence of its contents. Mead Johnson therefore denies any characterization of the Mead Johnson Nutrition Company's prospectus in connection with its initial public offering in paragraph 20 not consistent with that document. Mead Johnson denies all other allegations in paragraph 20.

21.     Mead Johnson avers that the Mead Johnson Nutrition Company's prospectus in connection with its initial public offering speaks for itself and constitutes the best evidence of its contents. Mead Johnson therefore denies any characterization of the Mead Johnson Nutrition Company's prospectus in connection with its initial public offering in paragraph 21 not consistent with that document. Mead Johnson denies all other allegations in paragraph 21.

22.     Mead Johnson denies the allegations in paragraph 22.

23.     Mead Johnson denies the allegations in paragraph 23.

24.     Mead Johnson admits that in 2000 it mistakenly made certain inaccurate statements regarding the levels of calcium and folic acid in certain infant formulas manufactured by PBM. Mead Johnson denies all other allegations in paragraph 24.

25.     Mead Johnson admits that in 2001 PBM demanded that Mead Johnson stop circulating certain advertising or face imminent suit. Mead Johnson further admits that it did not comply with PBM's request. Mead Johnson further admits that it filed a lawsuit against PBM in 2001 in the United States District Court for the Southern District of Indiana. Mead Johnson denies all other allegations in paragraph 25.

26.     Mead Johnson admits that PBM initiated a lawsuit against Mead Johnson in 2001 styled *PBM Products, Inc. v. Mead Johnson & Company*, Civil Action No. 3:01 CV 199

(E.D.Va.).  Mead Johnson avers that the pleadings, discovery documents, and court orders associated with Civil Action No. Civil Action No. 3:01 CV 199 (E.D.Va.) speak for themselves and constitute the best evidence of their contents.  Mead Johnson therefore denies any characterization of those pleadings and documents in paragraph 26 not consistent with those documents.

27.     Mead Johnson avers that the pleadings and other documents filed in the Civil Action No. 3:01 CV 199 (E.D.Va.) speak for themselves and constitute the best evidence of their contents.  Mead Johnson therefore denies any characterization of those pleadings and documents in paragraph 27 not consistent with those documents.

28.     Mead Johnson avers that the pleadings, discovery documents, and court orders associated with Civil Action No. 3:01 CV 199 (E.D.Va.) speak for themselves and constitute the best evidence of their contents.  Mead Johnson therefore denies any characterization of those pleadings and documents in paragraph 28 not consistent with those documents.

29.     Mead Johnson avers that the pleadings, discovery documents, and court orders associated with Civil Action No. 3:01 CV 199 (E.D.Va.) speak for themselves and constitute the best evidence of their contents.  Mead Johnson therefore denies any characterization of those pleadings and documents in paragraph 29 not consistent with those documents.

30.     Mead Johnson avers that the pleadings, discovery documents, and court orders associated with Civil Action No. 3:01CV-199 (E.D.Va.) speak for themselves and constitute the best evidence of their contents.  Mead Johnson therefore denies any characterization of those pleadings and documents in paragraph 30 not consistent with those documents.

31.     Mead Johnson admits that the parties settled Civil Action No. 3:01 CV 199 (E.D.Va.) before trial.  Mead Johnson denies all other allegations in paragraph 31.

32.     Mead Johnson admits that PBM initiated a lawsuit against Mead Johnson in 2002 styled *PBM Products, Inc. v. Mead Johnson & Company*, Civil Action No. 3:02 CV 944 (E.D.Va.).  Mead Johnson avers that the pleadings, discovery documents, and court orders associated with Civil Action No. 3:02 CV 944 (E.D.Va.) speak for themselves and constitute the best evidence of their contents.  Mead Johnson therefore denies any characterization of those pleadings and documents in paragraph 32 not consistent with those documents.

33.     Mead Johnson denies the allegations in paragraph 33.

34.     Mead Johnson is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 34, and they are therefore denied.

35.     Mead Johnson avers that the pleadings, discovery documents, and court orders associated with Civil Action No. 3:02 CV 944 (E.D.Va.) speak for themselves and constitute the best evidence of their contents.  Mead Johnson therefore denies any characterization of those pleadings and documents in paragraph 35 not consistent with those documents.

