IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

PBM PRODUCTS, LLC

                        Plaintiff,

      v.

MEAD JOHNSON NUTRITION COMPANY
and MEAD JOHNSON & COMPANY,

                        Defendants.

Action No. 3:09–CV–269

## MEMORANDUM OPINION

THIS MATTER is before the Court on PBM's Motion for Partial Summary Judgment, (Docket No. 96), which seeks judgment as a matter of law on Counts 2, 3, and 4 of Mead Johnson's counterclaims. Mead Johnson has also filed a Motion for Partial Summary Judgment (Docket No. 95), which seeks judgment as a matter of law on Counts 1, 2, and 4 of its counterclaims. For the reasons stated below, PBM's Motion is GRANTED as to Counts 2 and 4 and DENIED as to Count 3. Mead Johnson's Motion is DENIED as to Counts 1, 2, and 4 of its counterclaims.

## I. BACKGROUND

Plaintiff, PBM Products, LLC ("PBM") produces store-brand infant formula. Defendant Mead Johnson & Co. ("Mead Johnson") produces "name-brand" infant formula. Although each party maintains a significant market share within their respective niches, they are direct competitors in several product categories.

## A. The Parties' Products

Under the brand name Enfamil, Mead Johnson markets a variety of products including a standard formula, a formula with broken down proteins, and a formula with added rice starch.  PBM also produces a standard formula, a formula with broken down proteins, and a formula with added rice starch.  Both companies use the supplier Martek to get two nutrients—docosahexainoic acid ("DHA") and archidonic acid ("ARA")—which are important to an infant's brain and eye development.  Mead Johnson labels these two nutrients using the brand name Lipil.  PBM uses the generic term "lipids."  PBM often includes a comparative advertising label on their formula which states, "Compare to Enfamil Lipil." (PBM Mot. Partial Summ. J., Ex. 19, at Ex. D.)  The parties dispute when PBM began using the comparative advertising claims on its formulas.  (Mead Johnson Resp. to PBM Mot. Partial Summ. J. 2; PBM Mot. Partial Summ. J. 16.)

**B. Litigation History Between PBM and Mead Johnson**

These parties are no strangers in the courtroom.  In less than a decade, they have been involved in four Lanham Act actions, not to mention various other claims and counterclaims.  In 2001, PBM obtained a restraining order prohibiting Mead Johnson from disseminating further false information about PBM's products.  See PBM Products, Inc. v. Mead Johnson & Co., 03:01cv199 (E.D. Va. 2001).  Mead Johnson was held in contempt during that litigation for not retrieving all of its false ads as directed by a court order.  The parties eventually settled that dispute.

In 2002, PBM initiated another Lanham Act false advertising suit against Mead Johnson, this time based on Mead Johnson promotional materials that stated PBM's products did not include the beneficial nucleotide contained in Mead Johnson's formulas.

2

See PBM Products, Inc. v. Mead Johnson & Co., 03:02cv944 (E.D. Va. 2002).  This Court entered a temporary restraining order on consent of the parties that prevented Mead Johnson from disseminating those ads.  In 2003, the parties settled that dispute as well. The Agreement the parties entered into stated that (1) Mead Johnson denied any wrongdoing; (2) neither party was to disclose the fact of the second lawsuit, the entry of the Consent TRO, or the existence or terms of the 2003 Agreement; and (3) the parties would jointly request the Court seal all the pleadings in the case.  (Mead Johnson Mot. for Summ. J. 3.)  This Court entered an order sealing the pleadings filed in that case, including the Complaint and the Consent TRO.

In 2006, Mead Johnson sued PBM for trade dress infringement and unfair competition under the Lanham Act.  See Mead Johnson & Co. v. PBM Nutritionals, LLC, PBM Products, Inc.,1:06cv1246 (S.D. Ind. 2006). The parties settled the dispute in August of 2007.  Part of that agreement stated that Mead Johnson promised that it "agrees to the use by the PBM Parties of the packaging shown in Exhibit D."  (PBM Mot. for Partial Summ. J., Ex. 19, ¶1.)  Exhibit D contained a label that included the comparative advertising statement "Compare to Enfamil Lipil."  (Id., Ex. D.)  The Agreement also stated:

> Notwithstanding the foregoing, should the PBM Parties breach this agreement by continuing to sell or resuming sales of products in the packaging shown in Exhibits B and C or in packaging that otherwise infringes the ENFAMIL LIPIL packaging, such breach will constitute a new infringement and Mead Johnson will be entitled to file suit or to address such infringement under the law in any way it sees fit.

(Id., Ex. D.)

PBM initiated the current suit in 2009, alleging Mead Johnson's advertisements are false and misleading under the Lanham Act.  The Complaint was not filed under seal and

made specific references to the 2002 dispute between these two parties.  In connection

with this suit, PBM, through its Chief Executive Officer, Paul Manning, issued a press

release with the headline "Mead Johnson Lies About Baby Formula . . . Again; PBM Products

Sues Mead Johnson for Third False Advertising Campaign."  (PBM Mot. for Partial Sum. J.,

Ex. 22.)

