IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| PBM PRODUCTS,<br><br>                             Plaintiff,<br><br>v.<br><br>MEAD JOHNSON NUTRITION COMPANY<br>and MEAD JOHNSON & COMPANY,<br><br>                            Defendants. | Action No. 3:09-CV-269 |

### MEMORANDUM OPINION

THIS MATTER is before the Court on Mead Johnson's Motion for Summary Judgment on Counts 1 and 3 of PBM's Complaint (Docket No. 94). For the reasons stated below, the Court will DENY the Motion as to Count 1 and GRANT the Motion as to Count 3.

### I. BACKGROUND

The parties to this controversy produce infant formula and compete for shares of that market. Plaintiff, PBM Products, LLC produces store brand infant formulas, while Defendant, Mead Johnson & Co. produces Enfamil infant formula. PBM complains that Defendant has "renewed its national false advertising campaign . . . by falsely stating that only Mead Johnson's Enfamil® LIPIL® has two fats, DHA . . . and ARA . . . , which Mead Johnson calls 'LIPIL®.'" (V. Compl. 2.) A 2008 Mailer distributed by Mead Johnson forms the basis for this false advertising claim. (Id. ¶ 40.)

Mead Johnson's current infant formula, Enfamil LIPIL, contains docosahexaenoic acid ("DHA") and arachidonic acid ("ARA") (collectively, "Lipids"), while its prior formula

did not. Mead Johnson has trademarked "LIPIL" to refer to the Lipids as contained within its infant formula. The parties acknowledge that both PBM's store brand formula and Mead Johnson's Enfamil LIPIL utilize the same levels of the Lipids and obtain them from the same supplier, Martek Bioscience Corporation ("Martek")—the only FDA-approved source for the Lipids. (Id. ¶¶ 41-45.)

The Mailer cites studies that compared Mead Johnson's current and prior formulas and apparently found that the addition of the Lipids results in improved eye and brain development for infants. The National Institutes of Health sponsored these independent clinical trials and were conducted by Dr. Eileen Birch, among others. Relying in part on these studies, notwithstanding the fact that its product and PBM's formula both contain the Lipids that originate from the same source and are shipped from the same supplier, Mead Johnson makes statements in the 2008 Mailer to which Plaintiff vehemently objects. (Id. ¶¶ 40, 46-60.)

Specifically in the Mailer, Mead Johnson states, "It may be tempting to try a less expensive store brand, but only Enfamil LIPIL is clinically proven to improve brain and eye development." (Id., Ex. D.) Defendant places a footnote below this claim in noticeably smaller type which reads, "vs *prior* formulation of the same product without DHA and ARA, measured at 12 months for eye and 18 months for brain" ("Disclaimer"). (Id. (emphasis in original).) On the following page, the Mailer states "En-Fact: Enfamil LIPIL's unique formulation is not available in any store brand." (Id.) Also in the Mailer, one observes a graphic labeled "Visual acuity at 12 months." (Id.) The graphic, which is divided down the middle, contains a picture of a duck. One side of the picture looks blurry, while the other

appears clear. Next to the blurry side are the words "without LIPIL®," while the caption next to the clear side reads "with LIPIL®" (Id.) This blurry duck graphic also contains the Disclaimer.

Based on the 2008 Mailer, PBM has brought a Lanham Act false advertising claim and a commercial disparagement claim against Mead Johnson. Seeking dismissal of both of those claims, Mead Johnson has filed this Summary Judgment Motion.

## II. DISCUSSION

### A. Legal Standard

A motion for summary judgment lies only where "there is no genuine issue as to any material fact" and where "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). All "factual disputes and any competing, rational inferences [are resolved] in the light most favorable to the party opposing that motion." Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotations marks and citations omitted). In its decision, courts look to the affidavits or other specific facts pled to determine whether a triable issue exists. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Where no genuine issue of material fact exists, it is the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." Drewitt v. Pratt, 999 F.2d 774, 778-79 (4th Cir. 1993) (internal quotation marks omitted). Mere unsupported speculation is not sufficient if the undisputed evidence indicates the other party should win as a matter of law. Emmett v. Johnson, 532 F.3d 291, 297 (4th Cir. 2008). However, summary judgment

should not be granted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

**B. Lanham Act Claim**

Mead Johnson seeks summary judgment on PBM's Lanham Act claim by arguing that the claim is barred by the parties' 2007 Settlement Agreement and laches, and because PBM fails to prove consumer deception for non-laches barred claims. PBM rejects each of these contentions.

