IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| PBM PRODUCTS, LLC and PBM NUTRITIONALS, LLC<br><br>　　　　　　　　　　Plaintiffs,<br><br>　v.<br><br>MEAD JOHNSON & COMPANY,<br><br>　　　　　　　　　　Defendants. | Action No. 3:09–CV–269 |

**MEMORANDUM OPINION**

THIS MATTER is before the Court on PBM's Motion for Judgment as a Matter of Law, which seeks to dismiss Mead Johnson's Lanham Act counterclaim based on the "compare to" language on PBM's baby formula labels. The Motion was made orally to the Court on November 9, 2009. As explained below, the Motion is GRANTED.

**I.  BACKGROUND**

Plaintiffs, PBM Products, LLC and PBM Nutritionals, LLC (collectively "PBM") produce store-brand infant formula. Defendant Mead Johnson & Co. ("Mead Johnson") produces "name-brand" infant formula. Under the brand name Enfamil, Mead Johnson markets a variety of products including a standard formula, a formula with broken down proteins, and a formula with added rice starch. PBM also produces a standard formula, a formula with broken down proteins, and a formula with added rice starch. PBM often includes a comparative advertising label on its formula which states, "Compare to Enfamil Lipil." The label on PBM's gentle formula states it contains "Partially Broken Down Whey Protein."

PBM initiated the current suit in 2009, alleging that a Mead Johnson mailer is false

and misleading under the Lanham Act. Mead Johnson subsequently filed amended counterclaims, including Count 3, which is a Lanham Act claim based on PBM's use of "Compare to Enfamil Lipil" language on its cans of infant formula.

A seven day jury trial was held in this matter on November 2-10, 2009. At the close of Mead Johnson's case, PBM moved for Judgment as a Matter of Law on Mead Johnson's claim. The Court granted the Motion. This memorandum explains that ruling.

## II. DISCUSSION

### A. Legal Standard

A district court may grant a motion for judgment as a matter of law if "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." GSM Dealer Servs., Inc. v. Chrysler Corp., 32 F.3d 139, 142 (4th Cir. 1994) (quoting Fed. R. Civ. P. 50(a)). Under Rule 50, the court must examine the evidence in the light most favorable to the nonmoving party and ascertain "whether a reasonable trier of fact could draw only one conclusion from the evidence." GSM Dealer Servs., 32 F.3d at 142 (quoting Townley v. Norfolk & W. Ry., 887 F.2d 498, 499 (4th Cir. 1989)). The motion should be granted if the nonmoving party failed to make a showing on an essential element of his case with respect to which he had the burden of proof. Price v. City of Charlotte, 93 F.3d 1241, 1249 (4th Cir. 1996).

### B. Analysis

Mead Johnson has asserted a Lanham Act false advertising claim against PBM based on the "Compare to Enfamil" language that appears on PBM's store brand infant formula. According to Mead Johnson, PBM's "compare to" ad impliedly communicates the false message that the performance of PBM's products has been tested and verified and is

equivalent to Mead Johnson's counterpart formulas and that the parties' formulas are "identical in composition."

Requesting judgment as a matter of law on Mead Johnson's Lanham Act claim, PBM advances several arguments. First, PBM asserts that Mead Johnson agreed in a 2007 settlement agreement that PBM could use the "compare to" claim. Second, noting that there are no allegations of literal falsity, PBM argues that the testimony of Mead Johnson expert Dr. Dhar failed to prove that the "compare to" claim communicates an impliedly false message. Next, PBM alleges that the Lanham Act claim is barred by the two-year statute of limitations or laches. Lastly, PBM claims that Mead Johnson expert Dr. Gering failed to establish that any damages suffered by Mead Johnson were caused by PBM's "compare to" language. The Court addresses these arguments below.

### 1. The Statute of Limitations and Laches Bars Mead Johnson's Claims as to PBM's Routine and Gentle Formulas

As the Lanham Act provides no express statute of limitations for filing false advertising claims, it is proper to use the analogous state limitations period. See Reed v. United Transp. Union, 488 U.S. 319, 323-24 (1989). The analogous state limitation period for this matter is the limitations period under Virginia's action for fraud, which has a two year limitations period. See Va. Code § 8.01-243(A); Unlimited Screw Prods., Inc. v. Malm, 781 F. Supp. 1121, 1125-26 (E.D. Va. 1991).

Mead Johnson filed its counterclaim on May 18, 2009 (Dock. No. 29). Thus, claims that accrued before May 18, 2007 are time-barred. PBM first made the "Compare to Enfamil Lipil" claim for its routine product no later than 2003. The claim was first made for its gentle product in 2006. Therefore, the statute of limitations bars Mead Johnson's false advertising

claim concerning PBM's routine and gentle formula for all ads issued prior to May 18, 2007.

