IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| PBM PRODUCTS, LLC and PBM NUTRITIONALS, LLC<br><br>         Plaintiffs,<br><br> v.<br><br>MEAD JOHNSON & COMPANY,<br><br>         Defendant. | Action No. 3:09–CV–269 |

### MEMORANDUM OPINION

THIS MATTER is before the Court in response to the jury verdict entered in favor of PBM on November 10, 2009 (Docket No. 213). Mead Johnson has filed a Motion for New Trial on Damages, Or in the Alternative, Remittitur (Docket Nos. 233, 235). PBM has filed a Motion for Award of Enhanced Damages, Attorneys' Fees, and Modified Injunction (Docket No. 229).[1] For the reasons stated below, Mead Johnson's Motion is DENIED and PBM's Motion as to an award of enhanced damages and attorneys' fees is also DENIED.

### I. BACKGROUND

The parties to this controversy produce infant formula and compete for shares of that market. Plaintiffs, PBM Nutritionals, LLC and PBM Products, LLC (collectively "PBM") produce store brand infant formulas, while Defendant, Mead Johnson & Co. produces name brand formula under the label Enfamil®.

---

[1] This memorandum does not address the portion of PBM's Motion seeking to modify the injunction.

Apart from their familiarity in the marketplace, PBM and Mead Johnson have become well-acquainted in the courtroom.  In less than a decade, they have been involved in four Lanham Act actions, not to mention various other claims and counterclaims.  In 2001, PBM obtained a restraining order prohibiting Mead Johnson from disseminating further false information about PBM's products.  See PBM Prods., Inc. v. Mead Johnson & Co., 03:01-cv-199 (E.D. Va. 2001).  Mead Johnson was held in contempt during that litigation for not retrieving all of its false ads as directed by a court order.  The parties eventually settled that dispute.

In 2002, PBM initiated another Lanham Act false advertising suit against Mead Johnson, this time based on Mead Johnson promotional materials that stated PBM's products did not include the beneficial nucleotide contained in Mead Johnson's formulas.  See PBM Prods., Inc. v. Mead Johnson & Co., 03:02-cv-944 (E.D. Va. 2002).  This Court entered a temporary restraining order on consent of the parties that prevented Mead Johnson from disseminating those ads.  In 2003, the parties settled that dispute as well.

In 2006, Mead Johnson sued PBM for trade dress infringement and unfair competition under the Lanham Act.  See Mead Johnson & Co. v. PBM Nutritionals, LLC, PBM Prods., Inc.,1:06-cv-1246 (S.D. Ind. 2006).  The parties settled the dispute in August of 2007.  Part of that agreement stated that Mead Johnson promised that it "agrees to the use by the PBM Parties of the packaging shown in Exhibit D."  (PBM Mot. for Partial Summ. J., Ex. 19, ¶1.)  Exhibit D contained a label that included the comparative advertising statement "Compare to Enfamil Lipil."  (Id., Ex. D.)

PBM initiated the current suit in April 2009, alleging that a Mead Johnson advertisement was false and misleading under the Lanham Act. Mead Johnson counterclaimed, asserting that PBM's advertising violated the same law.

During a seven day jury trial, held on November 2-10, 2009, the parties presented evidence to support their allegations that the opposing parties' advertisements were false or misleading as well as expert testimony on the damages caused by those ads. PBM presented for its part the testimony of Dr. Kenneth Wise, who used a regression analysis that included sales figures and other economic data in order to produce an estimate of PBM's past and future lost profits. He estimated that PBM had lost past and future profits as a result of the Mead Johnson mailer in an amount ranging from $30.4 million to $59.7 million. Dr. Wise also calculated the amount of past and future profits that PBM alleged that Mead Johnson unjustly obtained as a result of the mailer to be between $31.1 million to $60.1 million.

Mead Johnson offered the testimony of Dr. Richard Gering in response to PBM's Dr. Wise and in support of its allegations that it had suffered $44.6 million in damages due to PBM's false advertising.

At the close of the evidence on Mead Johnson's claim, the Court granted PBM's Motion for Judgment as a Matter of Law, finding that Mead Johnson's claim was barred by the statute of limitations and laches. Even if the claim was not barred, the Court further found that Mead Johnson failed to prove the implied falsity of the ad and that the ad had caused any damage to Mead Johnson.

