IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

PBM PRODUCTS, LLC and PBM
NUTRITIONALS, LLC

                          Plaintiffs,

    v.                                                                  Action No. 3:09–CV–269

MEAD JOHNSON & COMPANY,

                          Defendant.

**MEMORANDUM OPINION**

THIS MATTER is before the Court on several motions related to the injunction entered by this Court on December 1, 2009 (Docket No. 226). Mead Johnson has filed (1) a Motion To Vacate the Order Granting the Injunction, To Stay the Injunction Pending Resolution of the Motions to Vacate or Amend the Injunction, and To Set a Schedule for Briefing and Hearing on the Propriety and Scope of the Injunctive Relief (Docket Nos. 232, 234, 235)[1] and (2) a Motion to Amend Order Granting Injunction (Docket No. 227). PBM has filed (1) a Motion for Award of Enhanced Damages, Attorneys' Fees, and Modified Injunction (Docket No. 229) and (2) a Motion to Enforce Injunction (Docket No. 246).[2] For the reasons stated below, the Court GRANTS in part PBM's Motion for Modified Injunction and DENIES all other motions.

---

[1] The Court granted Mead Johnson's request for a stay on January 19, 2010, thus that issue is no longer before the Court.

[2] This memo only addresses the portion of PBM's motion seeking to modify the injunction. The other issues are addressed in a separate opinion (Docket No. 261). Also, because the injunction has been stayed, PBM's Motion to Enforce the injunction is moot.

1

# I. BACKGROUND

In April 2009, store-brand infant formula producer PBM Products, LLC and PBM Nutritionals, LLC (collectively "PBM") sued "name-brand" infant formula producer Mead Johnson & Co. over a Mead Johnson advertisement that PBM asserted violated the Lanham Act. During a seven day jury trial, held on November 2-10, 2009, the jury was asked to evaluate whether four specific claims made in the Mead Johnson mailer communicated certain false or misleading messages concerning store-brand infant formulas, such as PBM's. Two of the four claims were express claims—the Mailer stated that (1) "mothers who buy store brand infant formula to save baby expenses are cutting back on nutrition compared to [Mead Johnson's] Enfamil" and (2) "only Enfamil has been clinically proven to improve infants's mental and visual development." (Trial Tr. vol VII, 1260-61, Nov. 10, 2009 (jury instructions).) Relying on consumer survey evidence, PBM contended that the Mailer also impliedly communicated two false and misleading claims: that (1) "Enfamil contains two important fatty acids, DHA and ARA, and that PBM's store brand infant formulas do not" and (2) "Enfamil has been clinically tested against and shown to be superior to PBM's formula with respect to brain and eye development in infants." (Id.)

The Jury Verdict Sheet asked "Has PBM established, by a preponderance of the evidence, that Mead Johnson engaged in false advertising in violation of the Lanham Act?" (Docket No. 213). The jury answered in the affirmative and awarded PBM $13.5 million in damages.

On December 1, 2009, this Court granted the injunctive relief sought by PBM (Dock. No. 226). The Order stated, in relevant part:

> (1) Mead Johnson is immediately enjoined and restrained, directly and indirectly, and whether alone or in concert with others, including any agent, employee, representative, subsidiary, or affiliate of Mead Johnson, from doing any of the following:
>> (A) publishing or circulating any advertisement, promotional material, or other literature that bears any designation, description, or representation concerning PBM's infant formula that is false, including that, "It may be tempting to try a less expensive store brand, but only Enfamil LIPIL is clinically proven to improve brain and eye development," or "There are plenty of other ways to save on baby expenses without cutting back on nutrition," or from implying the same.
>> (B) making any false statement or representation concerning PBM's infant formula that is false, including that, "It may be tempting to try a less expensive store brand, but only Enfamil LIPIL is clinically proven to improve brain and eye development," or "There are plenty of other ways to save on baby expenses without cutting back on nutrition," or from implying the same.
>
> (2) Mead Johnson is DIRECTED to retrieve any and all advertisements, promotional materials or other literature containing the aforementioned assertions, claims, or allegations regarding PBM's store brand formula from the public forum.
>
> (3) This Order shall remain in full force until such time as this Court specifically orders otherwise.

Over the weeks since that injunction was issued, the parties have wrangled over the validity, scope, and effect of the injunction and have filed a number of motions now before the Court. While the Court considered these motions, the injunction previously entered was stayed (Dock. No. 257).