36.     Mead Johnson avers that the pleadings, discovery documents, and court orders associated with Civil Action No. 3:02 CV 944 (E.D.Va.) speak for themselves and constitute the best evidence of their contents.  Mead Johnson therefore denies any characterization of those pleadings and documents in paragraph 36 not consistent with those documents.

37.     Mead Johnson admits that the parties settled Civil Action No. 3:02 CV 944 (E.D.Va.).  Mead Johnson denies all other allegations in paragraph 37.

38.     Mead Johnson denies the allegations in paragraph 38.

39.     Mead Johnson denies the allegations in paragraph 39.

40.     Mead Johnson avers that Exhibits D, F, and G of the Complaint speak for themselves and constitute the best evidence of their contents.  Mead Johnson therefore denies

any characterization of those exhibits in paragraph 40 not consistent with those documents. Mead Johnson denies any other allegations in paragraph 40.

41.    Mead Johnson admits that it has a trademark in the term "LIPIL".  Mead Johnson avers that Exhibit G speaks for itself and constitutes the best evidence of its contents.  Mead Johnson therefore denies any characterization of Exhibit G in paragraph 41 not consistent with that document.  Mead Johnson denies any other allegations in paragraph 41.

42.    Mead Johnson denies the allegations in paragraph 42.

43.    Mead Johnson admits that it sells Enfamil® LIPIL® infant formula.  Mead Johnson further admits that Enfamil® LIPIL® infant formula contains DHA and ARA.

44.    Mead Johnson is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 44, and they are therefore denied.

45.    Mead Johnson admits that the DHA and ARA found in Mead Johnson's Enfamil® LIPIL® infant formula and PBM's infant formula are sourced from Martek. Mead Johnson avers that Exhibits H and I speak for themselves and constitute the best evidence of their contents.  Mead Johnson therefore denies any characterization of Exhibits H and I in paragraph 45 not consistent with those documents.  Mead Johnson denies any other allegations in paragraph 45.

46.    Mead Johnson avers that its "Print Ads, its website and the Mailer" speak for themselves and constitute the best evidence of their contents.  Mead Johnson therefore denies any characterization of Mead Johnson's "Print Ads, its website and the Mailer" in paragraph 46 not consistent with those documents.  Mead Johnson denies any other allegations in paragraph 46.

47.    Mead Johnson denies the allegations in paragraph 47.

48.    Mead Johnson denies the allegations in paragraph 48.

49.    Mead Johnson avers that Exhibit E speaks for itself and constitutes the best evidence of its contents. Mead Johnson therefore denies any characterization of Exhibit E in paragraph 49 not consistent with that document. Mead Johnson denies any other allegations in paragraph 49.

50.    Mead Johnson avers that Exhibit D speaks for itself and constitutes the best evidence of its contents. Mead Johnson therefore denies any characterization of Exhibit D in paragraph 50 not consistent with that document. Mead Johnson denies any other allegations in paragraph 50.

51.    Mead Johnson denies the allegations in paragraph 51.

52.    Mead Johnson avers that Exhibit D speaks for itself and constitutes the best evidence of its contents. Mead Johnson therefore denies any characterization of Exhibit D in paragraph 52 not consistent with that document. Mead Johnson denies any other allegations in paragraph 52.

53.    Mead Johnson denies the allegations in paragraph 53.

54.    Mead Johnson avers that Exhibits D, F, and G speak for themselves and constitute the best evidence of their contents. Mead Johnson therefore denies any characterization of Exhibits D, F, and G in paragraph 54 not consistent with those documents. Mead Johnson denies any other allegations in paragraph 54.

55.    Mead Johnson denies the allegations in paragraph 55.

56.    Mead Johnson denies the allegations in paragraph 56.

57.    Mead Johnson denies the allegations in paragraph 57.

58.    Mead Johnson avers that Exhibit J speaks for itself and constitutes the best

evidence of its contents.  Mead Johnson therefore denies any characterization of Exhibit J in paragraph 58 not consistent with that document.  Mead Johnson admits that it is a member of the National Advertising Division of the Council of Better Business Bureaus ("NAD").  Mead Johnson is without knowledge or information regarding whether PBM is a member of NAD sufficient to form a belief as to the truth of that allegation, and it is therefore denied.  Mead Johnson admits that it voluntarily submits certain advertising disputes to NAD.  Mead Johnson denies any other allegations in paragraph 58.