Mead Johnson subsequently filed amended counterclaims, alleging breach of

contract (Count 1), defamation (Count 2), Lanham Act violations (Count 3), and civil

contempt (Count 4).  PBM has now filed a Motion seeking summary judgment on Counts 2,

3, and 4 of Mead Johnson's amended counterclaims.  Mead Johnson has also filed a Motion

seeking summary judgment on Counts 1, 2, and 4 of its amended counterclaims.  Thus,

there are cross-motions for summary judgment on Mead Johnson's defamation and civil

contempt claims.

## II.  DISCUSSION

### A. Legal Standard

A motion for summary judgment lies only where "there is no genuine issue as to any

material fact" and where "the moving party is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  All "factual

disputes and any competing, rational inferences [are resolved] in the light most favorable

to the party opposing that motion."  Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir.

2003) (internal quotations marks and citations omitted).  In its decision, courts look to the

affidavits or other specific facts pled to determine whether a triable issue exists.  Anderson

v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Where no genuine issue of material fact

exists, it is the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." Drewitt v. Pratt, 999 F.2d 774, 778–79 (4th Cir. 1993) (internal quotation marks omitted). Mere unsupported speculation is not sufficient if the undisputed evidence indicates the other party should win as a matter of law. Emmett v. Johnson, 532 F.3d 291, 297 (4th Cir. 2008). However, summary judgment should not be granted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

When faced with cross-motions for summary judgment, the standard is the same as that applied to individual motions for summary judgment. The court must consider each party's motion "separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." Rossignol, 316 F.3d at 523 (internal quotation marks omitted). If the court finds that there is a genuine issue of material fact, both motions must be denied. 10A Wright, Miller & Kane, Federal Practice & Procedure: Civil 3d § 2720. However, "if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment." Id.

**B. Choice of Law**

Virginia's choice of law rules govern this diversity defamation action. See Klaxon v. Stentor, 313 U.S. 487, 497 (1941). Virginia applies the lex loci delicti rule, that is, the law of the place of the wrong, to defamation actions. See, e.g., Heishman, Inc. v. Fox Television Stations, Inc., 217 F. Supp. 2d 690, 694 n.5 (E.D. Va. 2002). Because Mead Johnson alleges that the defamatory Press Release was issued in Virginia, Virginia law applies. (See Mead

Johnson Mot. Summ. J. 11-12); see also Katz v. Odin, Feldman & Pittleman, P.C., 332 F. Supp. 2d 909, 915 n.4 (E.D. Va. 2004).

## C.  Breach of Contract (Count 1)[1]

Mead Johnson seeks partial summary judgment on Count 1 of its amended counterclaims, asserting that liability can be established as a matter of law.   According to Mead Johnson, the 2003 Agreement between it and PBM was an enforceable confidentiality agreement and the breach of the Agreement has resulted in damages.  (Mead Johnson Mot. Partial Summ. J. 9.)

In Virginia, the elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation. Sunrise Continuing Care, LLC v. Wright, 671 S.E.2d 132, 134 (Va. 2009).  To be actionable, the plaintiff must establish that the breach was material.   Horton v. Horton, 487 S.E.2d 200, 204 (Va. 1997).  A material breach is a failure to do something that is so fundamental to the contract that the failure to perform that obligation defeats an essential purpose of the contract.  Id.  The plaintiff also bears the burden to establish the element of damages with reasonable certainty.  Nichols Construction Corp. v. Virginia Machine Tool Co., LLC, 661 S.E.2d 467, 472 (Va. 2008).  Damages that are contingent, speculative, and uncertain are

---

[1] Prior to discovery, Mead Johnson filed a Motion for Partial Summary Judgment on Count 1.  (Docket No. 55.)  PBM's Response is Docket No. 67 and Mead Johnson's Reply is Docket No. 72.  After discovery and with leave of court, Mead Johnson filed another Motion for Summary Judgment on Counts 1, 2, and 4 (Docket No. 95), but this later Motion relies on the earlier summary judgment motion for substance as to Count 1.

not recoverable because they cannot be established with reasonable certainty.  Shepherd v. Davis, 574 S.E.2d 514, 524 (Va. 2003).

Here, Mead Johnson's main obstacle to summary judgment is that it has not established as a matter of law that PBM's Press Release has caused Mead Johnson damages. One email Mead Johnson provided concerns someone requesting the "scoop" on the PBM/Mead Johnson dispute after having seen the Press Release.  (Mead Johnson Mot. Summ. J., Ex. 9.)  This does not come close to establishing that Mead Johnson was damaged by the Press Release.  The DeGuzman Deposition testimony offered does not establish damages either, only that one customer heard about the lawsuit in the abstract.  (Mead Johnson Mot. Summ. J., Ex. 13.)  And as PBM points out, the email from a health-care professional stating that he had written a letter of disapproval regarding the "fuzzy duck" advertising campaign has not been tied to the Press Release at issue here.  (Mead Johnson Mot. Summ. J., Ex. 10.)  Although case law supports finding that one's reputation is an asset that can be damaged, see, e.g., Ayyildiz v. Kidd, 266 S.E.2d 108, 111 (Va. 1985), Mead Johnson has not proven as a matter of law that the Press Release resulted in monetary or reputational damages to Mead Johnson.  Thus, Mead Johnson's Motion for Summary Judgment as to liability on Count 1 of its amended counterclaims is DENIED.