**1. The 2007 Agreement**

Mead Johnson asserts that the release in the 2007 Agreement between these parties that applies to Mead Johnson is much broader than the release that applies to PBM. The Agreement states PBM released Mead Johnson from "any and all actions... that [PBM] now has or ever may have had from the beginning of time to the date of this agreement in connection with the [trade dress] Action and any claims or counterclaims that could have been raised in the Action." (Mead Johnson Mot. Summ. J. 13.) PBM was required to bring the claims it brings now, Mead Johnson says, during the trade dress dispute, and because they did not, they were waived under basic contract principles.

PBM says this argument is "meritless" for two primary reasons (PBM Resp. Mead Johnson Mot. Summ. J. 25.) First, PBM could not have brought a claim regarding the 2008 Mailer at that time because it did not yet exist. Second, even if the Mailer was in existence, the Agreement dealt with a trade dress dispute, which PBM argues, would not be considered the same transaction or occurrence as the current false advertising claims.

The Court rejects Mead Johnson's argument here for the simple reason that a claim based on the 2008 Mailer could not have been brought prior to the 2007 Agreement between these parties.

### 2. Laches

As the Lanham Act provides no express statute of limitations for filing false advertising claims, it is proper to use the analogous state limitations period. See Reed v. United Transp. Union, 488 U.S. 319, 323-24 (1989). The analogous state limitation period for this matter is the limitations period under Virginia's action for fraud, which has a two year limitations period. See Va. Code § 8.01-243(A); Unlimited Screw Prods., Inc. v. Malm, 781 F. Supp. 1121, 1125-26 (E.D. Va. 1991).

To prove the affirmative defense of laches, the defendant must prove (1) lack of diligence by the plaintiff, and (2) prejudice to the defendant. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 121-22 (2002). Lack of diligence is demonstrated when "a plaintiff has unreasonably delayed in pursuing his claim." White v. Daniel, 909 F.2d 99, 102 (4th Cir. 1990). There is no per se rule that defines an "unreasonable" time period. See U.S. E.E.O.C. v. Worthington, Moore & Jacobs, Inc., 582 F. Supp. 2d 731, 735 (D. Md. 2008). Nor is there a bright line test for determining when a defendant has suffered substantial prejudice. Id. Prejudice can include the unavailability of witnesses, changed circumstances, and the loss of pertinent records. Id.

Mead Johnson claims that PBM has failed to diligently pursue claims that have existed for more than two years. To support this contention, PBM parses out statements from the 2008 Mailer and alleges that many of the statements were previously made more

5

than two years ago and thus are barred by laches. (Mead Johnson Mot. Summ. J. 5-7, 16-19.) Mead Johnson also alleges that it has established that PBM was aware of these advertisements and public claims. (Id. at 16.) Mead Johnson says that it recognizes that the Fourth Circuit requires that an advertisement be viewed in context to evaluate consumer deception, but says that there is no difference between its Mailers in 2006 and 2008 as far as the claim that "only Enfamil has LIPIL." (Id. at 17.) Mead Johnson further alleges that much of the language in the 2008 Mailer has appeared in prior Mead Johnson ads and cannot be challenged now under the doctrine of laches.

As to the second portion of the laches test, Mead Johnson alleges that PBM's delay has resulted in prejudice because Mead Johnson has prominently displayed the challenged ads in its marketing campaign and "has spent hundreds of millions of dollars linking its product to these claims." (Mead Johnson Mot. Summ. J. 20.)

PBM's main contention with Mead Johnson's laches argument is in how Mead Johnson attempts to parse the language from the 2008 Mailer to argue that this language has been stated before in different places. PBM's strongest point, and the one that prevails here, is that the 2008 Mailer, whether or not it contains similar language from an amalgam of prior Mead Johnson ads, made stronger and more direct arguments related to the efficacy of store bought infant formula than prior Mead Johnson ads. The fundamental premise behind laches is that there has been a delay after being wronged, however, in this case Mead Johnson's formulation of the 2008 Mailer had a new tone and point that was absent from its prior campaigns.