For allegations concerning advertisements on those products issued after May 18, 2007, PBM asserts that the claim is barred by laches. The doctrine of laches may bar a false advertising claim addressing conduct that began prior to the limitations period but continued into the limitations period. To prove laches, PBM has the burden of proving (1) lack of diligence by Mead Johnson in pursuing its Lanham Act claim, and (2) prejudice to PBM resulting from Mead Johnson's lack of diligence. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 121-22 (2002). Lack of diligence is demonstrated when "a plaintiff has unreasonably delayed in pursuing his claim." White v. Daniel, 909 F.2d 99, 102 (4th Cir. 1990). There is no per se rule that defines an "unreasonable" time period. U.S. E.E.O.C. v. Worthington, Moore & Jacobs, Inc., 582 F. Supp. 2d 731, 735 (D. Md. 2008). Nor is there a bright line test for determining when a defendant has suffered prejudice. Id. Prejudice can include the unavailability of witnesses, changed circumstances, and the loss of pertinent records. Id.

When a plaintiff files suit outside of the statute of limitations, as it did here, "courts have presumed that laches is applicable." See Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 836 (9th Cir. 2002); see also Cunningham v. Interlake S.S. Co., 567 F.3d 758, 761 (6th Cir. 2009); TAG/ICIB Servs. v. Pan Am. Grain Co., 215 F.3d 172, 175-76 (1st Cir. 2000); Conopco, Inc. v. Campbell Soup Co., 95 F.3d 187, 191 (2d Cir. 1996); U.S. E.E.O.C. v. Great Atlantic & Pacific Tea Co., 735 F.2d 69, 80 (3d Cir. 1984). "To hold otherwise would effectively swallow the rule of laches, and render it a spineless defense." Jarrow Formulas, 304 F.3d at 837.

Because Mead Johnson filed outside the statute of limitations, the laches defense is

not only applicable, but also satisfied in this case. Mead Johnson's delay was unreasonable. Having known about the "compare to" claim since at least 2006 when the parties were involved in trademark litigation over a label that contained the claim, Mead Johnson cannot dispute that it had knowledge of PBM's "compare to" claim. Mead Johnson has not proffered any other excuses for its actions. This unreasonable delay resulted in prejudice to PBM due to PBM's continued use of the advertisement on all of its formulas in over a dozen retail stores for years. Indeed, by alleging that PBM has been unjustly enriched by over $27 million as a result of the "compare to" ads, Mead Johnson must concede that permitting this suit to go forward would enable it to benefit from its own unreasonable delay. Laches, however, prevents this inequity.[1]

### 2. The Lanham Act Claim Fails on the Merits

Based on the above ruling, only Mead Johnson's claim as to PBM's added rice starch formula remains before the Court. As to the "compare to" language on that formula, Mead Johnson alleges that it violates the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).[2]

To prevail on this claim, Mead Johnson must demonstrate:

(1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce;

---

[1] Although the Court came to a different conclusion on this issue in its Opinion denying PBM's summary judgment motion as to Mead Johnson's Lanham Act claim, the procedural posture and nature of the Court's review are now, of course, quite different.

[2] Section 1125(a)(1)(B) prohibits use of a "false or misleading description of fact, or false or misleading representation of fact, which in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities."

>and (5) the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

Scotts Co. v. United Indus. Corp., 315 F.3d 264, 272 (4th Cir. 2002).  As to the first element, Mead Johnson must prove the representation challenged fits into one of two categories: "First, there are commercial claims that are literally false as a factual matter, either on their face or by necessary implication[.] . . . [S]econd, there are claims that may be literally true or ambiguous but which implicitly convey a false impression, are misleading in context, or are likely to deceive consumers."  Black & Decker (U.S.) Inc. v. Pro-Tech Power Inc., 26 F. Supp. 2d 834, 862 (E.D. Va. 1998) (citing United Indus. Corp. v. Clorox Co., 140 F.3d 1175, 1180 (8th Cir. 1998); C.B. Fleet Co. v. SmithKline Beecham Consumer Healthcare, 131 F.3d 430 (4th Cir. 1997); Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1139 (9th Cir. 1997); Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1138 (4th Cir. 1993)).  "Where the advertisement is literally false, a violation may be established without evidence of consumer deception."  Scotts, 315 F.3d at 273.  Conversely, "if a plaintiff's theory of recovery is premised upon a claim of implied falsehood, a plaintiff must demonstrate, by extrinsic evidence, that the challenged [representations] tend to mislead or confuse consumers."  Id.

Here, Mead Johnson conceded that the "compare to" ad was not literally false and thus argued that it was impliedly false.  In Mead Johnson's view, the "compare to" ad impliedly communicates the false message that the performance of PBM's products has been tested and verified and is equivalent to Mead Johnson's counterpart formulas and that the parties' formulas are "identical in composition."  (Mead Johnson Amend. Compl. ¶¶ 45-46.)  To support those contentions, Mead Johnson offered the testimony of Dr. Ravi Dhar, who had conducted two consumer surveys.  As stated from the stand during trial, Dr. Dhar asked each

respondent an open-ended and a close-ended question. The open-ended question asked "Based on [the "compare to"] phrase, what if anything do you believe about this product in comparison to Enfamil AR LIPIL?" (Trial Tr. vol. V, 840, Nov. 6, 2009.) The close-ended question stated "Based on [the "compare to"] phrase, which of the following do you believe?" and the potential answer choices were (1) the formulas had the same ingredients; (2) the formulas had different ingredients; or (3) don't know or none of the above. (Trial Tr. 842.) Based on the responses to those questions, Dr. Dhar concluded that a substantial portion of respondents believed that the "compare to" language communicated the message that the products were the "same." (Trial Tr. 838.) The problem with extrapolating from this answer is that Dr. Dhar never defined "same" in his survey.