As to PBM's Lanham Act claim, the jury was asked to evaluate whether four specific claims made in the Mead Johnson mailer communicated certain false or misleading messages concerning store-brand infant formulas, such as PBM's. Two of the four claims were express claims—the Mailer stated that (1) "mothers who buy store brand infant formula to save baby expenses are cutting back on nutrition compared to [Mead Johnson's] Enfamil" and (2) "only Enfamil has been clinically proven to improve infants's mental and visual development." (Trial Tr. 1260-61 (jury instructions).) Relying on consumer survey evidence, PBM contended that the mailer also impliedly communicated two false and misleading claims: that (1) "Enfamil contains two important fatty acids, DHA and ARA, and that PBM's store brand infant formulas do not" and (2) "Enfamil has been clinically tested against and shown to be superior to PBM's formula with respect to brain and eye development in infants." (Id.)

The Jury Verdict Sheet asked "Has PBM established, by a preponderance of the evidence, that Mead Johnson engaged in false advertising in violation of the Lanham Act?" (Docket No. 213). The jury answered in the affirmative and awarded PBM $13.5 million.

Mead Johnson has now filed a Motion for New Trial, Or in the Alternative, Remittitur and PBM has filed a Motion for Award of Enhanced Damages, Attorneys' Fees, and Modified Injunction. Each motion is discussed in turn below.

## II. DISCUSSION

### A. Mead Johnson's Motion for a New Trial, Or in the Alternative, Remittitur

Mead Johnson seeks a new trial on damages or, alternatively, remittitur, contending that the jury's verdict is against the clear weight of the evidence and is based on evidence

that is false.  It also asserts that, when compared to other Lanham Act cases, the jury's award in this case is excessive and should be reduced, or a new trial should be ordered.

Mead Johnson's argument focuses on its evaluation of PBM's damages expert, Dr. Kenneth Wise.  The jury's award of $13.5 million must be contrary to the evidence and based on false evidence, because, Mead Johnson says, Dr. Wise's damage calculations were fundamentally flawed.  According to Mead Johnson, Dr. Wise's regression analysis failed to control for an Abbott advertising campaign that also took aim at store bought brands.  Failing to include that factor, Mead Johnson alleges, overstated the effect Mead Johnson's mailer had on PBM's sales.  Similarly, Mead Johnson notes that PBM sued Abbott and Nestle concerning false statements made by those companies, yet Dr. Wise, in Mead Johnson's view, attributed all of PBM's lost sales to Mead Johnson rather than on a pro-rata basis.  Mead Johnson also claims Dr. Wise's regression analysis was deficient because it failed to incorporate relevant market factors, including the launch of competitor Abbott's new prebiotic formula, Abbott's loss of three WIC contracts in 2009, the overall increase in the WIC market, the decrease in the birth rate, pricing changes in the market, rebates and coupons from other infant formula manufacturers, such as Abbott, ad expenditures, the redemption rates of Mead Johnson's mailer compared to prior mailers, the impact of the current economic recession, and the impact of Sam's Club beginning to carry PBM's formula.  (Mead Johnson Mem. in Supp. Mot. for New Trial 7-8.)   If those variables had been included, as they were in Mead Johnson's expert, Dr. Richard Gering's analysis, then, Mead Johnson suggests the damage award could be no more than $844,000.  As a result, the

jury's verdict should be rejected because it necessarily relied on a damage analysis that was based on false evidence and that cut against the great weight of the evidence.

Mead Johnson also believes that letting the jury verdict stand would result in a miscarriage of justice because the verdict is excessive compared to similarly situated Lanham Act cases. Mead Johnson's research revealed only one case with a higher verdict than the one in this case, yet Mead Johnson asserts the $19.25 million award in that case was based on allegations of $544 million in damages.

A district court may set aside a jury's verdict and grant a new trial under Federal Rule of Civil Procedure 59(a) only if the verdict (1) is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice. Lovell v. BBNT Solutions, LLC, 295 F. Supp. 2d 611, 617-18 (E.D. Va. 2003) (citing Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc., 99 F.3d 587, 594 (4th Cir. 1996)). On a motion for a new trial addressing compensatory damages, the trial court must weigh the evidence and consider the credibility of the witnesses to determine whether the verdict was against the clear weight of the evidence or was based upon evidence that was false. Knussman v. Maryland, 272 F.3d 625, 647 (4th Cir. 2001).