## II. DISCUSSION

Mead Johnson seeks to vacate and amend the injunction because (1) the Court failed to articulate the reasons for issuing the injunction, as is required by eBay, Inc. v. MercExchange, LLC, 547 U.S. 388 (2006), and (2) the scope of the injunction exceeds the bounds of the jury's verdict and the record. For its part, PBM has filed motions to modify and enforce the injunction. These motions create two issues the Court must now address: (1)

3

whether an injunction should be entered at all and (2) if an injunction is entered, what should be its scope. Each issue is addressed below.

**A. Propriety of Entering an Injunction**

Federal courts have the power to enjoin behavior that is found to be false or misleading under the Lanham Act. 15 U.S.C. § 1116(a). Before an injunction may be issued, the party seeking the injunction must demonstrate that (1) it has suffered an irreparable injury; (2) remedies available at law are inadequate; (3) the balance of the hardships favors the party seeking the injunction; and (4) the public interest would not be disserved by the injunction. eBay, Inc., 547 U.S. at 391. A decision to grant or deny a permanent injunction is reviewed for abuse of discretion. Id. Here, each of the required elements favors PBM.

First, the Court observes that "the irreparable harm prong can be satisfied 'upon a demonstration that the competitor's advertising tends to mislead consumers.'" PBM Prods., LLC v. Mead Johnson Nutrition Co., No. 09-cv-269, 2009 WL 1684471, at * 5 (E.D. Va. May 7, 2009) (quoting Black & Decker (U.S.) Inc. v. Pro-Tech Power Inc., 26 F. Supp. 2d 834, 861 (E.D. Va. 1988)). Consequently, the jury's verdict in favor of PBM presumptively satisfies the irreparable injury requirement. Moreover, trial testimony by representatives of both parties established that in addition to lost sales, false advertising also inflicts substantial harm on a company's reputation and goodwill.

Second, "[d]amages to reputation and goodwill are not items that are easily measured by a legal calculation of damages." See Toolchex, Inc. v. Trainor, No. 08-cv-236, 2009 WL 2244486, at *2 (E.D. Va. July 24, 2009). Thus, while Mead Johnson is correct that it appears the jury awarded PBM some future damages, the Court disagrees with Mead Johnson's

4

conclusion that an award of future damages indicates that monetary damages are an adequate and sufficient award in this case. The monetary judgment against Mead Johnson compensates PBM for harm that flowed from the Mailer, an injunction properly prevents Mead Johnson from infecting the marketplace with the same or similar claims in different advertisements in the future. Mead Johnson asserts, though, that the Mailer is no longer in circulation and it has not made any indication that it will continue to make those claims in future advertisements. It is that uncertainty, however, that makes an injunction all the more appropriate as preventing the necessity of multiple suits is a classic justification for finding common law remedies inadequate. Matthews v. Rodgers, 284 U.S. 521, 529 (recognizing that equity jurisdiction may be invoked to avoid a multiplicity of suits); Potomac Elec. Power Co. v. Washington Chapter of Congress of Racial Equality, 210 F. Supp. 418, 419, 420 (D.D.C. 1962); C.J.S. Equity § 36 (multiplicity of suits as grounds for equity jurisdiction); 5 Pomeroy's Equity Jurisprudence § 1959 ("It is the element of continuance or permanence that causes repeated and harassing litigation, to prevent which is the purpose of equity in enjoining because of multiplicity of suits."); see also Lyons P'ship, L.P. v. Morris Costumes, Inc., 243 F.3d 789, 801 (4th Cir. 2001) (stating that defendants carry a heavy burden to establish mootness when they claim voluntary discontinuance of challenged acts because otherwise they would simply be free to return to their old ways after the threat of a lawsuit has passed).

Third, when faced with the question of whether an injunction should be entered at all, an evaluation of the resulting hardships favors PBM. Mead Johnson simply has no equitable interest in perpetuating the false and misleading claims in the Mailer. See Castrol, Inc. v.

Pennzoil Co., 799 F. Supp. 424, 440 (D.N.J. 1992), aff'd, 987 F.2d 939 (3d Cir. 1993). Mead Johnson's main contentions concern the nature of injunctive relief, not whether that relief should be granted in the first instance, and therefore do not mandate a different conclusion.