59.     Mead Johnson avers that Exhibit J speaks for itself and constitutes the best evidence of its contents.  Mead Johnson therefore denies any characterization of Exhibit J in paragraph 58 not consistent with that document.  Mead Johnson denies any other allegations in paragraph 58.

60.     Mead Johnson denies the allegations in paragraph 60.

61.     Mead Johnson denies the allegations in paragraph 61.

62.     Mead Johnson denies the allegations in paragraph 62.

63.     Mead Johnson denies the allegations in paragraph 63.

64.     Mead Johnson denies the allegations in paragraph 64.

65.     Mead Johnson denies the allegations in paragraph 65.

## COUNT I[2]

### (Violation of Lanham Act Section 43(a)(1)(B), 15 U.S.C. § 1125(a)(1)(B))

66.     Mead Johnson realleges and incorporates by reference all responses in the foregoing paragraphs.

67.     Paragraph 67 purports to state legal conclusions to which no response is required.

---

[2] The use of any headings in the Complaint is for reference purposes only, and is not an admission by Mead Johnson of the truth of the allegations contained in the headings.  Mead Johnson denies any allegations contained in such

To the extent a response is required, they are denied.

68.    Mead Johnson denies the allegations in paragraph 68.

69.    Mead Johnson denies the allegations in paragraph 69.

70.    Mead Johnson denies the allegations in paragraph 70.

## COUNT II

### (Violation of Lanham Act Section 43(a)(1)(A), 15 U.S.C. § 1125(a)(1)(A))

Mead Johnson has filed a separate motion to dismiss Count II of the Complaint, and thus no response is required at this time to paragraphs 70 through 75. To the extent that a response is required at this time, Mead Johnson realleges and incorporates by reference all responses in the foregoing paragraphs. Mead Johnson further denies the allegations in paragraphs 71 through 75.

## COUNT III

### (Commercial Disparagement)

76.    Mead Johnson realleges and incorporates by reference all responses in the foregoing paragraphs.

77.    Mead Johnson denies the allegations in paragraph 77.

78.    Mead Johnson denies the allegations in paragraph 78.

79.    Mead Johnson denies the allegations in paragraph 79.

80.    Mead Johnson denies the allegations in paragraph 80.

81.    Mead Johnson denies the allegations in paragraph 81.

### Prayer for Relief

Mead Johnson denies that the PBM is entitled to any relief whatsoever.

### AFFIRMATIVE DEFENSES

Mead Johnson states as follows, without admitting that the following are in fact

---

headings.

affirmative defenses or that Mead Johnson has the burden of proof on any affirmative defense:

### First Affirmative Defense

PBM's Complaint, and each claim asserted therein, fails to state a claim upon which relief may be granted.

### Second Affirmative Defense

PBM's claims are barred by the doctrine of estoppel.

### Third Affirmative Defense

PBM's claims are barred by the doctrine of waiver

### Fourth Affirmative Defense

PBM's claims are barred by the doctrine of release.

### Fifth Affirmative Defense

PBM's claims are barred by the doctrine of ratification.

### Sixth Affirmative Defense

PBM's claims are barred by the doctrine of acquiescence.

### Seventh Affirmative Defense

PBM's claims are barred by the applicable statute of limitations or the doctrine of laches.

### Eighth Affirmative Defense

PBM's claims are barred because any losses or damages alleged by PBM were not caused by any act or omission of Mead Johnson.

### Ninth Affirmative Defense

PBM's claims are barred because any losses or damages alleged by PBM were proximately caused by PBM's own acts or omissions, by acts or omissions by entities other than Mead Johnson, or by events over which Mead Johnnson had no control.

### Tenth Affirmative Defense

PBM's claims are barred because of and to the extent of its failure to take reasonable and necessary steps to mitigate any loss, injury or damage allegedly suffered.

### Eleventh Affirmative Defense

PBM's claims are barred because Mead Johnson acted in the good faith belief that its actions were lawful.