## D.  Defamation (Count 2)

In its amended counterclaim, Mead Johnson alleges that four statements contained in the Press Release were defamatory.  Specifically, those statements are as follows:

(1) "Mead Johnson Lies About Baby Formula...Again; PBM Products Sues Mead Johnson for Third False Advertising Campaign" ("Statement 1");

7

(2) "Mead Johnson has ignored the court's two prior injunctions by launching yet another false and misleading advertising campaign designed to undermine public confidence in PBM's store-brand infant formulas." ("Statement 2");

(3) "'Incredibly, this marks the third time Mead Johnson has engaged in false advertising campaigns against PBM's competing store-brand infant formulas by distributing literally false advertising to doctors and mothers,' said PBM CEO Paul B. Manning.[2] 'The two previous times we sued Mead Johnson for false and misleading advertisements, the court ruled in favor of PBM and Mead Johnson's senior executives and scientists admitted that Mead Johnson's statements were literally false. . . .'" ("Statement 3");[3]

(4) "Additionally, Mead Johnson intentionally maintains its false advertising campaign and the blurry-eyed baby graphic, despite adverse rulings from the National Advertising Division of the Council of Better Business Bureaus (NAD)." ("Statement 4").

(Mead Johnson Amended Counterclaims ¶ 54.)

Under Virginia law, the elements of a claim for defamation are (1) the publication of (2) a false and defamatory statement (3) with the necessary intent.  Jackson v. Hartig, 645

---

[2] Mead Johnson also seeks to hold Defendant Paul Manning personally liable for defamation. (Mead Johnson Mot. Summ. J. 26-27.)

[3] The omitted portion states "After three strikes, we believe Mead Johnson should be out of the false advertisement business when it comes to baby formula."  Mead Johnson concedes that this is an opinion statement that cannot be the basis of a defamation claim.  (Mead Johnson Reply Mot. Summ. J. 3 n.7.)

S.E.2d 303, 308 (Va. 2007).[4]  Hence, to be actionable as defamatory, a plaintiff must prove

by a preponderance of the evidence that the statement at issue is actually and provably

false.  See Food Lion, Inc. v. Melton, 458 S.E.2d 580, 584 (Va. 1995).  Thus, truthful

statements and expressions of opinion rather than declarations of fact both operate as

absolute defenses to any defamation claim.  See Chapin v. Knight-Ridder, Inc., 993 F.2d

1087, 1093 (4th Cir. 1993); Goodard v. Protective Life Corp., 82 F. Supp. 2d 545, 560 (E.D.

Va. 2000).  The statement must be not only false, but also defamatory, that is, it must "tend

[ ] so to harm the reputation of another as to lower him in the estimation of the community

or to deter third persons from associating or dealing with him."  Chapin, 993 F.2d at 1092

(quoting Restatement (Second) of Torts § 559).  A defamatory charge may be made

expressly or by "inference, implication or insinuation."  Hatfill v. N.Y. Times Co., 416 F.3d

320, 331 (4th Cir. 2005) (quoting Carwile v. Richmond Newspapers, Inc., 82 S.E.2d 588,

592 (Va. 1954)). Thus, the meaning of a defamatory statement may come, not only from the

actual words used, but also from any "inferences fairly attributed to them."  Wells v. Liddy,

186 F.3d 505, 523 (4th Cir. 1999) (quoting Yeagle v. Collegiate Times, 497 S.E.2d 136, 138

(Va. 1998) (internal quotations and alteration omitted)).  A "plaintiff may not rely on minor

or irrelevant inaccuracies," however, to state a claim.  Jordan v. Kollman, 612 S.E.2d 203,

207 (Va. 2005) (citation omitted).  Whether a statement is actionable is a matter of law to

be determined by the court.  Id. at 206-07.

        In the parties' Cross-Motions for Summary Judgement, their arguments predictably

and diametrically conflict.  PBM argues that the defamation claim should be dismissed

---

[4] There is no dispute here that the statements at issue were published.

because the Press Release contained only true, opinion-laden, privileged statements that were not made with actual malice.  Mead Johnson disagrees, alleging that the Press Release contained false, unprivileged statements of fact that were made with the requisite intent. Each alleged defamatory statement is addressed below.

**1.  Statement 1**:  **"Mead Johnson Lies About Baby Formula...Again; PBM Products Sues Mead Johnson for Third False Advertising Campaign"**

As described above, PBM says this statement is true and privileged and was not made with actual malice.  Mead Johnson, in contrast, declares the statement is verifiably false, one of fact, and made with a sufficient state of mind to constitute defamation.