As the Fourth Circuit has noted, assessing whether an advertisement is literally false, requires a court to analyze the message conveyed within its full context. <u>Scotts v. United Indus. Corp.</u>, 315 F.3d 264, 275 (4th Cir. 2002). Viewed in context, all of the language of the 2008 Mailer takes on a new meaning for PBM because, as a producer of store brand infant formula, it alleges that the 2008 Mailer specifically makes false claims regarding Enfamil in comparison to store bought formulas. Indeed, the 2008 Mailer was specifically designed to "[c]reate uncertainty" about the ability of store bought infant formulas to provide the same nutrients and other benefits that Enfamil can provide. (PBM Resp. Mead Johnson Mot. Summ. J. 18; Ex. M at 188-89; Ex. X at MJC00003754, MJC00003755.) Pointing out that the Mailer's intended shot at store bought formula brands had its effect in the form of lower PBM sales, PBM claims that this shows that the 2008 Mailer had special significance for PBM and was different than prior Mead Johnson advertisements. (PBM Resp. Mead Johnson Mot. Summ. J. 19.) Because the 2008 Mailer made new claims and was aimed specifically at store bought infant formula, the Court finds that Mead Johnson has not proven that PBM failed to diligently bring this current suit and therefore the laches defense is rejected.

### 3. Merits of Lanham Act Claim

PBM alleges that Mead Johnson has violated the Lanham Act ("Act"), specifically 15 U.S.C. § 1125(a)(1)(A) or (B) (2006), by virtue of the Mailer statements.[1]

---

[1] Section 1125(a)(1)(A) prohibits use of a "false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." Section 1125(a)(1)(B) prohibits use of a

To prevail on this claim, PBM must demonstrate:

(1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

Scotts, 315 F.3d at 272. As to the first element, PBM must prove the representation challenged fits into one of two categories: "First, there are commercial claims that are literally false as a factual matter, either on their face or by necessary implication[.] . . . [S]econd, there are claims that may be literally true or ambiguous but which implicitly convey a false impression, are misleading in context, or are likely to deceive consumers." Black & Decker (U.S.) Inc. v. Pro-Tech Power Inc., 26 F. Supp. 2d 834, 862 (E.D. Va. 1998) (citing United Indus. Corp. v. Clorox Co., 140 F.3d 1175, 1180 (8th Cir. 1998); C.B. Fleet Co. v. SmithKline Beecham Consumer Healthcare, 131 F.3d 430 (4th Cir. 1997); Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1139 (9th Cir. 1997); Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1138 (4th Cir. 1993)). "Where the advertisement is literally false, a violation may be established without evidence of consumer deception." Scotts, 315 F.3d at 273. Conversely, "if a plaintiff's theory of recovery is premised upon a claim of implied falsehood, a plaintiff must demonstrate, by extrinsic evidence, that the challenged [representations] tend to mislead or confuse consumers." Id.

---

"false or misleading description of fact, or false or misleading representation of fact, which in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities."

8

Mead Johnson's argument that the Lanham Act claim must fail on the merits is premised on the Court agreeing with its laches argument and thus excluding much of the language of the Mailer from consideration. With that as the baseline, Mead Johnson argues that the surveys by Mr. Ridgway fail as a matter of law because they did not distinguish between laches-barred language and actionable language in the Mailer.

Because the Court rejects Mead Johnson's laches argument and has determined that Mr. Ridgway's survey is admissible, Mead Johnson's only remaining viable argument is that the claims are literally true as a matter of law. In reference to the Mailer, both parties, however, present fact-laden arguments in support of their positions. As a result, the Court finds that whether the claims are literally or impliedly false or true, or somewhere in between, involves material factual disputes that cannot be resolved on summary judgment. Moreover, even without the proof of consumer deception in the Ridgway survey, PBM has sufficient evidence to make a triable issue on whether the Mailer was intentionally deceptive—an option that does not require consumer deception evidence.[2]

## B. Commercial Disparagement Claim

Mead Johnson argues that the Court should grant summary judgment on PBM's commercial disparagement claim because it is not a recognized cause of action in Virginia or, alternatively, because it fails on the merits.

---

[2] Even though this Court previously found the Mailer was not literally false, that ruling was on a preliminary injunction and does not mandate the same result at a later stage in the proceeding, especially post-discovery. See Univ. of Texas v. Camenisch, 451 U.S. 390, 395 (1981) ("findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits").

As this Court has previously held, "the only claims for unfair competition recognized in Virginia are palming off and misappropriation of another's work." PBM Products, Inc. v. Mead Johnson & Co., 204 F.R.D. 71, 75 (E.D. Va. 2001). Thus, Virginia does not recognize a cause of action for deceptive trade practices, such as false advertising. See id. Accordingly, the Court GRANTS Mead Johnson's Motion as to this claim.

### III. CONCLUSION

For the reasons provided above, the Court DENIES the Motion as to Count 1 and GRANTS the Motion as to Count 3. An appropriate Order will accompany this Memorandum.

```
            /s/
James R. Spencer
Chief United States District Judge
```

ENTERED this 24th day of December 2009