To prove implied falsity with a consumer survey, the survey must address the critical question in the case. Scotts, 315 F.3d at 279. Here, Mead Johnson alleges that the "compare to" claim impliedly communicates the message that PBM's formulas is "identical in composition" to Mead Johnson's formulas. Testimony at trial showed that the ingredients of the parties' products are very similar, but not identical, and that it is likely that the nutritional value of the parties' products is nearly the same. In that context, the critical question is whether consumers understand the "compare to" language to make the claim that the formulas are indeed "identical," not whether the ingredients are nearly the same, substantially the same, or any other gradation one could create. Despite that focus, Dr. Dhar's surveys never used the word "identical" nor did the surveys probe what respondents may have meant when they said the products were the "same." Instead, he assumed that respondents who believed the parties' products had all of the same ingredients would have selected "the same," while respondents who believed the products had some or even most of

the same ingredients would have selected "different." For example, he admitted that respondents who thought that ninety-five percent of the ingredients were the same could have chosen to say "same"—and, in his view, would have meant "identical." (Trial Tr. 838.) That assumption, however, is not warranted. By failing to account for the specific allegations in this case and consider obvious alternative explanations for the results, the surveys cannot provide the required evidence needed to prove implied falsity. And without that evidence, Mead Johnson cannot prevail on its Lanham Act claim.[3]

As to the allegations that the "compare to" language impliedly communicates the message that the products have been tested against each other, Dr. Dhar testified that consumers took away the implied message that the products had been tested against each other. Jeremy Jones, PBM's marketing director, testified that the products have been tested against each other. (Trial Tr. vol. VI, 1090, Nov. 9, 2009.) Without survey evidence as to what type of testing Mead Johnson alleges was not done, the only evidence before the Court is that some consumers believe some type of testing has been done and, as PBM's marketing director stated, some testing has in fact been done. Thus, the claim fails because it is not impliedly false.

As to Mead Johnson's allegation that PBM's label that states its gentle formula contains "partially broken down whey protein," Mead Johnson asserts that Dr. Dhar's survey shows that consumers believe that this statement implies that all or most of the whey

---

[3] The above conclusion equally applies to Mead Johnson's allegations that the "compare to" language implied that the parties' formulas had "equivalent" benefits. Like the questions related to ingredients, Dr. Dhar assumed that respondents who answered that the products had the same benefits meant the products had entirely equivalent benefits. Again, this assumption and the conclusions that follow are not warranted in the context of this case.

protein in PBM's gentle product is partially broken down or that PBM has the same amount of partially broken down whey protein as Mead Johnson's gentle formula.  Whether that message is communicated or not, Mead Johnson's witness Harvey Anderson testified that there is no scientific proof that the products are actually different as to digestibility in infants.  (Trial Tr. 1058.)  Thus, the alleged implied message cannot be proven true or false.

Even if Mead Johnson could prove implied falsity, Mead Johnson's Lanham Act claim must still fail because it cannot prove that the "compare to" claim caused damages to Mead Johnson.[4]  To recover damages under the Lanham Act, the plaintiff must prove that there has been a Lanham Act violation, that the plaintiff has been damaged, and that there is a causal link between the violation and those damages.  Xoom, Inc. v. Imageline, Inc., 323 F.3d 279, 286 (4th Cir. 2003).  In order to prove damages, Mead Johnson proffered economist Dr. Richard Gering, who conducted a market share analysis to provide an approximation of the lost sales Mead Johnson suffered.  Although a market share analysis is a well-established approach to calculating damages, that approach can only be applied to sales that were caused by PBM's "compare to" advertisement.  Yet, Dr. Gering assumed that every PBM sale made was attributable to the "compare to" ad on the products and that PBM would not have made any other sales but for the ad.  Dr. Gering's calculations showed that Mead Johnson suffered damages, but did not show that those damages were caused by PBM's accused advertisement. (Trial Tr. 1029.)  Without proof of causation, the Lanham Act claim cannot go

---

[4] The Court notes here that even though Mead Johnson's claims as to PBM's routine and gentle formula were rejected based on the statute of limitations and laches, those claims would also fail for the same reasons given for the added rice starch formula.

to the jury.[5]

### III. CONCLUSION

For all of the above stated reasons, the Court GRANTS PBM's Motion. Let the Clerk send a copy of this memorandum to all counsel of record. An appropriate order will issue forthwith.

> _____/s/_____
> James R. Spencer
> Chief United States District Judge

ENTERED this   1st   day March 2010

---

[5] Based on the above rulings, the Court does not address PBM's claim that the parties' 2007 Agreement resulted in Mead Johnson waiving its Lanham Act claim.