Remittitur, used in connection with a motion for a new trial under Rule 59, is the established method by which a trial judge can review a jury award for excessiveness. Atlas Food Sys. and Servs., Inc. v. Cran Nat. Vendors, Inc., 99 F.3d 587, 593 (4th Cir. 1996). "A court should grant a new trial if the verdict is so excessive so as to shock the conscience and demonstrate that it was not the product of a fair and impartial decision." Page v. Trustees of Sandhills Cmty. College, No. 96-cv-358, 1999 WL 1937475, at *8 (M.D.N.C. Aug.

31, 1999) (internal quotation omitted). Under the practice of remittitur, "the trial court orders a new trial unless the plaintiff accepts a reduction in an excessive jury award." Cline v. Wal-Mart Stores, Inc., 144 F.3d 294, 305 (4th Cir. 1998).

The grant or denial of a motion for a new trial or remittitur is entrusted to the sound discretion of the district court and will be reversed on appeal only upon a showing of an abuse of discretion. Atlas, 99 F.3d at 594.

As the parties point out, there may be some interplay between the Rule 59 standard described above and a provision in the Lanham Act, 15 U.S.C. § 1117(a), which states that if, with respect to an award based on defendant's profits, the court finds the award either inadequate or excessive, the court may in its discretion enter judgment for such sum as the court finds just. But the Lanham Act treats an award based on plaintiff's damages differently, permitting the court to increase the amount up to three times, but not to reduce the award. Thus, it appears that a court can reduce an award based on defendant's ill-gotten profits based on the more lenient Lanham Act provision, rather than having to comply with the standards established for a remittitur under Rule 59. The trick then is to know when an award was based on plaintiff's damages or on defendant's profits. Here, the jury was presented with both figures, but the verdict form did not specify which one they ultimately awarded. Mead Johnson proceeds on the assumption that the Rule 59 standard controls here. Resolution of that potential conflict is not necessary for this motion, however, because, under either standard the Court finds that neither a reduction nor an increase is warranted under Rule 59 or 15 U.S.C. § 1117(a).

Like in the motion in limine as to Dr. Wise and during his cross-examination at trial, Mead Johnson has again reiterated that it thinks Dr. Wise failed to properly consider certain factors. Yet, the third time is not the charm on this occasion.

Mead Johnson has failed to carry its heavy burden of proving that the verdict in this case was against the clear weight of the evidence or based on evidence that is false. Although Mead Johnson may have critiques it can make of Dr. Wise's analysis, the bottom line is that he used a reliable regression analysis that was based on relevant and appropriate data. He explained why certain variables were included and why others were excluded. Mead Johnson thoroughly crossed him on all of those issues. That Mead Johnson and Dr. Gering would have done it differently does not place this verdict against the weight of the evidence or show that it was based on false evidence. Moreover, to the extent Mead Johnson made valid—though not fatal—criticisms of Dr. Wise's report, it should take some comfort that the award was not for the full amount Dr. Wise provided as his high damage estimate.

Nor did the size of the verdict result in a miscarriage of justice. The factual record supports the $13.5 million verdict. The jury heard expert testimony from Dr. Wise and from Mead Johnson's damages expert Dr. Gering and the jury came to the conclusion that PBM was significantly harmed, though not by $60 million. In reaching its conclusion, the jury had access to ample evidence to support its verdict. The jury heard evidence on the lost profits PBM saw near the time the mailer was sent, the lasting effects false advertising can have in the infant formula market, the 1.6 million individuals who received the mailer as well as those that would learn about it via word-of-mouth, and the fact that as the infant

formula leader Mead Johnson's messages carry a certain amount of weight with the public. Other awards in other Lanham Act cases do not change this result.  See, e.g., EFCO Corp. v. Symons Corp., 219 F.3d 734, 742 (8th Cir. 2000) ($13 million); U-Haul Intern., Inc. v. Jartran, Inc., 601 F. Supp. 1140, 1151, aff'd in part and rev'd in part, 793 F.2d 1034 (9th Cir. 1986) (affirming damages award of $40 million); Proctor & Gramble Co. v. Haugen, 627 F. Supp. 2d 1287, 1303 (D. Utah 2008) ($19.25 million); First Act Inc. v. Brook Mays Music Co., Inc., 429 F. Supp. 2d 429, 440 (D. Mass. 2006) ($16.2 million).  Ultimately, the award does not shock the Court's judicial conscience, nor does the size of the award indicate that the verdict was the result of an unfair or partial decision.  Thus, Mead Johnson's Motion is DENIED.