Lastly, the public interest heavily favors injunctive relief in this case. It is self evident that preventing false or misleading advertising is in the public interest in general. Scotts Co. v. United Indus. Corp., 315 F.3d 264, 286 (4th Cir. 2002). False or misleading messages concerning a matter of public health, such as the nutritional qualities of infant formula, makes that conclusion especially true in this case. Moreover, allowing false or misleading advertising to continue to seep into the public's discourse on the relative benefits of name brand versus store brand formula would undermine, rather than promote, the Lanham Act's goal of protecting consumers. See Wojnarowicz v. American Family Ass'n, 745 F. Supp. 130, 141 (S.D.N.Y. 1990). Accordingly, the Court finds that the eBay factors each weigh in favor of PBM and therefore an injunction is appropriate in this case.

### B. Scope of an Injunction

The parties also disagree over the scope of any available injunctive relief. Mead Johnson claims that because the general verdict entered by the jury did not specify which of the four statements in the Mailer the jury found false or misleading, the injunction must be limited to the entire Mailer or "other advertisements not colorably different from the Mailer." PBM responds by claiming that the Court should enjoin the two express as well as the two implied claims in the Mailer because such a ruling would be supported by the record and not inconsistent with the jury's general verdict.

Rule 65(d) of the Federal Rules of Civil Procedure requires that an injunction "state its terms specifically" and "describe in reasonable detail . . . the act or acts restrained or required." The type of injunctive relief granted "rests within the equitable discretion" of the district court. eBay, Inc. 547 U.S. at 394. While that discretion is constrained by a jury's general verdict under the doctrine of collateral estoppel, district courts can nevertheless make factual findings to support equitable relief so long as those findings are not inconsistent with factual findings essential to the jury's verdict. Fed. R. Civ. P. 54(c); Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc., 585 F.2d 821, 844 (7th Cir. 1978).

Based on the parties' arguments and a review of the pleadings and trial transcripts, the Court will enjoin Mead Johnson from distributing the Mailer or any advertisement not colorably different from the Mailer. Although PBM would like the Court to specifically enjoin the implied claims, the Court finds that an injunction applicable to the Mailer or anything similar sufficiently encompasses the implied claims made in the Mailer.

As was done in the original injunction, the Court will also specifically enjoin the two express claims made in the Mailer. Mead Johnson is correct that the general verdict did not specify if the jury concluded that the express claims that (1) store bought brands represent a cut back on nutrition and (2) only Enfamil is clinically proven to improve brain and eye development in infants are false or misleading. But the Court now concludes that the record supports an injunction including the express claims and that such an injunction would not be inconsistent with the jury's verdict.

Of the two express claims in the Mailer, Mead Johnson only seriously disputes the injunction applying to the "only Enfamil is clinically proven" claim.[3] In its view, neither the record nor the jury verdict supports a finding that this claim is false or misleading. The Court disagrees. To make its claim that only Enfamil has been clinically proven to promote infant development, Mead Johnson primarily relied on a group of government funded clinical studies, which the parties refer to as the "Birch studies," so-named after one of the studies' authors. Mead Johnson's reliance is, however, not justified for several reasons. Although Mead Johnson's formula supplemented with DHA and ARA was the formula used in the Birch studies, trial testimony established that the studies' conclusion that DHA and ARA promote infant development is not limited to Mead Johnson's formula, but to any infant formula that makes the same or similar amounts of DHA and ARA bio-available to an infant. This conclusion is drawn from testimony elicited from PBM as well as Mead Johnson witnesses. PBM's Dr. Petersen testified that the benefits shown in the Birch studies were not limited to the exact formula matrix used in the studies. (Trial Tr. vol. I, 143-44, Nov. 2, 2009.) Mead Johnson's Brenna and Tucker agreed. (Trial Tr. vol. IV, 620-21, Nov. 5, 2009 (Brenna); Trial Tr. vol. III, 549-50, Nov. 4, 2009 (Tucker).) To claim otherwise would have placed Mead Johnson's own ability to rely on the Birch studies in peril. The manufacturing specifications for Mead Johnson's formula actually allow Mead Johnson to vary the ratio of DHA and ARA and still claim that it is Enfamil Lipil. (Trial Tr. 646-67 (Brenna); Trial Exh. 171.) Moreover, since the Birch studies, Mead Johnson's formula has undergone at least 19 changes. (Trial Tr.

---

[3] To the extent Mead Johnson does dispute the injunction applying to the second literal claim that store brands are a cut-back on nutrition, the same evidence cited below that supports enjoining the "only Enfamil is clinically proven" claim also supports enjoining the "cut-back on nutrition" claim.