### Twelfth Affirmative Defense

PBM's claims are barred because they cannot establish any causal link between the alleged act or omission by Mead Johnson and PBM's alleged losses or damages.

### Thirteenth Affirmative Defense

PBM waived the Complaint, and each purported claim for relief therein, by reason of its own actions and course of conduct.

### Fourteenth Affirmative Defense

PBM's claims are barred, in whole or in part, under the doctrine of unclean hands.

### Fifteenth Affirmative Defense

PBM's claims are barred, in whole or in part, by a settlement agreement between the parties.

Mead Johnson presently lacks knowledge or information sufficient to form a belief as to whether they may have available additional, as yet unstated, defenses.  Mead Johnson reserves the right to assert additional defenses up to and including the time of trial.

### <u>COUNTERCLAIMS</u>

1.      Counterclaim-Plaintiff Mead Johnson & Company ("Mead Johnson") hereby counterclaims against Counterclaim-Defendants PBM Products, LLC ("PBM") and Paul

Manning.

## PARTIES, JURISDICTION, AND VENUE

2.      Mead Johnson is a Delaware corporation with its principal place of business in Evansville, Indiana.  Mead Johnson manufactures and distributes infant formulas, including infant formulas with the brand names Enfamil® LIPIL® and Enfamil® Gentlease® LIPIL®.

3.      PBM is a Delaware limited liability company with its principal place of business in Gordonsville, Virginia.  PBM manufactures and distributes private label "store brand" infant formulas through the United States.  On information and belief, PBM controls, directs and is responsible for the advertising and label claims made for its private label "store brand" infant formulas.

4.      Paul Manning is the founder, president, chief executive officer and owner of PBM.

5.      This Court has jurisdiction of the federal claims pursuant to 28 U.S.C. § 1331. This Court has jurisdiction of the state law claims pursuant to 28 U.S.C. § 1367.

6.      Venue is proper in this District under 28 U.S.C. § 1391(b) and (c) because PBM and Paul Manning are subject to personal jurisdiction in this District.

## Mead Johnson and Enfamil® LIPIL® and Enfamil® Gentlease® LIPIL® Brand Infant Formulas

7.      Mead Johnson has earned and developed enormous good will among health-care professionals and consumers.

8.      Enfamil® LIPIL®, Enfamil® Gentlease® LIPIL®, and other Mead Johnson formulas enjoy an extremely highly favorable reputation among health-care professionals and consumers of infant formulas.

9.      Over the past several years, PBM has adopted a marketing strategy asking

consumers to "compare" PBM's infant formulas to other infant formulas on the market, including Mead Johnson's infant formulas.

10.    PBM's use of the phrase "compare to" in its advertising for its infant formulas literally means or necessarily implies that PBM's infant formulas have in fact been tested and verified and are equivalent in performance or content to the infant formulas to which they are to be compared.

**2003 Settlement Agreement Between PBM and Mead Johnson**

11.    On or about December 23, 2002, PBM filed a complaint in this Court against Mead Johnson ("2002 Lawsuit").

12.    On or about February 24, 2003, PBM and Mead Johnson entered into a Confidential Settlement Agreement and Full Release ("2003 Settlement Agreement").

13.    The 2003 Settlement Agreement was a complete agreement that included acceptance of an offer as well as valuable consideration paid.

14.    The terms of that 2003 Settlement Agreement are confidential and will be proven by evidence subject to appropriate protections for that confidentiality.

15.    On or about March 11, 2003, upon joint motion of the parties, this Court placed all of the pleadings of the 2002 Lawsuit under seal.

**PBM's 2009 Lawsuit**

16.    On April 27, 2009, PBM filed its Verified Complaint for Injunctive and Other Relief ("2009 Complaint") against Mead Johnson and Mead Johnson Nutrition Company.

17.    Certain of the claims brought by PBM against Mead Johnson in the 2009 Complaint were known, should have been known or could have been known to PBM before PBM initiated the 2002 Lawsuit and could have been raised by PBM in connection with the 2002

Lawsuit.