**a.  True or False**

Truth is a complete defense to a defamation claim.  <u>Goddard</u>, 82 F. Supp. 2d at 560. A statement is not false if its content or "imputation is 'substantially' true." <u>Jordan</u>, 612 S.E.2d at 206 (quoting <u>Saleeby v. Free Press, Inc.</u>, 91 S.E.2d 405, 407 (Va. 1956) (internal quotations omitted)).  "Substantially true" means that the statement is a fair and accurate description of the event in question.  <u>Weist v. E-Fense, Inc.</u>, 356 F. Supp. 2d 604, 611 (E.D. Va. 2005).  Although truth is often referred to as a defense, in Virginia, it is not an affirmative defense, rather the plaintiff must prove falsity.  <u>Gazette, Inc. v. Harris</u>, 325 S.E.2d 713, 725 (Va. 1985).

Statement 1 raises two questions.  First, can the Court determine as a matter of law that the portion of Statement 1 "Mead Johnson Lies About Baby Formula . . . Again" is substantially true or false?  Given that this Court has previously enjoined Mead Johnson from distributing advertisements because of their inaccuracies, the Court finds that this portion of Statement 1 is substantially true.  Although it is undeniable that being accused of

lying is a harsh accusation, it is also beyond dispute that false advertising is substantially synonymous with lying.

The second question this Court must address as to Statement 1 is whether PBM's description of Mead Johnson's advertisements as the "Third False Advertising Campaign" is substantially true or false. Mead Johnson argues that this phrase "ignore[s] the uncontested testimony and evidence that the statement at issue in the 2002 Litigation was not advertising, much less a "campaign," and that both parties denied any liability as part of the suit's resolution." (Mead Johnson Reply in Supp. of Mot. Summ. J. 5.) For its part, PBM maintains that "this Court has previously entered two orders enjoining Mead Johnson's false <u>advertising</u>." (PBM's Mot. for Summ. J. 9 (emphasis added).)

The 2002 dispute between these parties involved promotional materials Mead Johnson sent to medical doctors stating that PBM's formula did not have a nucleotide that is highly beneficial to infants. (Mead Johnson's Mot. for Summ. J., Ex. 6, ¶ 27.) Apparently, Mead Johnson is trying to argue that because the promotional materials sent to doctors was not a large effort and was not distributed to the public, that it cannot be accurate to call it an "advertising campaign." Mead Johnson's argument is unconvincing. One dictionary defines an "advertisement" as "an announcement, description, or presentation of something . . . ." <u>Random House College Dictionary</u> 22 (1980). The 2002 dispute involved the presentation, i.e. advertisement, of information regarding the nucleotide content of PBM and Mead Johnson's formulas. Although Mead Johnson's actions may not have been on par with a GEICO advertising campaign, it was an advertising campaign nonetheless. That portion of Statement 1 is substantially true.

11

**b. Opinion or Fact**

An opinion may constitute actionable defamation only if the opinion can be reasonably interpreted to declare or imply untrue facts.  Milkovich v. Lorain Journal Co., 497 U.S. 1, 20 (1990).  When making this determination, a court may look to whether the challenged statement can be objectively characterized as true or false, the author or speaker's choice of words, the context of the challenged statement within the writing or speech as a whole, and the broader social context into which the statement fits. Biospherics, Inc. v. Forbes, Inc., 151 F.3d 180, 183-84 (4th Cir. 1998).

Having concluded that the majority of Statement 1 is substantially true, the Court notes that only the "[a]gain" portion of Statement 1 and the mention of the "[t]hird false" advertising campaign need to be considered under the Fourth Circuit's opinion analysis.  Common sense dictates, however, that neither of these portions can be reasonably interpreted to declare or imply untrue facts.  See id. at 184.  Rather these were standard posturing statements of opinion by PBM related to the third lawsuit it had just filed against Mead Johnson.  See Karp v. Hill & Knowlton, Inc., 631 F. Supp. 360, 365 (S.D.N.Y. 1986) ("On its face, the sentence in issue is an expression of opinion, a comment on an ongoing court battle.").[5]

**c.  Summation of Statement 1**

---

[5] At the outset, the Court notes that each of the statements contain some opinion to the extent that the Press Release discussed the alleged false advertisements that formed the basis for the most recent lawsuit.  This analysis, though not repeated below, also applies to each of the statements to follow.

The Court finds that the majority of Statement 1 is substantially true and the remaining portions are opinion.  Therefore, Statement 1 is not actionable.  That holding obviates the need to reach the parties arguments on privilege and intent and the Court therefore declines to do so.[6]

**2. Statement 2: " Mead Johnson has ignored the court's two prior injunctions . . . ."[7]**

Mead Johnson's main contention as to Statement 2 is that it cannot be true that Mead Johnson has "ignored" two prior injunctions because the prior injunctions were temporary and no longer in force.  (Mead Johnson Mot. Summ. J. 17-18.)  To the extent that any part of Statement 2 can be labeled as true or false at the time the Press Release was made, the Court disagrees.

Despite Mead Johnson's assertions to the contrary, Statement 2 does not mean that Mead Johnson was, at the time of the Press Release, in violation of two injunctions.  When viewed in the context of a Press Release that focuses on a then freshly-filed lawsuit against Mead Johnson and that no where states PBM is suing Mead Johnson to enforce prior injunctions, the statement does not literally or impliedly communicate what Mead Johnson alleges.  Chapin v. Knight-Ridder, Inc., 993 F.2d 1087, 1093 (4th Cir. 1993) (citing White v. Fraternal Order of Police, 909 F.2d 512, 520 (D.C. Cir. 1990)).  The gist of the statement is that despite two prior instances where a court has found Mead Johnson engaged in false

---

[6] As detailed below, the Court finds that all of the allegedly defamatory statements are substantially true.  Thus, the parties' arguments regarding privilege and intent are not addressed for the remaining statements either.