### B. PBM's Motion for an Award of Enhanced Damages, Attorneys' Fees, and Modified Injunction

#### 1. Enhanced Damages

PBM asks the Court to invoke the Lanham Act's enhanced damages provision for two reasons.  First, PBM asserts enhanced damages are necessary to deter future willful false advertising by Mead Johnson.  As evidence of Mead Johnson's willfulness, PBM cites Mead Johnson's own documents showing the mailer was specifically designed to undermine the public's increasing trust of store brand infant formula.  PBM believes that the trial testimony corroborates that intent, stating that Mead Johnson's own witnesses admitted that 3 of the 4 disputed claims in Mead Johnson's mailer were false.  According to PBM, Mead Johnson's Dr. Thomas Brenna and Nicky Tesh allegedly agreed that PBM's formula does not represent a cut-back in nutrition.  Mead Johnson's Dr. Hugh Tucker and Brenna allegedly agreed that PBM's formula does in fact contain DHA and ARA and that

Enfamil has not been clinically tested against and shown to be superior to PBM's formula. And as to the fourth claim—that only Enfamil has been clinically proven to prove an infant's mental and visual development—PBM claims that despite trying to claim otherwise, Mead Johnson cannot escape Dr. Brenna's testimony that Enfamil is not the only formula supplemented with DHA and ARA that has been proven to improve visual and mental acuity. PBM adds that Mead Johnson's willful actions are remarkable considering that Mead Johnson has already paid PBM $45 million in connection with prior Lanham Act suits.

In PBM's view, Mead Johnson has developed a recalcitrant corporate culture that has been on full display before as well as after the $13.5 million jury verdict was entered against it in this case. To doubt Mead Johnson's recalcitrance, PBM asserts, the Court would have to ignore that Mead Johnson's witnesses took untenable positions at trial, such as Mead Johnson's Nicky Tesh insisting that the reference in the Mailer to not "cutting back on nutrition" meant mothers should not starve their babies.

Furthermore, PBM suggests that the need to deter Mead Johnson through enhanced damages is especially necessary considering the public's interest in receiving truthful messages in general and related to baby formula in particular. By incorrectly suggesting that mothers had to buy Mead Johnson's expensive name brand formula to give their babies the necessary nutrition, PBM says, Mead Johnson caused significant economic harm to American consumers.

As a second reason supporting enhancement, PBM maintains that the jury's award does not fully compensate it for the lasting harm Mead Johnson's false advertising will have

on PBM's reputation. According to PBM, the mailer harmed PBM's reputation in the eyes of the 1.6 million mothers who received it as well as numerous other individuals who learned about its contents via "word of mouth." Considering that the mailer came from the market leader in infant formula, PBM believes that it will be especially difficult to erase the negative effects of Mead Johnson's false attacks. Thus, in light of PBM's expert concluding that the mailer caused $60 million in damages, PBM asserts that the jury's verdict should be enhanced to fully compensate its reputational losses.

The Lanham Act empowers a court to alter a jury's award. 15 U.S.C. § 1117(a). The statute states, in pertinent part:

> In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty.

Id. § 1117(a). Deterring future misconduct is one "circumstance" often used to justify enhanced damages. Super Duper, Inc. v. Mattel, Inc., No. 05-1700, 2009 WL 866461, at *3 (D.S.C. Mar. 31, 2009) (citing Sands, Taylor & Wood v. Quacker Oats Co., 34 F.3d 1340, 1348 (7th Cir. 1994) (stating that remedial provisions are intended to "provide a sufficient deterrent to ensure that the guilty party will not return to its former ways and once again pollute the marketplace"); Mobius Mgmt. Sys., Inc., v. Fourth Dimension Software, Inc., 880 F. Supp. 1005, 1025 (S.D.N.Y. 1994) (noting that while punitive damages are not allowed under the Lanham Act, its treble "enhancement [provisions] may be used to deter further willful violations")).

In addition, enhanced damages may be awarded "to compensate a plaintiff for its actual injuries." Id. (citing Getty Petroleum Corp. v. Barto Petroleum Corp., 858 F.2d 103, 113 (2d Cir. 1988)). "An enhancement is appropriate to compensate a Lanham Act plaintiff only for such adverse effects as can neither be dismissed as speculative nor precisely calculated . . . . Lost profits and market distortion are . . . appropriate bases for the catch-all enhancement . . . ." Alpo Petfoods,, Inc. v. Ralston Purina Co., 997 F.2d 949, 955 (D.C. Cir. 1993). "[T]he plaintiff's provable damages are the benchmark for determining whether an award constitutes compensation or whether it is a penalty." Badger Meter, Inc. v. Grinnell Corp., 13 F.3d 1145, 1157 (7th Cir. 1994).