146-49 (Petersen); 554 (Tucker).) Thus, Mead Johnson must necessarily agree that small differences in the ratio of DHA and ARA will not diminish the benefits of those nutrients. Instead, trial testimony reasonably supports the conclusion that the issue is whether a sufficient amount of DHA and ARA in the formula is bio-available to an infant. (Trial Tr. 135 (Petersen); 641 (Brenna).) And indeed, Mead Johnson's Dr. Brenna and PBM's Dr. Petersen agreed that PBM's Quintiles study established that the amount of DHA and ARA in PBM's formula—an amount actually slightly higher than in Enfamil—is bio-available to infants. (Trial Tr. 136-37, 145-46 (Petersen); 596-97, 638-39 (Brenna).) Thus, the Court finds that the "only clinically proven" claim is misleading, that such a conclusion is consistent with the record and the jury's verdict, and that therefore the claim will be enjoined.

The parties have also raised several other issues that need to be briefly addressed. First, Mead Johnson suggests that an evidentiary hearing is required to resolve all of the issues raised by a request for injunctive relief. Neither the law nor the current posture of this case support that request. The Court has held a seven-day jury trial and the parties have submitted a mound of post-trial motions during which each side has had a full and fair opportunity to apprise the Court of the law and evidence. Contrary to Mead Johnson's claims, an injunction including the express claims does not expand the issues in this case or affect how the case would have been negotiated or litigated in any manner that substantially prejudices Mead Johnson. See Robinson v. Lorillard Corp., 444 F.2d 791, 803 (4th Cir. 1971). An additional hearing is simply unnecessary. See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 939 (4th Cir. 1995).

Next, Mead Johnson objected to the original injunction applying to all false claims made in connection with PBM, asserting that such language is overly broad and difficult to enforce. At oral argument on the injunction, PBM agreed that this language need not be in the permanent injunction. The Court will oblige the parties on this issue.

The original injunction also included a requirement that Mead Johnson retrieve the offending Mailer from the "public forum." PBM and Mead Johnson agree that the Mailer was sent to consumers' homes and thus such a requirement would be futile. PBM, however, requests that the injunction apply to the four claims made in the Mailer and that the retrieval requirement apply to any advertising or promotional material containing those claims. PBM adds that if retrieval is not possible, a sticker should be placed over the offending portions of any label. Mead Johnson has stated the Mailer is no longer distributed and that it is not making three of the claims in the Mailer at all, however, it has continued to make the "only Enfamil Lipil is clinically proven" claim. Mead Johnson, via an affidavit, also notes that this claim is on all of its labels and that retrieving them would cost millions of dollars and would disrupt the entire supply of infant formula in the United States. Placing a sticker, Mead Johnson states, would also cost millions of dollars. A retrieval or stickering requirement would significantly alter the balance of the hardships and thus the Court declines to impose those conditions on Mead Johnson. The injunction does apply, however, to all advertising or promotional material or statements going forward.

Lastly, PBM wants the Court to require Mead Johnson to send corrective advertising to all individuals in Mead Johnson's Enfamil Family Beginnings database stating that the four claims stated in the Mailer are false or misleading. Although the Court acknowledges the

reputational harm that false messages can inflict, PBM is not entitled to an order requiring Mead Johnson to issue corrective advertising because it did not seek that remedy in its complaint and has not done any prospective corrective advertising of its own, suggesting that the desire for this remedy arose only after it obtained a favorable verdict. See Robinson, 444 F.2d at 803. Moreover, the jury's award included damages for future harm from the Mailer, which encompasses the effect the Mailer had on those that received it. Thus, the request for corrective advertising is denied.

### III. CONCLUSION

For the foregoing reasons, the parties' motions are resolved as follows: (1) Mead Johnson's Motion To Vacate the Order Granting the Injunction, To Stay the Injunction Pending Resolution of the Motions to Vacate or Amend the Injunction, and To Set a Schedule for Briefing and Hearing on the Propriety and Scope of the Injunctive Relief is DENIED in part on the merits and DENIED in part as MOOT; (2) Mead Johnson's Motion to Amend Order Granting Injunction is DENIED; (3) PBM's Motion for Award of Enhanced Damages, Attorneys' Fees, and Modified Injunction is GRANTED in part and DENIED in part; and (4) PBM's Motion to Enforce Injunction is DENIED as MOOT.

An appropriate Order will issue. Let the Clerk send a copy of this memorandum to all counsel of record.

_____/s/_____
James R. Spencer
Chief United States District Judge

ENTERED this __12th__ day March 2010