**PBM's Statements Regarding 2002 Lawsuit**

18.    In the 2009 Complaint, PBM referenced the fact of the 2002 Lawsuit several times.  PBM's statements in the 2009 Complaint regarding the existence of the 2002 Lawsuit include the following:

- "Twice before, Defendant Mead Johnson has engaged in false advertising campaigns against PBM's competing store brand infant formulas . . . .  Both times, PBM sued Mead Johnson in this Court for its false and misleading advertisements.  Both times Mead Johnson's senior executives and scientists admitted that Mead Johnson's statements were literally false."  2009 Complaint, "Nature of Action."

- "In 2002, Mead Johnson launched another false advertising campaign against PBM's store brand infant formula which led to PBM filing a second action in this District, styled *PBM Products, Inc. v. Mead Johnson & Company,* Civil Action No. 3:02 CV 944 (Spencer, J) alleging violations of the Lanham Act, various state and common laws, seeking both preliminary and permanent injunctive relief and damages from Mead Johnson (hereinafter "Second False Advertising Action").  2009 Complaint, ¶ 32.

- "The Second False Advertising Action was based in part on PBM learning that both during *and after* the First False Advertising Action, Mead Johnson continued unlawfully to promote Enfamil® by distributing a chart which made the damaging and false assertion – "none added" – regarding beneficial nucleotides contained in PBM's store brand infant formula. . ."  2009

Complaint, ¶ 33.

- "This Court signed a temporary restraining order on consent of the parties that enjoined Mead Johnson from publishing any or circulating any false or misleading advertisement that related to nucleotides, or the quantity, quality or nutritional sufficiency of nucleotides, in PBM's store brand infant formulas, including that PBM's store brand infant formulas have nucleotides added." 2009 Complaint, ¶ 35.

- "This Court also directed Mead Johnson to retrieve and preserve all advertisements containing the prohibited statements discussed above." 2009 Complaint ¶ 36.

- "By consenting to Judge Spencer's entry of a second order restraining Mead Johnson from further disseminating its false statements about PBM's store brand infant formula and by settling with PBM, Mead Johnson quickly terminated the Second False Advertising Action." 2009 Complaint ¶ 37.

- "The Second False Advertising Action highlighted Mead Johnson's continuing practice and pattern of using false advertising to destroy PBM's market share by making false allegations of nutritional insufficiency of PBM's store brand infant formula." 2009 Complaint ¶ 38.

- "Despite two restraining orders in two separate actions, a contempt order for spoiling evidence, and admissions of the literal falsity of its previous advertising claims, Mead Johnson continues falsely to promote and to make false comparison claims about Enfamil® LIPIL®, and to make false insufficiency claims about PBM Store Brand Formulas. . ." 2009 Complaint ¶

39.

19.    On April 28, 2009, PBM published a press release regarding the 2009 Complaint ("April 28 Press Release").

20.    The April 28 Press Release referenced the fact of the 2002 Lawsuit several times. PBM's and Paul Manning's statements in the April 28 Press Release regarding the existence of the 2002 Lawsuit include the following:

- "Mead Johnson Lies About Baby Formula…Again; PBM Products Sues Mead Johnson for Third False Advertising Campaign"

- "Today, PBM filed a verified complaint against Mead Johnson in the United States District Court for the Eastern District of Virginia. Mead Johnson has ignored the court's two prior injunctions by launching yet another false and misleading advertising campaign designed to undermine public confidence in PBM's store-brand infant formulas."

- "'Incredibly, this marks the third time Mead Johnson has engaged in false advertising campaigns against PBM's competing store-brand infant formulas by distributing literally false advertising to doctors and mothers,' said PBM CEO Paul B. Manning. 'The two previous times we sued Mead Johnson for false and misleading advertisements, the court ruled in favor of PBM and Mead Johnson's senior executives and scientists admitted that Mead Johnson's statements were literally false. After three strikes, we believe Mead Johnson should be out of the false advertisement business when it comes to baby formula.'"

- "Additionally, Mead Johnson intentionally maintains its false advertising

- 18 -

campaign and the blurry-eyed baby graphic, despite adverse rulings from the
National Advertising Division of the Council of Better Business Bureaus
(NAD)."