[7] The Court notes that only Statement 2 was the subject of argument at the hearing on these Motions.

advertising, Mead Johnson has failed to learn its lesson by again engaging in a misleading advertising campaign.  See AIDS Counseling and Testing Ctrs. v. Group W Television, Inc., 903 F.2d 1000, 1004 (4th Cir. 1990) ("If the gist or 'sting' of a statement is substantially true, 'minor inaccuracies will not give rise to a defamation claim.'")  As a result, the sting of Statement 2, as communicated by a fair reading of the Press Release as a whole, is substantially true.[8]  Therefore, it cannot be the basis of a defamation claim.

**3. Statement 3: "Incredibly, this marks the third time Mead Johnson has engaged in false advertising . . . ."**

There are two primary parts of Statement 3 at issue here.  First, can this Court determine as a matter of law whether it is substantially true that there have been two prior instances in which Mead Johnson has distributed "literally false advertising"?[9]  Mead Johnson says the statement is false, pointing out that this Court's earlier ruling in this case (Docket No. 22) specifically noted that Mead Johnson's Mailer advertisements were not literally false.  Mead Johnson also believes that the prior TROs entered against them cannot be characterized as "the court rul[ing] in favor of PBM" and against Mead Johnson because there was never a final judgment.  (Mead Johnson Mot. Summ. J. 18.)  PBM rejects the idea that seeking an injunction against Mead Johnson and getting that injunction cannot be described as the court ruling in PBM's favor.  (PBM Resp. to Mead Johnson Mot. Summ. J. 10-11.)  PBM also argues that it can now, post-discovery, prove that Mead Johnson's Mailer is literally false.  (Id. at 9-10.)  PBM asserts that any focus on a difference between arguing

---

[8] Portions of the statement are also opinion.  See n.5, supra.

[9] Portions of the statement are also opinion.  See n.5, supra.

literal falsity or implied falsity must fail as there is no defamatory "sting" that results from such a distinction. (Id. 10.)

The Court finds that this portion of Statement 3 is substantially true. Getting an injunction requiring Mead Johnson to stop using certain advertisements is a sufficient factual basis to state that the court ruled in PBM's favor. Mead Johnson's attempt to leverage this Court's earlier denial of an injunction in the instant dispute is unavailing, as PBM's comments in the Press Release on the merits of the current suit constituted opinion at the time they were made.[10]

The second main issue with Statement 3 is whether this Court can determine as a matter of law whether it is substantially true that "Mead Johnson's senior executives and scientists admitted that Mead Johnson's statements were literally false." PBM backs up this statement by citing to deposition testimony by Jack Schramm, who says that during settlement negotiations with Mead Johnson that several individuals admitted that the advertisements were literally false. (PBM Resp. to Mead Johnson Mot. Summ. J. 11.) Schramm's testimony, PBM believes, is corroborated by the deposition testimony of Sandy Willet, a Senior Product Specialist with Mead Johnson. (Id. 12.)

Mead Johnson alleges that there is no admissible evidence that could ever prove this statement and thus it is false. (Mead Johnson Mot. Summ. J. 18.) Schramm's deposition testimony is inadmissible, Mead Johnson says, because it is considered parole evidence in relation to the 2003 Agreement, in which Mead Johnson denied liability, and because it

---

[10] See n.5, supra.

occurred during settlement negotiations, which would be exlcuded by Rule 408 of the Federal Rules of Evidence.  (Id.)

The Court declines to accept either of these arguments and holds that this portion of Statement 3 is substantially true.  The parole evidence rule is not a barrier to Schramm's testimony because it is not being offered to contradict or add to the writing, but is instead being offered to evaluate allegedly defamatory statements in a Press Release.  Rule 408 is not an obstacle here because the deposition testimony is not being offered to prove liability.  Accordingly, Statement 3 is substantially true and cannot be the basis of a defamation claim against PBM or Paul Manning.

**4.  Statement 4: "Additionally, Mead Johnson intentionally maintains its false advertising campaign . . . ."**

Mead Johnson reports that Statement 4 is false because "the NAD has never prohibited Mead Johnson from making the claims at issue in this case or identified in the Press Release."  (Mead Johnson Mot. Summ. J. at 20.)  Mead Johnson adds that "the clear meaning of this sentence is that Mead Johnson's ads have been the direct subject of an NAD proceeding instituted by PBM, which is untrue."  (Id.)  PBM points to the NAD ruling and the plain language of Statement 4 to argue that it is true.