When evaluating whether to make an award of damages under the Lanham Act, the court must consider the following factors: (1) whether the defendant had the intent to confuse or deceive, (2) whether sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by the plaintiff in asserting his rights, (5) the public interest in making the misconduct unprofitable, and (6) whether it is a case of palming off. Synergistic Intern., LLC v. Korman, 470 F.3d 162, 175 (4th Cir. 2006).

The jury awarded PBM $13.5 million in damages for Mead Johnson's distribution of its mailer to 1.6 million consumers. PBM had argued that its total damages from violation of the Lanham Act was $60 million. PBM seeks trebling on the grounds that Mead Johnson needs to be deterred and PBM will be under-compensated by the amount awarded by the jury. After reviewing the parties' arguments and all of the equitable factors, the Court finds that enhanced damages are inappropriate in this case.

PBM is not under-compensated by an award of $13.5 million despite the award being less than the total amount it sought. PBM has not shown or even argued that its damages calculations were imprecise because of insufficient information or for any other reason that caused an injustice in this case. See Taco Cabana Intern., Inc. v. Two Pesos, Inc., 932 F.2d 1113, 1127 (5th Cir. 1991). The jury evaluated the parties' experts' testimony, which consisted of sales data, profits, specifics on the distribution of the parties' various formulas, and market information, and came to the conclusion that $13.5 million should be awarded to PBM. Also, while the Court has stated that Mead Johnson's mailer was an "aggressive" attack on store brands, the Court has not found record evidence showing that Mead Johnson had the intent to distribute false or misleading advertisements. See Synergistic Intern., 470 F.3d at 174 n.13 ("[W]illfulness is not an essential prerequisite for a damages award, but . . . it remains a highly pertinent factor.")

The Court agrees with PBM that eradicating false advertisements from the market place, especially in an area involving infant nutrition, is in the public interest. But, in evaluating an award of enhanced damages, the Court must be careful not to stretch a compensatory award into a punitive one. Here, Dr. Wise's damage calculation of $60 million was alleged to be deficient in several ways, including that he failed to include variables that could have accounted for much of PBM's loss in sales. The jury heard and weighed PBM and Mead Johnson's damages experts and answered PBM's request for an award of past and future damages by awarding PBM $13.5 million. Without enhancement, this award provides PBM an adequate remedy. See id. at 176.

PBM also suggests that the award should be enhanced to deter Mead Johnson from future misconduct. Again, though, to the extent deterrence is a permissible circumstance allowing enhanced damages, such enhancement must not constitute punishment. The verdict awarded in this case was a significant one and is supported by the record. Increasing the $13.5 million award by any number would of course increase the deterrence factor of the judgment, but would also be an impermissible penalty. PBM's request for enhanced damages is, therefore, DENIED.

### 2. Attorneys' Fees

PBM seeks its attorneys' fees as both a prevailing plaintiff and a prevailing defendant. As a plaintiff, PBM asserts that it qualifies for attorneys' fees because Mead Johnson engaged in a deliberate and bad faith campaign to malign store brand infant formula. PBM adds that when considering the entire litigation history between these parties, Mead Johnson's continued unlawful behavior makes its actions in this case exceptional.

PBM was also a prevailing defendant in this case due to the Court granting PBM's Motion for Judgment as a Matter of Law on Mead Johnson's Lanham Act counterclaim. PBM believes it is entitled to attorneys' fees related to that claim because the claim was groundless. PBM reasons that Mead Johnson's "compare to" claim was barred by the statute of limitations, laches, and the parties' prior settlement agreement. At trial, Mead Johnson's claim, in PBM's view, suffered from additional deficiencies, including that Mead Johnson was unable to prove that the "compare to" ad communicated a false message or caused any damage to Mead Johnson. PBM further argues that Mead Johnson's Lanham Act

14

claim is barred by unclean hands due to Mead Johnson's own use of similar language in Mead Johnson advertisements. All together, PBM thinks these weaknesses demonstrate that Mead Johnson's case was groundless and, as a result, PBM should be compensated for having to defend against it.