**Advertising for PBM's "Gentle" Store Brand Formula**

21.     Infant formulas commonly use standard cow's milk as the base for the formula.
Some infants, however, have reactions to standard, milk-based formulas, such as general
fussiness during or after feeding, gas or bloating.  Such reactions are sometimes caused by
lactose intolerance or difficultly digesting the protein in standard cows milk, and thus the
reactions can sometimes be tempered by use of a formula that contains reduced lactose levels
and proteins that have been partially broken down (hydrolyzed).

22.     Mead Johnson manufactures and distributes Enfamil® Gentlease® LIPIL®, in
which all milk proteins have been partially broken down and which contains reduced levels of
lactose.

23.     PBM manufactures and distributes one or more private label "store brand"
formulas that contain some partially broken down proteins and reduced levels of lactose ("PBM
Gentle Formula").

24.     PBM has recently adopted a marketing strategy asking consumers to "compare"
PBM Gentle Formula to Enfamil® Gentlease® LIPIL®.  For example, at least one form of a
label for PBM Gentle Formula expressly states "Compare to Enfamil® Gentlease® LIPIL®".

25.     At least one form of the label for PBM Gentle Formula states that the formula
contains "Partially Broken Down Whey Protein" and that the formula is "For Babies with
Fussiness or Gas".

26.     PBM's use of the phrase "Partially Broken Down Whey Protein" on the label

literally means or necessarily implies that all or most of the whey protein in PBM Gentle

Formula is partially broken down.

27.    Alternatively, PBM's use of the phrase "Partially Broken Down Whey Protein"

on the label implies that all or most of the whey protein in PBM Gentle Formula is partially

broken down.

28.    In fact, only a small portion of the whey protein and none of the casein protein in

PBM Gentle Formula is partially broken down.

29.    PBM's use of the phrase "compare to" on the label literally means or necessarily

implies that PBM Gentle Formula's performance has in fact been tested and verified and is

equivalent in performance to Enfamil® Gentlease® LIPIL®, that the two formulas are identical

in composition and that they have the same degree of partially hydrolyzed proteins.

30.    Alternatively, PBM's use of the phrase "compare to" on the label implies that

PBM Gentle Formula's performance has in fact been tested and verified and is equivalent in

performance to Enfamil® Gentlease® LIPIL®, that the two formulas are identical in

composition and that they have the same degree of partially hydrolyzed proteins.

31.    On information and belief, PBM has not tested the performance of PBM Gentle

Formula with that of Enfamil® Gentlease® LIPIL®.

32.    PBM Gentle Formula has much less partially broken down whey protein than

Enfamil® Gentlease® LIPIL®, has no partially broken down casein protein (unlike Enfamil®

Gentlease® LIPIL®) and otherwise is different in content from Enfamil® Gentlease® LIPIL®.

**Advertising for PBM's Store Brand Formula**

33.    Mead Johnson manufactures and distributes Enfamil® LIPIL® infant formula.

34.    PBM manufactures and distributes one or more private label "store brand" infant

formulas ("PBM Formula").

35.    PBM has recently adopted a marketing strategy asking consumers to "compare" certain PBM Formula to Enfamil® LIPIL®.  For example, the label attached as Exhibit I to the Verified Complaint for Injunctive and Other Relief ("Complaint") expressly states "Compare to Enfamil® LIPIL®".

36.    PBM's use of the phrase "compare to" in conjunction with PBM Formula and Enfamil® LIPIL® literally means or necessarily implies that PBM Formula's performance has in fact been tested and verified and is equivalent in performance to Enfamil® LIPIL® and that the two formulas are identical in composition.

37.    Alternatively, PBM's use of the phrase "compare to" in conjunction with PBM Formula and Enfamil® LIPIL® implies that PBM Formula's performance has in fact been tested and verified and is equivalent in performance to Enfamil® LIPIL® and that the two formulas are identical in composition.

38.    On information and belief, PBM has not tested and compared the performance of PBM Formula with that of Enfamil® LIPIL®.

39.    On information and belief, the composition of the PBM Formula and Enfamil® LIPIL® is not identical.

## COUNT I

### (Breach of Contract against PBM)

40.    Mead Johnson realleges and incorporates by reference all responses in the foregoing paragraphs.

41.    The 2003 Settlement Agreement was a complete agreement that was entered into after arms-length negotiations between the parties, and included acceptance of an offer as well as

valuable consideration paid.