As with the previous statements in the Press Release, the Court finds that Statement 4 is substantially true.  PBM correctly notes that the NAD decision specifically states that "NAD is incredulous that after two compliance proceedings, with the second compliance proceedings making explicit that any noncompliant advertising would result in a referral to the appropriate government agency, that [Mead Johnson] would disseminate advertising that clearly does not comply with NAD's decision."  (PBM Mot. Summ. J., Ex. 24, at 2.)  The

NAD decision supports the proposition in Statement 4 that Mead Johnson has been subjected to adverse rulings from the NAD before.  Viewed in context, the gist of Statement 4 is that even though Mead Johnson has faced prior reprimand by NAD, it has continued to engage in false advertising.  This mix of truth and opinion is not actionable.

Having found that Statements 1 through 4 are substantially true, the Court accordingly GRANTS PBM's Motion and DENIES Mead Johnson's Motion as to Count 2.

**E.  Lanham Act Violation (Count 3)**

Mead Johnson has asserted a Lanham Act false advertising claim against PBM based on the "Compare to Enfamil" and "partially broken down whey protein" language that appears on PBM's store brand infant formula.

PBM now seeks summary judgment on this claim, asserting that the claim is barred by the statute of limitations, laches, res judicata, and the parties' 2007 Settlement Agreement.   On the merits, PBM also alleges the claim is baseless and should be dismissed.

**1. The Statute of Limitations and Laches**

As the Lanham Act provides no express statute of limitations for filing false advertising claims, it is proper to use the analogous state limitations period. See Reed v. United Transp. Union, 488 U.S. 319, 323-24 (1989). The analogous state limitation period for this matter is the limitations period under Virginia's action for fraud, which has a two year limitations period.  See Va. Code § 8.01-243(A); Unlimited Screw Prods., Inc. v. Malm, 781 F. Supp. 1121, 1125-26 (E.D. Va. 1991).

In order to prevail on this defense, PBM has the burden of proving (1) lack of diligence by Mead Johnson in pursuing its Lanham Act claim, and (2) prejudice to PBM

resulting from Mead Johnson's lack of diligence.  <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536

U.S. 101, 121-22 (2002).  Lack of diligence is demonstrated when "a plaintiff has

unreasonably delayed in pursuing his claim."  <u>White v. Daniel</u>, 909 F.2d 99, 102 (4th Cir.

1990).  There is no per se rule that defines an "unreasonable" time period.  <u>U.S. E.E.O.C. v.</u>

<u>Worthington, Moore & Jacobs, Inc.</u>, 582 F. Supp. 2d 731, 735 (D. Md. 2008).  Nor is there a

bright line test for determining when a defendant has suffered substantial prejudice.  <u>Id.</u>

Prejudice can include the unavailability of witnesses, changed circumstances, and the loss

of pertinent records.  <u>Id.</u>

        PBM first points out that this Lanham Act claim was filed on May 18, 2009, and thus,

applying the two year statute of limitations, all claims must have accrued on May 18, 2007

or later.  With that starting point, PBM says that PBM first made its "Compare to Enfamil"

claim for its routine formula in 2003 at the latest and it first made such a claim for its

gentle product in 2006.  Claims involving those two lines are, according to PBM, now time

barred under the statute of limitations.  PBM also asserts that any argument of "continuing

wrong" should be rejected using the doctrine of laches and thus Mead Johnson's claims

should be dismissed.  (PBM Mot. Summ. J. 16.)

        Mead Johnson rejects that any of its claims are time barred.  It begins by explaining

that PBM has more than forty different labels and names for its products that it sells in a

variety of retail stores.  Mead Johnson notes that even if some brands had the "compare to"

language prior to May 18, 2007, there are numerous other PBM brands that have begun

using the "compare to" claim since that time.  For example, Mead Johnson says PBM began

placing the "compare to" claim for the first time on its added-rice formula just this year.

18

For at least 11 stores, Mead Johnson states, PBM has started using the "compare to" claim on its routine formula as recently as June 2009. Sixteen stores began using the claim on PBM's gentle formula as recently as August 2009. (Mead Johnson Resp. PBM Mot. Summ. J. 18.) Lastly, Mead Johnson also notes that, as to the laches argument, PBM has failed to show the prejudice required to receive the benefit of that defense.

PBM's argument is not well-taken. PBM is attempting to draw a highly technical black-and-white distinction between its different labels and names that it uses to market its formula—a distinction that has no basis in the way it actually operates its business. PBM has over forty labels and names and each one has allegedly begun using the "compare to" language at a different point in time, as such there was not a single starting point when PBM began with this claim. Instead, as PBM would likely concede, there are a significant number of its brands that have only recently, i.e. within the statute of limitations period, started using the "compare to" claim. Moreover, PBM has failed to show that it would be prejudiced by hearing this claim on the merits. Therefore, PBM's statute of limitations and laches arguments are rejected.

## 2. Res Judicata

PBM also claims that the Lanham Act claim is barred by res judicata because the parties' 2006 trade dress dispute involved the same transaction or occurrence as the current dispute. Thus, in PBM's view, Mead Johnson was required to bring its current claims at that time. PBM reasons that both actions involved the labeling of its products under § 43(a) of the Lanham Act and, as a result, involved the same transaction for res judicata purposes. (PBM Mot. Summ. J. 18-20.)