"The court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). An "exceptional case" warranting attorneys' fees is one that involves malicious, fraudulent, willful, or deliberate conduct. Scotch Whisky Ass'n v. Majestic Distilling Co., 958 F.2d 594, 599 (4th Cir. 1991), cert. denied, 506 U.S. 862 (1992). In the Fourth Circuit, a case is "exceptional" only if a prevailing plaintiff can also "prove bad faith on the defendant's part." Id. This makes the Fourth Circuit standard for awarding attorney's fees somewhat higher than that of several other circuits. See, e.g., Tamko Roofing Prods., Inc. v. Ideal Roofing Co., 282 F.3d 23, 31-32 (1st Cir. 2002). For a prevailing defendant, the Fourth Circuit has said that "something less than bad faith" is required. Scotch Whisky, 958 F.2d at 599.[2]

---

[2] Although the Fourth Circuit has not overruled this dual approach, it has stated the following:

> We recognize that Scotch Whisky's dual standard was called into considerable doubt by disapproving dicta in Fogerty v. Fantasy, Inc., 114 S.Ct. 1023, 1028-1029 n.12 (1994). The same test-be it bad faith or "something less"-may well apply to applications for fees from both plaintiff and defendant. In any event, because [Defendant] has not made even the "something less" showing here, the continuing vitality of the Scotch Whisky standard need not be decided.

See Brenco, Inc. v. Roller Bearing Indus., Inc., 92 F.3d 1176 (table), 1996 WL 436563, at *5 n.9 (4th Cir. 1996). Nevertheless, the dual standard has not been overruled and has been applied in this case as it has been in other cases even after Brenco. See, e.g., Flexible Benefits Council v. Feltman, No. 08-cv-371, 2009 WL 1351653, at *3-4 (E.D. Va. May 14, 2009) (Cacheris, J.). Although the Court applies the dual standard as articulated by the Fourth Circuit, the application of a standard that treated prevailing plaintiffs and defendants the same would not make a difference in the present case. PBM simply cannot meet its burden of proving either the bad faith or willful or fraudulent

Once a district court determines that a case is "exceptional," it "must then determine, at its discretion, whether awarding attorney's fees is warranted given the circumstances of the case." Thomas & Betts Power Solutions, L.L.C. v. Power Dist., Inc.,No. 07-cv-167, 2008 WL 373639, at *1 (E.D. Va. Feb. 8, 2008) (Hudson, J.) (citations omitted).

District courts have broad discretion to determine whether attorney's fees are warranted. Scotch Whisky, 958 F.2d at 599 (citing Shell Oil Co. v. Commercial Petrol., Inc., 928 F.2d 104, 108 n.6 (4th Cir. 1991)). But, both the occurrence of the "underlying improper conduct and the characterization of the case as exceptional must be established by clear and convincing evidence." Thomas & Betts Power Solutions, 2008 WL 373639, at *1; see also Synthon IP, Inc. v. Pfizer, Inc., 484 F. Supp. 2d 437, 441 (E.D. Va. 2007) (citing Enzo Biochem., Inc. v. Calgene, Inc., 188 F.3d 1362, 1370 (Fed. Cir. 1999)).

After a careful review of the trial record, the Court concludes that PBM has not shown by clear and convincing evidence that, in distributing the mailer, Mead Johnson acted in bad faith or willfully. Again, while the mailer was deliberately "aggressive" in its attack on store brand formula, it does not qualify as an egregious violation of the Lanham Act. Over a seven day jury trial, the parties presented and re-presented scientific expert testimony to compare and contrast the relative nutritional benefits of the parties' products. That the jury sided with PBM's view of the evidence does not mean that Mead Johnson acted willfully or in bad faith in claiming superiority over store bought brands. Without clear and convincing evidence of those requirements, PBM's request for attorneys' fees on its Lanham Act claim must be DENIED.

---

behavior necessary under either standard.

PBM also seeks attorneys' fees as a prevailing defendant. This request also fails because even though Mead Johnson's Lanham Act claim was unsuccessful, the Court cannot conclude that there was no good faith basis for bringing the suit nor does the Court find any other fraudulent or malicious conduct in the record. Mead Johnson's claim survived Rule 56, but not Rule 50, making it an average, rather than "exceptional," case.[3] Accordingly, the Court DENIES PBM's request for attorneys' fees on Mead Johnson's Lanham Act claim.

### III.  CONCLUSION

For the reasons stated above, Mead Johnson's Motion is DENIED and PBM's Motion as to an award of enhanced damages and attorneys' fees is also DENIED. An appropriate Order will accompany this memorandum.

Let the Clerk send a copy of this memorandum to all counsel of record.

_____/s/_____
James R. Spencer
Chief United States District Judge

ENTERED this __2nd__ day of March 2010

---

[3] This ruling does not suggest that a case that survives summary judgment can never be found to be exceptional.