42.    PBM breached the 2003 Settlement Agreement in the following ways:

(i)    Mentioning the fact of the 2002 Lawsuit and certain supposed details of the 2002 Lawsuit in the April 28 Press Release.

(ii)    Mentioning the fact of the 2002 Lawsuit and certain supposed details of the 2002 Lawsuit in the 2009 Complaint.

(iii)    Bringing claims in the 2009 Complaint that could have been raised by PBM in connection with the 2002 Lawsuit.

43.    Mead Johnson has been damaged by PBM's breach of the 2003 Settlement Agreement.

## COUNT II

## (Defamation, Trade Libel, and Product Disparagement against PBM and Paul Manning)

44.    Mead Johnson realleges and incorporates by reference all responses in the foregoing paragraphs.

45.    In the April 28 Press Release, PBM and Paul Manning intentionally published several untrue statements about Mead Johnson, including:

(i)    "Mead Johnson Lies About Baby Formula…Again; PBM Products Sues Mead Johnson for Third False Advertising Campaign"

(ii)    "Mead Johnson has ignored the court's two prior injunctions by launching yet another false and misleading advertising campaign designed to undermine public confidence in PBM's store-brand infant formulas."

(iii)    "'Incredibly, this marks the third time Mead Johnson has engaged in false advertising campaigns against PBM's competing store-brand infant

formulas by distributing literally false advertising to doctors and mothers,' said PBM CEO Paul B. Manning. 'The two previous times we sued Mead Johnson for false and misleading advertisements, the court ruled in favor of PBM and Mead Johnson's senior executives and scientists admitted that Mead Johnson's statements were literally false. After three strikes, we believe Mead Johnson should be out of the false advertisement business when it comes to baby formula.'"

(iv)    "Additionally, Mead Johnson intentionally maintains its false advertising campaign and the blurry-eyed baby graphic, despite adverse rulings from the National Advertising Division of the Council of Better Business Bureaus (NAD)."

46.    These statements are neither opinion nor relative in nature. Instead, these statements are factual in nature.

47.    These statements cast aspersion on Mead Johnson's honesty and, in fact, have injured Mead Johnson's business through, among other things, damage to its reputation and goodwill.

48.    When PBM and Paul Manning published these statements, PBM and Paul Manning knew these statements were false and published the statements with the intent and purpose to harm Mead Johnson.

49.    Mead Johnson has been damaged by PBM's and Paul Manning's untrue and harmful statements about Mead Johnson.

## COUNT III

**(Violation of Lanham Act Section 43(a)(1)(B), 15 U.S.C. § 1125(a)(1)(B) against PBM)**

50.    Mead Johnson realleges and incorporates by reference all the allegations in the foregoing paragraphs.

51.    Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B) prohibits any

> false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

52.    On information and belief, PBM controls, directs and is responsible for the advertising and label claims made for its private label "store brand" infant formulas.

53.    PBM's false and misleading representations and statements violate Section 43(a)(1)(B) of the Lanham Act by overtly or by necessary or other implication misrepresenting that

(i)    All or most of the protein in PBM Gentle Formula is partially broken down, when in fact, only a small portion of the whey protein in PBM Gentle Formula is partially broken down;

(ii)    PBM Gentle Formula's performance has in fact been tested and verified and is equivalent to that of Enfamil® Gentlease® LIPIL®, when in fact, PBM has not tested and verified the performance of PBM Gentle Formula that of Enfamil® Gentlease® LIPIL®;

(iii)    PBM Gentle Formula contains the same amount of partially broken down protein as Enfamil® Gentlease® LIPIL® or otherwise has the same content as Enfamil® Gentlease® LIPIL®, when neither statement is the

case; and

(iv)     PBM Formula's performance has been tested and verified and is

equivalent in performance to Enfamil® LIPIL® and that the two formulas

are identical in composition.

54.     PBM's false and misleading representations and statements have irreparably

injured Mead Johnson and will continue to do so unless enjoined.

55.     Unless this Court permanently enjoins PBM and orders PBM to retract and to

correct its false and misleading statements, these false and misleading statements will continue to

cause consumer confusion and cause Mead Johnson to suffer a loss of public confidence, sales,

profits and goodwill.