19

Res judicata precludes the assertion of a claim after a judgment on the merits in a prior suit by the parties or their privies based on the same cause of action.  Pueschel v. United States, 369 F.3d 345, 354-55 (4th Cir. 2004). "For the doctrine of res judicata to be applicable, there must be: (1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits."  Id.

Using similar reasoning to the above argument regarding the statute of limitations, the Court rejects the res judicata argument on the grounds that at least one viable false advertising claim for each of PBM's brands has arisen after the 2006 dispute between these parties.  Res judicata simply cannot bar claims that were not in existence at the time the first suit was brought.

## 3.  Effect of the Parties' 2007 Agreement

PBM claims that the 2007 Agreement entered into by itself and Mead Johnson bars the current Lanham Act claim under basic contract law.  The Agreement, PBM explains, stated that the Mead Johnson "agrees to the use by the PBM Parties of the packaging shown in Exhibit D."  (PBM Mot. Summ. J. 17-18.)  As PBM notes, the packing in Exhibit D contains the language "Compare to Enfamil LIPIL."  In PBM's view, by agreeing that PBM could use that packaging, Mead Johnson cannot now file suit based on language contained in that packaging.

Mead Johnson maintains that the Agreement did not make any representations with regard to the label or packaging other than the product labels in Exhibits B and C attached to the Agreement.  For support, Mead Johnson quotes from the Agreement, which states:

> Nothing herein is intended to or will release the PBM Parties from any claims arising out of the manufacture, distribution, advertising, promotion, sale, or other use of (i) INFANT FORMULA contained in packaging that is confusingly similar to the ENFAMIL LIPIL packaging on or after December 31, 2007; or (ii) any products other than INFANT FORMULA in the packaging shown in Exhibits B and C. Notwithstanding the foregoing, should the PBM Parties breach this agreement by continuing to sell or resuming sales of products in the packaging shown in Exhibits B and C or in packaging that otherwise infringes the ENFAMIL LIPIL packaging, such breach will constitute a new infringement and Mead Johnson will be entitled to file suit or to address such infringement under the law in any way it sees fit.

(Mead Johnson Resp. PBM Mot. Summ. J. 19-20 (citing 2007 Agreement ¶ 3).) Thus, according to Mead Johnson, the Agreement can only prohibit claims on the labels contained in Exhibits B and C. (Id. at 20.)

Reading the Agreement as a whole, the Court agrees with Mead Johnson. Although PBM is correct that Mead Johnson agreed to PBM's use of the label in Exhibit D, the Agreement clearly addresses PBM packaging, not the advertising claims. Also, the Agreement could be read to be limited to PBM's Maker's Mark brand, which is the brand on each of the labels in the Agreement's exhibits. Therefore, the Court declines to accept PBM's argument regarding the 2007 Agreement.

**4. Merits of the Lanham Act Claim**

The Lanham Act prohibits the "false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B). For liability to arise under the false advertising provisions of the Lanham Act, "the contested statement or representation must be either false on its face or, although literally true, likely

21

to mislead and to confuse consumers given the merchandising context." C.B. Fleet Co. v. SmithKline Beecham Consumer Healthcare, L.P., 131 F.3d 430, 434 (4th Cir. 1997) (internal quotation marks omitted).  If the advertisement is literally false, a violation may be established without evidence of consumer deception.  Scotts Co. v. United Indus. Corp., 315 F.3d 264, 272 (4th Cir. 2002).  But if plaintiff's theory of recovery is premised upon a claim of implied falsehood, plaintiff must demonstrate, by extrinsic evidence, that the challenged advertisements tend to mislead or confuse consumers.  Id.

PBM claims, and Mead Johnson does not contest (Mead Johnson Resp. PBM Mot. Summ. J. 22), that there is no literal falsity in this case.  As to implied falsity for the "compare to" claim, PBM rejects Mead Johnson's evidence for several reasons.  First, as discussed more thoroughly in the memorandum for the Motion in Limine, PBM says that Mead Johnson's expert Dr. Ravi Dhar should be excluded under Daubert.  PBM reasons that Dhar's survey only addressed the added starch and added iron formulas and thus cannot be used to extrapolate to other formulas.  (PBM Mot. Summ. J. 23.)  Second, as to the substance of the survey, PBM alleges that it is flawed and incapable of proving that consumers perceive the claim "compare to Enfamil" language as indicating that PBM is claiming that its formula is identical to Mead Johnson's.  (Id. at 24.)

As to the implied falsity of the "partially broken down whey protein" claim, PBM asserts the claim is literally true because it does not, as Mead Johnson avows, have to mean that all the protein is broken down.  (Id. at 26.)  PBM also adds that any difference in claiming all or some protein is broken down is not material because "Mead Johnson's own expert admitted that there is no scientific proof that the products are different as to

22

digestibility." (Id.) PBM, quoting the Fourth Circuit, reports that a claim must be material: "A plaintiff asserting a false advertising claim under the Lanham Act must establish that: . . . the misrepresentation is material, in that it is likely to influence the purchasing decision." Scotts, 315 F.3d at 273. Because there is no proof that this claim is material, PBM states this claim is not actionable.