## COUNT IV

## (Civil Contempt against PBM)

56.     Mead Johnson realleges and incorporates by reference all responses in the

foregoing paragraphs.

57.     In 2003, this Court entered an order sealing all of the pleadings in the 2002

Lawsuit.

58.     Mead Johnson was the defendant in the 2002 Lawsuit, and the order sealing all of

the pleadings in the 2002 Lawsuit was in Mead Johnson's favor.

59.     PBM was the plaintiff in the 2002 Lawsuit, and was fully aware of the terms of

the order sealing all of the pleadings in the 2002 Lawsuit.

60.     PBM knowingly violated the order sealing all of the pleadings in the 2002

Lawsuit by referencing the pleadings in the 2002 Lawsuit in both the 2009 Complaint and in the

April 28 Press Release.

61.     PBM's violation of the order sealing all of the pleadings in the 2002 Lawsuit caused harm to Mead Johnson.

## MEAD JOHNSON'S PRAYER FOR RELIEF

WHEREFORE, Mead Johnson & Company prays for relief and Judgment as follows:

1.     That PBM take nothing on its Complaint;

2.     That the Complaint and all claims against Mead Johnson be dismissed with prejudice;

3.     PBM be permanently enjoined from distributing and circulating any commercial, advertisement, promotional material, packaging, product instructions, literature, or other material that bear any of the false and/or misleading designations, descriptions, or representations concerning PBM Formula challenged herein;

4.     PBM be ordered to issue appropriate corrective labeling, advertisements, or literature reasonably designed to reach all prospective purchasers of infant formula and to make appropriate changes to its labels, advertisements, or literature retracting the false and misleading information and informing the general public of its false and misleading claims;

5.     PBM be held in contempt of court.

6.     Mead Johnson be awarded compensatory, exemplary and punitive damages according to proof at trial, with interest; and

7.     That this Court award Mead Johnson its reasonable attorneys' fees and costs; and

8.     That this Court grant Mead Johnson such other and further relief as the Court deems appropriate.

## DEMAND FOR A JURY TRIAL

Mead Johnson hereby demands a trial by jury as to each and every triable issue.

Dated: May 18, 2009                Respectfully submitted

MEAD JOHNSON & COMPANY

By its counsel,

By:    /s/
_____
Hugh M. Fain, III, (VSB No. 26494)
Email:  hfain@spottsfain.com
Edward Everett Bagnell, Jr. (VSB No. 74647)
Email:  ebagnell@spottsfain.com
Attorneys for Mead Johnson Nutrition
Company and Mead Johnson & Company
SPOTTS FAIN PC
Post Office Box 1555
411 East Franklin Street
Suite 600
Richmond, VA 23219
Telephone:   (804) 697-2000
Facsimile:    (804) 697-2100

_____
Behnam Dayanim (*pro hac vice*)
Thomas A. Rust, (VSB No. 47367)
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th Street, N.W.
Washington, DC  20005
Telephone:   (202) 551-1700
Facsimile:    (202) 551-1705

**CERTIFICATE OF SERVICE**

I hereby certify that on the 18th day of May, 2009, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Robert F. Redmond, Jr. (VSB No. 32292)
rredmond@williamsmullen.com
Ryan F. Furguerson (VSB No. 72133)
rfurgurson@williamsmullen.com
Attorneys for Plaintiff PBM Products, LLC
Williams Mullen, P.C.
1021 East Cary Street
P.O. Box 1320
Richmond, VA 23218-1320
Telephone:  (804) 783-6490
Facsimile:  (804) 783-6507


                                                        /s/
                                        Hugh M. Fain, III (VSB No. 26494)
                                        Email:  hfain@spottsfain.com
                                        Edward Everett Bagnell, Jr. (VSB No. 74647)
                                        Email:  ebagnell@spottsfain.com
                                        Attorney for Mead Johnson Nutrition Company
                                        and Mead Johnson & Company
                                        SPOTTTS FAIN PC
                                        Post Office Box 1555
                                        411 East Franklin Street, Suite 600
                                        Richmond, Virginia  23218-1555
                                        Telephone:  (804) 697-2000
                                        Facsimile:  (804) 697-2100
                                        E-mail:  hfain@spottsfain.com