Mead Johnson's response makes two main points. First, as to both of PBM's advertising claims, Mead Johnson believes that Dhar's survey evidence creates a triable issue because these two claims combined imply "to a not insignificant number of consumers that all of the whey protein in the formula is partially broken down and that as much or more of the whey protein in the PBM formula is partially broken down as in Enfamil Gentlease LIPIL." (Mead Johnson Resp. PBM Mot. Summ. J. 22-23.) Second, Mead Johnson states that the amount of protein PBM's advertisement communicates is broken down is material to consumers and doctors and therefore can be the basis of a Lanham Act claim. (Id. at 23.)

The Court finds that because Dr. Dhar's testimony is admissible and material factual issues remain in dispute, Mead Johnson has the better argument here. At this stage in the proceedings, the Court simply cannot conclude as a matter of law that no reasonable jury could find for Mead Johnson. Thus, PBM's Summary Judgment Motion as to Count 3 of Mead Johnson's counterclaims is DENIED.

## F. Civil Contempt (Count 4)

To establish civil contempt, each of the following elements must be shown by clear and convincing evidence: (1) the existence of a valid decree of which the alleged contemnor

had actual or constructive knowledge; (2) that the decree was in the movant's "favor"; (3) that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) that the movant suffered harm as a result.  Ashcraft v. Conoco, Inc., 218 F.3d 288, 301 (4th Cir. 2000).  A district court's civil contempt order is reviewed for an abuse of discretion.  Colonial Williamsburg Found. v. The Kittinger Co., 38 F.3d 133, 136 (4th Cir. 1994).  Furthermore, when a district court's decision is based on an interpretation of its own order, the appellate court's standard of review is highly deferential because district courts are in the best position to interpret their own orders.  JTH Tax, Inc. v. H & R Block E. Tax Servs., Inc., 359 F.3d 699, 705 (4th Cir. 2004).

The Fourth Circuit has stated that before a district court may seal any court documents, the court must (1) provide public notice of the request to seal and allow interested parties a reasonable opportunity to object, (2) consider less drastic alternatives to sealing the documents, and (3) provide specific reasons and factual findings supporting its decision to seal the documents and for rejecting the alternatives.  Ashcraft, 218 F.3d at 302 (4th Cir. 2000).   These procedures "must be followed when a district court seals judicial records or documents."  Id.

Mead Johnson asserts that PBM should be held in civil contempt because PBM's 2009 Press Release violated this Court's 2003 Sealing Order.  Mead Johnson observes that the Order was a valid, enforceable decree that was entered in Mead Johnson's favor and that it has now been violated causing harm to Mead Johnson.  (Mead Johnson Mot. Summ. J. 27-30.)

In its cross-motion for summary judgment, PBM argues that there is no private independent right of action for civil contempt.  Even if there was, PBM believes that the Order issued by this Court is invalid because the Court did not follow the procedures required by the Fourth Circuit's <u>Aschcraft</u> decision.  PBM also states that even if the Sealing Order remains in effect, it was not a gag order, and thus there was no violation in this case. (PBM Mot. Summ. J. 27-29.)

PBM's reliance on <u>Finn v. Schiller</u>, 72 F.3d 1182, 1187 (4th Cir. 1996),  for the argument that there is not a private independent right of action for civil contempt is misplaced.  First, <u>Finn</u> dealt with Federal Rule of Criminal Procedure 6, and whether it provides a civil remedy for its violation.  That case is simply inapplicable here.  Second, to the extent PBM is suggesting that any civil contempt claim must be filed under the same docket number as the Order at issue, rather than the current docket number even though the same parties are before the same court on interrelated disputes, PBM is incorrect. This argument ignores the relationship between the prior Order and the current litigation and promotes a waste of the parties' time and court resources.  As a result, Mead Johnson may bring its claim for civil contempt.

On the merits of the claim, however, the Court finds that there has not been a violation of the Order.  The effect of the Order was to prevent the documents in the 2002 case from resting in the public domain.  It did not, however, prohibit a party from referencing the documents in that case.  Mead Johnson has not alleged that PBM has made public the documents sealed by this Court, instead Mead Johnson alleges that "PBM clearly disclosed the key contents of the pleadings sealed in the 2002 Litigation by, <u>in essence,</u>

paraphrasing them." (Mead Johnson Resp. to PBM Mot. Summ. J. 27 (emphasis added).) Because the Court finds that this is not a violation of the Order, summary judgment in favor of PBM is GRANTED. Mead Johnson's Motion as to Claim 4 is thus DENIED.

### III. CONCLUSION

For the previously stated reasons, the Court (1) DENIES Mead Johnson's Motion as to Count 1 of its own counterclaims; (2) GRANTS PBM's Motion and DENIES Mead Johnson's Motion as to Count 2 of Mead Johnson's counterclaims; (3) DENIES PBM's Motion as to Count 3 of Mead Johnson's counterclaims; (4) GRANTS PBM's Motion and DENIES Mead Johnson's Motion as to Count 4 of Mead Johnson's counterclaims.

Let the Clerk send a copy of this Memorandum to all counsel of record.

_____/s/_____
James R. Spencer
Chief United States District Judge

ENTERED this __22nd__ day December 2009

26